No. 23-13178-A

# In the United States Court of Appeals for the Eleventh Circuit

———————

ALIEDA MARON, et al

*Plaintiffs – Appellants*,
v.

Chief Financial Officer of Florida,

*Defendant – Appellee.*

———————

**On Appeal from the
United States District Court for the Northern District of
Florida Civil Action No. 4:22-cv-00255-RH-MAF**

———————

**PRINCIPAL BRIEF OF PLAINTIFFS-APPELLANTS**

ROGER L. MANDEL
JEEVES MANDEL LAW GROUP, P.C.
Suite 135
2833 Crockett Street
Fort Worth, TX 76107
214-253-8300
rmandel@jeevesmandellawgroup.com
*Counsel for Plaintiffs-Appellants*

## <u>Plaintiffs-Appellants' Certificate of Interested Persons</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in Eleventh Circuit Rule 26.1-2(a) have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Arthur Susman, attorney representing Appellants.

2.  Alieda Maron, Plaintiff/Appellant.

3.  Craig E. Rothburd, attorney representing Appellants.

4.  Craig E. Rothburd, P.A., law firm representing Appellants.

5.  Daniel J. McGinn, attorney representing Appellee.

6.  Daniel R. Russell, attorney representing Appellee.

7.  Dean Mead & Dunbar, law firm representing Appellee.

8.  Honorable Robert L. Hinkle, U.S.D.C. Judge.

9.  Jeeves Law Group, P.A., law firm representing Appellants.

10. Jeeves Mandel Law Group, PC, law firm representing Appellants.

11. Jimmy T. Patronis, Jr., in his official capacity as the Chief Financial Officer of the State of Florida, Defendant/Appellee.

12. Jordane P. Wang, attorney representing Appellee.

13. Julie M. O'Dell, attorney representing Appellants.

14. Kelly A. Green, attorney representing Appellants.

i

15.  Kimberly Masson, attorney representing Appellee.

16.  Lawrence Maron, Plaintiff/Appellant.

17.  Roger L. Mandel, attorney representing Appellants.

18.  Russell Monilla, attorney representing Appellee.

19.  Scott R. Jeeves, attorney representing Appellants.

20.  Smith, Katzenstein & Jenkins, law firm representing Appellants.

21.  The Law Office of Arthur Susman, law firm representing Appellants.

22.  William D. Hall, III, attorney representing Appellee.

*/s/Roger L. Mandel*
Roger L. Mandel
JEEVES MANDEL LAW GROUP, P.C.
2833 Crockett St, Suite 135
Fort Worth, TX 76107
T.        214-253-8300
rmandel@jeevesmandellawgroup.com

*Counsel for Alieda Maron and Lawrence Maron, Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs/Appellants Alieda Maron and Lawrence Maron request the Court to hold oral argument on their appeal because it presents complex and important issues of first impression to this Court regarding the constitutionality under the Takings Clause of the Fifth Amendment of a portion of the Florida Disposition of Unclaimed Property Act that denies just compensation to the owners of "presumed unclaimed" property for the State's taking and public use of that property.

## **TABLE OF CONTENTS**

**Pages**

PLAINTIFF-APPELLANT'S CERTIFICATE OF INTERESTED PERSONS.........i

STATEMENT REGARDING ORAL ARGUMENT................................................ iii

TABLE OF CONTENTS ..........................................................................................iv

TABLE OF AUTHORITIES ...................................................................................vi

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ......xi

INTRODUCTION ....................................................................................................1

STATEMENT OF THE ISSUES .............................................................................3

STATEMENT OF THE CASE..................................................................................4

      I.     THE PROCEEDINGS.................................................................4

      II.    STATEMENT OF FACTS.........................................................6

            A.    The Act.............................................................................6

            B.    The Marons' Property ....................................................7

            C.    The Standard of Review...................................................8

SUMMARY OF ARGUMENT .................................................................................8

ARGUMENT ...........................................................................................................11

I.     THE DISTRICT COURT CORRECTLY HELD THE MARONS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS............................11

II.    THE DISTRICT COURT CORRECTLY HELD THE ELEVENTH AMENDMENT DOES NOT BAR THE MARONS' CLAIM IN COUNT I UNDER THE FIFTH AMENDMENT FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF .........................................13

      A.    The Ex Parte Young Exception to the Eleventh Amendment Applies to the Declaratory and Injunctive Relief Sought by the Marons.............13

**Pages**

      B.    Alternatively, Florida Consented to Suit in Federal Court in the Plan of the Convention ............................................................................21

III.   THE DISTRICT COURT ERRED IN DISMISSING COUNT I OF THE COMPLAINT BECAUSE IT STATES AN ACTIONABLE CLAIM UNDER THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT, AS APPLIED TO THE STATES BY THE FOURTEENTH AMENDMENT....23

      A.    The Act Affects a Taking Requiring Just Compensation by Mandating Public Use of Unclaimed Property in the State's Custody..................24

      B.    The District Court Erred by Applying *Texaco* and Holding the Marons Abandoned Their Property ................................................................27

          1.    The critical distinction between a constitutional escheat statute and an unconstitutional unclaimed property statute, like the Act, is the former transfers title of the property to a state, while the latter does not ................................................................28

          2.    That a different version of the Act supposedly could have passed constitutional muster does not make the enacted Act constitutional ......................................................35

          3.    Amending the Act to declare property abandoned and escheat it after only three or even five years would not make the Act constitutional ............................................................37

      C.    The Marons' Right to Just Compensation Does Not Depend on Whether Their Property Earned Interest Before the CFO Took Custody of It.........................................................................42

CONCLUSION ....................................................................44

CERTIFICATE OF COMPLIANCE  ....................................................45

CERTIFICATE OF SERVICE ................................................................45

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                      **<u>Pages</u>**

*31 Foster Children v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ...............................................................................12

*Albert v. Franchot*,
2023 WL 4058986 (D. Md. June 16, 2023) .............................................................19

*Ambriz v. Hegar,*
2023 WL 4850909 (W.D. Tex. June 20, 2023),
(Report & Recommendation), order adopting R&R, 2023 WL 4853403
 (W.D. Tex. July 28, 2023) (appeal pending)....................................................18, 19

*Anderson Nat. Bank v. Luckett*,
321 U.S. 233, 240 (1944).........................................................................................39

*Ark. Game & Fish Comm'n v. U.S.*,
568 U.S. 23 (2012)...................................................................................................25

*Arnett v. Strayhorn*,
515 F. Supp. 2d 690 (W.D. Tex. 2006),
*aff'd sub. nom.*, *Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007)..........................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................8

*Boyle v. City of Pell City*,
866 F.3d 1280 (11th Cir. 2017) .................................................................................7

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021)..................................................................................1, 2, 25, 36

*Cerajeski v. Zoeller*,
735 F.3d 577 (7th Cir. 2013)......................... 18, 28, 29, 31-35, 38, 39, 41

**Cases**                                                                             **Pages**

*Clapper v. Amnesty Int'l. USA*,
586 U.S. 398 (2013) ................................................................................ 11

*Clark v. Strayhorn*,
184 S.W.3d 906 (Tex. App.—Austin 2006, pet. denied),
*cert. denied*, 127 S. Ct. 508 (2006) ........................................................ 34

*Cole-Kelly v. Yee*,
2023 WL 2480749 (N.D. Cal. Mar. 13, 2023) ........................................ 19

*Commonwealth Edison Co. v. Vega*,
174 F.3d 870 (7th Cir. 1999) ................................................................... 34

*Connecticut Mut. Ins. Co. v. Moore*,
333 U.S. 541 (1948) ................................................................................ 39

*Dani v. Miller*,
374 P.3d 779 (Okla. 2016) ...................................................................... 34

*Edelman v. Jordan*,
415 U.S. 651 (1974) ........................................................................ 9, 15-21

*Ex parte Young*,
209 U.S. 123 (1908) ..................................................................... 3, 9, 13-21

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002) ................................................................................ 24

*Goldberg v. Frerichs*,
912 F.3d 1009 (7th Cir. 2019) ........................................................... 29, 43

*Hooks v. Kennedy*,
961 So.2d 425 (La. Ct. App. 2007) ......................................................... 34

*Horne v. Dept. of Agric.*,
576 U.S. 350 (2015) .................................................................. 24, 25, 37, 42

**Cases**                                                                 **Pages**

*Jacobs v. U.S.*,
290 U.S. 13 (1933) ...................................................................................22

*James v. Hegar*,
 2023 WL 7890069 (5th Cir. Nov. 6, 2023) ...........................................20

*Knick v. Township of Scott*,
139 S. Ct. 2162 (2019) .......................................................................11, 25

*Kolton v. Frerichs*,
869 F.3d 532 (7th Cir. 2017) .........................................................17, 29, 34

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...............................................................................12

*McKenzie v. Florida Dept. of Financial Services*,
Case No. 04 CA 755 (2d Jud. Cir., Leon County Apr. 27, 2005) ...........34

*Monsanto Co. v. Geertson Seed Farms*,
130 S. Ct. 2743 (2010) ...........................................................................11

*Murr v. Wisconsin*,
582 U.S. 383 (2017) ............................................................................1, 24

*Pakdel v. City & County of San Francisco, Ca.*,
141 S. Ct. 2226 (2021) ...........................................................................12

*PennEast Pipeline Co., L.L.C. v. N.J.*,
141 S. Ct. 2244 (2021) .......................................................................21, 22

*Phillips v. Wash. Legal Found.*,
524 U.S. 156 (1998) ...........................................................................35, 38

*Siebers v. Barca*,
2022 WL 2438605 (W.D. Wis. Jul. 5, 2022).....................................17, 18

**Cases**                                                                                      **Pages**

*Simon v. Weissmann*,
301 Fed. App'x. 107 (3d Cir. 2008) ...................................................................35, 37

*Smith v. U.S.*,
873 F.3d 1348 (11th Cir. 2017) ..................................................................................8

*Sogg v. Zurz*,
905 N.E.2d 187 (Ohio 2009) ...................................................................................33

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1977) ....................................................................................................11

*Suever v. Connell*,
579 F.3d 1047 (9th Cir. 2009) ..................................................................................19

*Summit Medical Assoc., P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999) ..................................................................................8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) .............................................................................................24, 25

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) ....................................... 10, 27, 28, 30-35, 36, 39, 40

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) ............................................................................20, 41

*Tyler v. Hennepin County, Minn.*,
2023 WL 3632754 (U.S. May 25, 2023) ................................... 11, 28, 30, 32, 39-41

*Verizon Maryland, Inc. v. Public Service Com'n of Mayland*,
535 U.S. 635 (2002) .............................................................................................14, 21

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980) ................................................... 23, 25-27, 35, 38, 39

## **Constitution, Statutes and Rules** **Pages**

U.S. Const., Art. III ...............................................................3, 5, 8, 11, 12

U.S. Const., Amend. V ........................... 1, 3-5, 9-11, 13, 16, 19-24, 26, 33, 34, 38

U.S. Const., Amend. XI ................................................. 3, 5, 8, 9, 13-16, 20, 21, 23

U.S. Const., Amend. XIV ................................................. 1, 23, 31, 41

42 U.S.C. § 1983 ..............................................................................24

Cal. Civ. Proc. Code § 1300, et seq ........................................................41

Cal. Civ. Proc. Code § 1516(b)..............................................................42

Fla. Stat. §§ 717.001-116 ............................................................6, 28, 34, 42

Fla. Stat. §§ 717.102-107 ...............................................................28, 34

Fla. Stat. §§ 717.108-116 ...............................................................28, 34

Fla. Stat. § 717.102(1) ...................................................................41

Fla. Stat. § 717.1035 .....................................................................41

Fla. Stat. § 717.1071 .....................................................................34

Fla. Stat. §§ 717.117(1)...................................................................6,7

Fla. Stat. § 717.119(1)................................................................6, 41, 42

Fla. Stat. § 717.122 ........................................................................6

Fla. Stat. § 117.123 ...................................................................6, 7, 13

Fla. Stat. § 717.124(4)(a) .......................................................... 1-6, 7, 14, 15

Fed. R. Civ. P. 12(b)(6)....................................................................8

x

## OTHER AUTHORITIES

**Pages**

Chief Financial Officer, Jimmy Patronis, State of Florida, Report of Trust Funds for Fiscal Year Ended June 30, 2022, https://www.myfloridacfo.com/docs-sf/accounting-and-auditing-libraries/state-agencies/reports/trust-fund-215/tf-report-215-3206-fye-2022.pdf?sfvrsn=2f2d1dcf_4 (last visited November 27, 2023)........6

Florida Dept. of Educ., 2022-2023 Funding for Florida School Districts, https://www.fldoe.org/core/fileparse.php/7507/urlt/fefpdist.pdf (last visited November 27, 2023) ..................................................................................................7

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a) because the Marons' claims arise under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the Judgment entered September 5, 2023 (Apx.28:1),[1] disposed of all parties' claims in the case, making it a final decision by the district court. The Marons timely filed their limited Notice of Appeal on September 27, 2023 (Apx.29:1), within 30 days of the entry of the Final Judgment.

---

[1] References to the Appendix shall be to Apx. followed by the docket number of the document and the page number of the document ("Apx.#:#").

## **INTRODUCTION**

The Supreme Court recently reemphasized the fundamental and essential role property rights play in our country and the critical importance of the Fifth Amendment in securing those rights from governmental appropriation:

> The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, "[p]roperty must be secured, or liberty cannot exist." Discourses on Davila, in 6 Works of John Adams 280 (C. Adams ed. 1851). This Court agrees, having noted that protection of property rights is 'necessary to preserve freedom' and 'empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them.' *Murr v. Wisconsin*, 582 U. S. ——, ——, 137 S.Ct. 1933, 1943, 198 L.Ed.2d 497 (2017).

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (Roberts, C.J.).

The Supreme Court has accordingly set forth strict rules regarding the application of the Takings Clause. *See Cedar Point Nursery*, 114 S. Ct. at 2071-74. These rules will almost invariably render unconstitutional statutes which purport to allow the government to take custody of private property and make public use of it without paying just compensation. Here, just one of those rules mandates the conclusion that Fla. Stat. § 717.124(4)(a) violates the Takings Clause of the Fifth

1

Amendment because it prohibits the CFO[2] from paying just compensation for the State of Florida's public use of "presumed unclaimed" private property.

That one dispositive rule is, "[w]hen the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation…. The government commits a physical taking … when the government physically takes possession of property *without acquiring title to it*." *Cedar Point Nursery*, 141 S. Ct. at 2071 (emphasis added). Under the Florida Disposition of Unclaimed Property Act (the "Act"), as the CFO admits, the State takes physical possession of its citizens' property, but it does not even purport to take title to it. Since the CFO admits that the State makes public use of that property by investing it and using the income to pay State obligations, the State commits a taking requiring payment of just compensation.

But the CFO cannot pay just compensation to the property owners because Fla. Stat. § 717.124(4)(a) prohibits him from doing so. Accordingly, this Court should declare it unconstitutional and enjoin the CFO to pay the Marons[3] just compensation when they claim their property, as the Takings Clause explicitly requires whenever the government puts private property to public use.

---

1 "CFO" refers to Defendant-Appellee Jimmy T. Patronis, Jr., in his official capacity as the Chief Financial Officer of the State of Florida.

2 "Marons" refers to Plaintiffs-Appellants Alieda and Lawrence Maron.

## STATEMENT OF THE ISSUES

1.    The CFO took the Marons' property into custody, and the State made public use of it, pursuant to the Act. The Supreme Court held that property owners immediately suffer injury from taking. That injury is continuing because the Marons continue to lose the time-value of their property. Section 717.124(4)(a) of the Act prohibits the CFO from paying just compensation for same to the Marons. They seek a declaration that this law violates the Fifth Amendment and an injunction requiring the CFO to pay them just compensation when they claim their property. Given this, do the Marons satisfy the Article III standing requirements of injury-in-fact, ripeness, traceability, and redressability?

2.    The Marons seek only a declaration that Fla. Stat. § 717.124(4)(a) violates the Fifth Amendment and an injunction requiring the CFO to pay them just compensation for the State's public use of their property when they make a claim for its return. Under *Ex parte Young*, the Eleventh Amendment does not bar a suit in federal court against a state officer in the officer's official capacity that seeks only prospective declaratory and injunctive relief requiring the officer to comply with the Constitution in the future. Given this, does the *Ex parte Young* exception to the Eleventh Amendment apply to the Marons' claim and allow them to bring it in federal court?

3

3.     The CFO took the Marons' property into custody for the State, the State made public use of it, and the CFO will refuse to pay them just compensation for same pursuant to the Act. The Act did not purport to divest the Marons of title to their property on the grounds that it had been abandoned. Rather, they have retained ownership of the property, and the State will hold it for their benefit indefinitely while making public use of it. The Takings Clause of the Fifth Amendment provides: "... nor shall private property be taken for public use without just compensation." U.S. Const., Amend. V. Given this, do the Marons sufficiently plead that Section 717.124(4)(a) of the Act violates the Fifth Amendment's Takings Clause by prohibiting the CFO from paying them just compensation for the State's public use of their property?

## STATEMENT OF THE CASE

### I.     THE PROCEEDINGS

On July 15, 2022, Aleida Maron filed the Class Action Complaint (ROA.1:1-25).[4] On September 15, 2022, the CFO filed his Motion to Dismiss Complaint (ROA.10:1-3) and Memorandum in Support ("Memorandum") (ROA.9:1-34). Maron filed her Amended Opposition (ROA.12:1-46) on September 29, 2022. On

---

3 Citations to the Record on Appeal shall be made as ROA followed by the docket number of the referenced document followed by the relevant page number(s) ("ROA.#:#").

March 14, 2023, Maron filed her Unopposed Motion for Leave to Amend to add her husband Lawrence Maron as a co-plaintiff (ROA.18:1-7) attaching to it as an exhibit the proposed Amended Complaint which alleged two Counts (Apx.18-1:1-25).[5]

On September 5, 2023, the district court entered the Order of Dismissal (Apx.27:1-14). In it, the court granted the motion to amend and ordered the Amended Complaint (Apx.18-1:1-15) properly filed nunc pro tunc. (Apx.27:14). It then denied dismissal of both Counts of the Amended Complaint on Article III standing grounds (Apx.27:6-7), denied dismissal of Count I for violation of the Fifth Amendment pursuant to the Eleventh Amendment but granted dismissal without prejudice on that basis of Count II for violation of the Florida Constitution Article X, Section 6(a) (Apx.27:7-9, 14), and granted dismissal of Count I with prejudice for failure to state a claim (Apx.27:9-14). That same day, the clerk entered the Judgment dismissing the two Counts in accordance with the Order of Dismissal (Apx.28:1). On September 27, 2023, the Marons timely filed their Notice of Appeal (Apx.29:1-3).

---

4 Citations to the Appendix shall be made as Apx. followed by the docket number of the referenced document followed by the relevant page number(s) ("Apx.#:#").

## II.    STATEMENT OF FACTS[6]

### A.    The Act

The Act requires the Department of Financial Services, which the CFO heads, to hold unclaimed property in perpetuity for its rightful owner; it never purports to declare the property abandoned and escheat it to the State (ROA.9:4; Apx.18-1:10). The Act declares property "presumed unclaimed" after a prolonged lack of activity and/or communication regarding it by the owner, typically three to five years (Apx.18-1:8). Fla. Stat. §§ 717.001-116. At that point, the holder must report and transfer it to the CFO (Apx.18-1:8). Fla. Stat. §§ 717.117(1), 717.119(1). If the property is not cash, the State sells it (Apx.18-1:8-9). Fla. Stat. § 717.122.

The CFO deposits the cash received from holders and the sale of non-cash property into an Unclaimed Property Trust Fund kept at $15 million, used to pay claims and the costs of administration, and then transfers the remainder into the State School Trust Fund. (ROA.9:6). Fla. Stat. § 117.123. *See* Chief Financial Officer, Jimmy Patronis, State of Florida, Report of Trust Funds for Fiscal Year Ended June 30, 2022 at 8[7] ($263,682,786 in unclaimed property receipts deposited in fund).

---

[6] The facts come from a combination of the Act, the Amended Complaint, and the Memorandum.

[7] https://www.myfloridacfo.com/docs-sf/accounting-and-auditing-libraries/state-agencies/reports/trust-fund-215/tf-report-215-3206-fye-2022.pdf?sfvrsn=2f2d1dcf_4 (last visited November 27, 2023)

When claims plus administrative expenses exceed the sum in the Unclaimed Property Trust Fund, funds are transferred from the State School Trust Fund to that trust fund for those purposes (Apx.18-1:9). Fla. Stat. § 117.123.

The State invests the unclaimed property held in the State School Trust Fund, the proceeds of which inure to the sole benefit of the fund (Apx.18-1:10). The State School Trust Fund helps fund Florida public schools (Apx.18-1:13). Florida Dept. of Educ.**,** 2022-2023 Funding for Florida School Districts at 6 https://www.fldoe.org/core/fileparse.php/7507/urlt/fefpdist.pdf (last visited November 27, 2023) ($246,903,902 paid from fund to public schools). This constitutes public use of unclaimed property (ROA.9:22).

By making a claim, an owner can recover their cash held by the State, but Fla. Stat. § 117.124(4)(a) forbids the CFO from paying just compensation for its public use (Apx.18-1:10-11; ROA.9:6-7).

## B.    The Marons' Property

According to the CFO's online records, the State holds in its custody $26.24 belonging to the Marons, which it describes as "premium refund on individual." Absent a favorable ruling by this Court, when the Marons claim their property, which they intend to do, the State will not pay them just compensation for its public use of their property (Apx.18-1:13).

### C.    The Standard of Review

This Court reviews *de novo* federal subject matter jurisdiction, including Article III standing and Eleventh Amendment immunity. *Summit Medical Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1333-34 (11th Cir. 1999). The Court also reviews Rule 12(b)(6) dismissals *de novo*. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). **"**To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating this, the Court accepts all well-pleaded allegations as true and draws all inferences in favor of the plaintiff. *Smith v. U.S.*, 873 F.3d 1348, 1351 (11th Cir. 2017).

## SUMMARY OF ARGUMENT

The district court correctly held the Marons have standing.  They suffered an injury in fact as soon the State took their property and used it for public purposes without paying just compensation.[8]  Because the Marons have not yet made their

---

[8] It is important to note that the Marons do not claim that the State took any earnings that the State may have made by investing their property, nor do they seek to enjoin the State to pay them any such earnings when they make their claim. Rather, they seek to enjoin the State to pay them just compensation for the State's taking and use for public purposes of their property, which is not measured by what, if anything, it earned in the State's hands. After all, if the State had lost money investing those funds or had spent it for public purposes without ever investing it, the Marons would still be entitled to just compensation under the Takings Clause.

claim and received their property, they are continuing to lose the time value of their property, which means they are continuing to suffer harm. Their injury is directly traceable to the State's action. And, because the CFO does not dispute that he will refuse to pay just compensation when the Marons make their claim, "it is likely, indeed almost certain, that the injury would be redressed, at least going forward, by the declaration the Marons seek." (Apx.27:6.) The CFO has not cross-appealed the district court's ruling that the Marons have standing.

The Marons seek only declaratory and injunctive relief to require the CFO to comply with the Fifth Amendment and pay them just compensation for using their property for public purposes when they make their claim in the future. The Marons necessarily do not seek redress for a past failure by the CFO to pay them just compensation, as they have not yet made a claim for their property. Thus, the Marons seek purely prospective relief which falls within the *Ex parte Young* exception to the Eleventh Amendment under the Supreme Court's decision in *Edelman v. Jordan*. Further, the State waived their Eleventh Amendment immunity from suit in federal court as part of the Plan of the Convention.

The CFO's taking of the Marons' property into custody for the State, the State using it for public purposes, and the CFO refusing to pay just compensation for same, all of which the CFO freely admits, fall squarely within the language of the Takings Clause of the Fifth Amendment, "... nor shall private property be taken for public

9

use without just compensation." U.S. Const., Amend. V. The Act only declares property as "presumed unclaimed." It does not purport to transfer title to it to the State. Consequently, the Marons' property does not fall within the exception recognized by the Supreme Court in *Texaco v. Short* for property statutorily declared "abandoned" and escheated (title transferred) to the state.

To avoid this dispositive difference, relying only on an unpublished, non-precedential Third Circuit opinion, the district court held it does not matter that the Act does not escheat unclaimed property to the State because it could have been written to do so, in which case it allegedly would have been constitutional. This counterintuitive holding has two fatal flaws. First, even if a different version of the Act could pass constitutional muster, that does not make the enacted version of the Act constitutional. Second, revising the Act to make it an escheat statute would not make it constitutional. Under Supreme Court precedent, three or even five years of failure to interact with property is too short a time for property to be regarded as "abandoned." Further, mere lack of interaction will not support a finding of "abandonment," and property may not be escheated without the provision of due process via notice and a judicial or administrative proceeding.

10

## **ARGUMENT**

### I.    THE DISTRICT COURT CORRECTLY HELD THE MARONS HAVE ARTICLE III STANDING TO BRING THEIR CLAIMS

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l. USA*, 586 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). Supreme Court precedent establishes that the Marons satisfy all three of these elements of Article III standing, and that their claim is ripe.

The Marons satisfy injury-in-fact by alleging that the State took their property without paying them just compensation. *Tyler v. Hennepin County, Minn*., 2023 WL 3632754, at *3 (U.S. May 25, 2023); *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019). That is both a Constitutional injury and an economic injury, both quintessential injuries-in-fact. *Id.* They have standing to pursue prospective declaratory relief because the past wrong is causing them continuing harm from the ongoing loss of the time value of their property. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1977) (recognizing that "continuing present adverse effects" in addition to "past exposure to illegal conduct" can establish standing). Further, they face a real and immediate danger of future injury because, absent a favorable ruling by this Court, the CFO will refuse to pay them just compensation

when they make their claim immediately following this action. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (holding a past wrong coupled with a "real and immediate threat" of future injury supports standing to seek declaratory relief).

Because the Marons' injury from the CFO's refusal to pay them just compensation flows directly from the State's taking the property and using it for public purposes, they satisfy the traceability element of Article III standing. The declaratory and injunctive relief the Marons seek satisfies the redressability element of Article III standing because it will require the CFO to pay them just compensation when they claim their property.

Regarding redressability, the CFO makes what actually constitutes a ripeness challenge. He argues that because he might reject the Marons' claim for return of their property on some unknown basis, they will not have suffered an injury-in-fact until they have made a claim for return of their property which he accepted and paid without including just compensation. ROA.9:12.

The Supreme Court has repeatedly rejected this argument, however. It held most recently that the property owner need not exhaust administrative remedies so long as it is clear the government will not pay just compensation. *Pakdel v. City & County of San Francisco, Ca.*, 141 S. Ct. 2226, 2230-31 (2021). That is the case

here, because Florida law prohibits the CFO from paying just compensation for the State's public use of unclaimed property.

The CFO has not cross-appealed the district court's ruling that the Marons have standing.

## II.    THE DISTRICT COURT CORRECTLY HELD THE ELEVENTH AMENDMENT DOES NOT BAR THE MARONS' CLAIM IN COUNT I UNDER THE FIFTH AMENDMENT FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF

The district court correctly held that the Eleventh Amendment does not bar the Marons' claim in Count I for declaratory and injunctive relief under the Fifth Amendment because it falls within the *Ex parte Young* doctrine. Alternatively, the states, including Florida, consented to suit in federal court, waiving their Eleventh Amendment immunity, "in the plan of the Convention." The CFO has not appealed this aspect of the district court's determination.

### A.    The *Ex Parte Young* Exception to the Eleventh Amendment Applies to the Declaratory and Injunctive Relief Sought by the Marons

"The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where the plaintiff seeks to compel a state officer to comply with federal law." *Pryor*, 180 F.3d at 1336 (citing *Ex parte Young*, 209 U.S. 123, 158-59 (1908)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and

seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Mayland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

Where a complaint seeks a declaration a state statute or order violates federal law and to enjoin state officials from enforcing that statute or order, it "clearly satisfies our 'straightforward inquiry.'" *Id.* (holding *Ex parte Young* doctrine applied to request to declare state commission's order preempted by federal law and enjoin state officials from enforcing it). Here, the Marons seek a declaration that Section 717.124(4)(a) violates the Taking Clause by prohibiting the CFO from paying just compensation for the State's public use of their property and an injunction prohibiting the CFO from enforcing it going forward (i.e., requiring the CFO to pay just compensation on future claims). Apx.18-1:2, 6, 18, 19, 22-23. The "straightforward inquiry" thus dictates that the *Ex parte Young* doctrine applies to the Marons' claim.

The district court, therefore, correctly held that "[t]he Eleventh Amendment does not require dismissal of Count One" because "the Marons assert a § 1983 claim … for prospective relief—for a declaration that the defendant must pay interest or other compensation for use, and perhaps for retention, of unclaimed funds not only in the past but also *going forward*. The claim for prospective relief is a proper *Ex*

*parte Young* claim squarely within the court's jurisdiction and not barred by the Eleventh Amendment." Apx.27:8 (emphasis in original).[9]

In reaching this conclusion, the district court relied on *Edelman v. Jordan*, 415 U.S. 651, 667 (1974). Apx.27:7. In *Edelman*, the plaintiffs sought, and the district court awarded, a declaration that a state manual that conflicted with federal regulations was invalid, a permanent injunction requiring Illinois to comply with the federal regulations in the future, and an order requiring the payment of benefits wrongfully withheld in the past ("equitable restitution"). 415 U.S. at 656. The Supreme Court approved the application of *Ex parte Young* to the prospective portion of the district court's judgment (the declaration and injunction requiring compliance with the federal regulations in the future). *Id.* at 664.

So too here, the district court held, and this Court should affirm, that *Ex parte Young* applies to the Marons' request for the Court to: (i) declare unconstitutional Fla. Stat. § 717.124(4)(a) because it bars the CFO from paying just compensation for the State's use of unclaimed property in violation of the Takings Clause of the

---

[9] The district court did state that "the Marons seek to recover interest or other compensation" which it apparently regarded as retrospective, because it immediately thereafter stated, "[t]he Eleventh Amendment bars any claim for retrospective relief." Apx.27:8. However, it did not dismiss any part of Count I based on the Eleventh Amendment. Apx.27:14. The effect of this statement, if any, does not matter, however, because the Marons only seek prospective relief as that has been interpreted by the Supreme Court and multiple other courts, as explained in this section.

Fifth Amendment, and (ii) enjoin the CFO to comply with the Constitution *going forward* by paying just compensation to the Marons and Class members seeking to recover unclaimed property *in the future*. Amended Complaint (Apx. 18-1:2, 6, 18, 19, 22-23; Order (Apx.27:8).

In holding that such relief requiring payment to future applicants in accordance with federal law falls within the *Ex parte Young* exception, the Supreme Court first noted that "[a]s in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman*, 415 U.S. at 667. This requires courts to examine the practical effect of the relief sought. *Id.* at 668. While the Eleventh Amendment typically would bar claims resulting in a money judgment payable out of state funds, that does not mean that proper prospective relief cannot have a fiscal impact on a state. *Id.* at 666–67.

To the contrary, a state can suffer fiscal consequences when the relief sought obligates the state to comply with federal law in the future. *Id.* at 667–68. "Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Id.* at 668. It is for that reason that the injunction in *Edelman* requiring future compliance with the regulations which would result in increased payments to future applicants constituted prospective relief. *See id.*

16

In contrast, the Supreme Court held that the "equitable restitution," which required payment to *past applicants* who were not paid or who were underpaid on prior claims was retrospective and that it therefore fell outside of the *Ex parte Young* doctrine. *Id.* at 668. That was because it would have required "payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to *past applicants*" as to whom Illinois had already violated the federal regulations. *Id.* (emphasis added). Critically, here the Marons only seeks necessary or proper supplemental relief corresponding to their declaratory relief, including an injunction requiring the CFO to pay just compensation in connection with their *future claim* for the return of their property, making it purely prospective relief under *Edelman*.

Significantly, multiple other courts which have considered relief like that sought by the Marons here held it falls within the *Ex parte Young* doctrine. In *Kolton v. Frerichs*, the plaintiffs challenged the constitutionality of the Illinois Disposition of Unclaimed Property Act, seeking declaratory and injunctive relief as well as damages. 869 F.3d 532, 533 (7th Cir. 2017). The Seventh Circuit held that as to the declaratory and injunctive relief "[p]laintiffs are entitled to prospective relief under *Ex parte Young*, …." *Id.* at 536.

In *Siebers v. Barca*, the plaintiff sought a declaration as to the unconstitutionality of the Wisconsin Unclaimed Property Act's prohibition of the

payment of interest on unclaimed property that was not interest-bearing when the state took it into custody and an injunction requiring the state to pay interest on property returned in the future. 2022 WL 2438605, at *1, 6-7 (W.D. Wis. Jul. 5, 2022). The court held:

> But plaintiffs also ask the court for an injunction that prohibits defendants from refusing to pay all earned interest on plaintiffs' unclaimed property moving forward, and an injunction that requires the state to hold interest earned on unclaimed property in a separate account. That is prospective relief.
>
> The court concludes that under *Ex parte Young*, *plaintiffs may seek injunctive and declaratory relief aimed at securing state-earned-interest on claims that have not yet been paid by the state.* If plaintiffs succeed on the merits of their claim later in the case, this relief would require the state to settle claims in compliance with federal law in the future.

*Id.*, at *7 (emphasis added) (citing *Cerajeski v. Zoeller*, 735 F.3d 577, 579 (7th Cir. 2013) (plaintiff awarded declaration that she was entitled to interest on her unclaimed property when she later filed a claim for the return of her property)).

In *Ambriz v. Hegar*, the Western District of Texas found the foregoing analysis dipositive, holding "[c]onsistent with *Edelman* and *Siebers v. Barca*, …, the undersigned finds Ambriz's claims for prospective declaratory or injunctive relief that Texas must pay interest on the unclaimed property it holds falls within the *Ex parte Young* exception, even if those claims will ultimately result in payment by the State." 2023 WL 4850909, at *3 (W.D. Tex. June 20, 2023) (Report &

Recommendation), order adopting R&R, 2023 WL 4853403, at *1 (W.D. Tex. July 28, 2023) (appeal pending). The plaintiff in *Ambriz* asserted claims and sought relief identical to those in this case.

Subsequently, the District Court of Maryland held *Ex parte Young* applicable in a virtually identical case. *See Albert v. Franchot*, 2023 WL 4058986 (D. Md. June 16, 2023) (motion for reconsideration pending). In *Franchot*, the plaintiff sought a declaration that Maryland's unclaimed property act violated the Fifth Amendment by forbidding the state from paying just compensation for its public use of the unclaimed property and that it must pay just compensation on future claims according to a standard to be set by the court, and an injunction requiring the state to comply with the declaration. *Id.*, at *3. Here, the Marons seek virtually identical relief. The Maryland court held "the Complaint seeks prospective injunctive and declaratory relief as allowed under the *Ex parte Young* doctrine" and "[t]hat Defendant may have to spend state funds to effect compliance with federal law does not remove Plaintiff's claims from the *Ex parte Young* exception." *Id.*, at *5.

The Marons know of only one contrary decision involving future claims, *Cole-Kelly v. Yee*, 2023 WL 2480749, at *3-4 (N.D. Cal. Mar. 13, 2023) (on appeal). The *Yee* court erred in relying on the Ninth Circuit's opinion in *Suever v. Connell*, 579 F.3d 1047, 1058-59 (9th Cir. 2009), which actually comports with *Edelman*. In *Suever*, the plaintiffs had all made claims *in the past* to the State of California and

had their claims paid with some interest which they thought insufficient. *Id.* at 1052-53. The Ninth Circuit held that their claims for "retrospective interest" did not fall within the *Ex parte Young* doctrine. *Id.* at 1058-59. The court's reliance on *Turnacliff v. Westly*, 546 F.3d 1113, 1115 (9th Cir. 2008) is even more misplaced, because besides addressing past claims, that decision did not even address the Eleventh Amendment. Simply put, the *Yee* court erred in holding claims to secure compliance with the Fifth Amendment on *future* claims did not fall within the *Ex parte Young* doctrine based on cases addressing the failure to pay just compensation on *past* claims.

Because it too involved claims based on failure to pay just compensation on *past* claims, making those claims purely retrospective like the "equitable restitution" in *Edelman*, *Arnett v. Strayhorn* likewise does not contradict the district court's holding. *See* 515 F. Supp. 2d 690, 693 (W.D. Tex. 2006), *aff'd sub. nom.*, *Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) (the plaintiff has already received back his unclaimed property without interest and sought to represent a class of persons who had received back their property without interest). And *James v. Hegar* did not involve a facial challenge to the constitutionality of the Texas unclaimed property act and asked for relief in connection with *past* property transfers. 2023 WL 7890069, at *5-6 (5th Cir. Nov. 6, 2023). So, it failed both prongs of the

"straightforward inquiry"; it did not allege an ongoing violation of federal law, and it did not seek prospective relief.

Consistent with *Verizon Maryland, Inc.* and *Edelman*, and four of the five other unclaimed property takings cases involving *future* claims like this case, this Court should affirm the district court's holding that the Eleventh Amendment does not bar the Marons' Fifth Amendment Takings Clause claim because it falls within the *Ex parte Young* doctrine.

**B.      Alternatively, Florida Consented to Suit in Federal Court in the Plan of the Convention**

But even if the *Ex parte Young* doctrine does not apply to the Marons' Takings Clause claim, the Eleventh Amendment does not bar it, whether thought of as a past, present or future claim, because Florida consented to suit in federal court, thereby waiving its immunity under that amendment, pursuant to the "plan of the Convention." That is the logical extension of the Supreme Court's recent holding in *PennEast Pipeline Co., L.L.C. v. N.J. ("PennEast")*, 141 S. Ct. 2244 (2021).

In *PennEast*, the Supreme Court held that one method by which states consented to suit, waiving their sovereign immunity, was by agreeing "to suit in the 'plan of the Convention,' which is shorthand for 'the structure of the original Constitution itself.'" *Id.* at 2258 (citations omitted). This applies to both their general immunity from suit anywhere, their "structural immunity," and their "Eleventh

Amendment immunity"—their immunity from suit in federal court even where sovereign immunity would not apply to the same suit brought against them in state court. *Id.* at 2262.

In *PennEast*, the Supreme Court applied these principles in holding that the federal government and its private delegees can bring federal eminent domain proceedings against states in federal court. *Id.* at 2259, 2263. The Supreme Court reached this conclusion by observing that "governments have long taken property for public use without the owners' consent" and that prior to and at the time of the founding, governments "could either initiate legal proceedings to secure the right to build, or they could take property up front and force the owner to seek recovery for any loss of value." *Id.* at 2254-55. The Takings Clause of the Fifth Amendment "recognized the existence of such a power" in the federal government as well as the states. *Id.* at 2255.

The other side of this coin is that at the time of the founding not only was the government's power to take property firmly established, so too was the right of property owners to sue for just compensation when a government exercised that power. *Id.* at 2254-55. The self-executing Takings Clause of the Fifth Amendment made clear this principle applied regardless of whether a statute authorizing suit and waiving sovereign immunity had been enacted. *Jacobs v. U.S.*, 290 U.S. 13, 16 (1933) ("[T]he right to recover just compensation for property taken by the United

States for public use … rested upon the Fifth Amendment. *Statutory recognition was not necessary*.") (emphasis added). Of course, the Fourteenth Amendment served to apply the Takings Clause to the states. *Webb's Fabulous Pharmacies, Inc. v. Beckwith ("Webb's")*, 449 U.S. 155, 160 (1980).

So, the Constitution and specifically the Fifth Amendment inherently reflect a consent to suit (a waiver of sovereign immunity) by both the federal government and the states for Takings Clause claims, including consent by the states to suit in federal court. Simply put, no need exists for a statutory waiver of sovereign immunity (including Eleventh Amendment immunity) from Takings Clause suits; that is inherent in the Constitution and the Fifth Amendment.

## III.  THE DISTRICT COURT ERRED IN DISMISSING COUNT I OF THE COMPLAINT BECAUSE IT STATES AN ACTIONABLE CLAIM UNDER THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT, AS APPLIED TO THE STATES BY THE FOURTEENTH AMENDMENT

The district court erred by holding that Count I does not state an actionable Takings Claim. Specifically, it employed a concept of "abandonment" contrary to Supreme Court precedent and wholly absent from the Act. It also conjured an alternative non-existent statutory scheme which would still be unconstitutional, as Supreme Court precedent demonstrates. The district court further applied irrelevant considerations to reach its no-taking conclusion. Reversal of the dismissal of Count I is required to correct these errors.

23

**A.    The Act Affects a Taking Requiring Just Compensation by Mandating Public Use of Unclaimed Property in the State's Custody**

Count I sufficiently pleads a claim for violations of the Takings Clause of the Fifth Amendment, which provides: "... nor shall private property be taken for public use without just compensation."  U.S. Const., Amend. V.[10]  The Fifth Amendment applies to the states as well as to the federal government. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 307 n.1 (2002).

The Takings Clause "requires the payment of compensation whenever the government acquires private property for a public purpose." *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (internal quotations omitted). "The Government has a categorical duty to pay just compensation [upon a taking]." *Horne v. Dept. of Agric.*, 576 U.S. 350, 358 (2015). The Takings Clause is "self-executing," abrogating sovereign immunity and requiring states to provide a specific remedy for takings in

---

[10] The Marons bring their takings claim pursuant to Section 1983 of Title 42 of the United States Code, which creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but rather it serves as a mechanism for vindicating rights otherwise protected by federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). To state a Section 1983 claim, a plaintiff must show a deprivation of a right secured by the Constitution or the laws of the United States by a person acting under color of state law.  *See* 42 U.S.C. § 1983.  The CFO does not dispute that he is a person acting under color of state law.

their own courts. *Knick*, 139 S. Ct. at 2172. A claim for just compensation arises immediately at the time of the taking. *Id.* at 2171.

"No magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." *Ark. Game & Fish Comm'n v. U.S.*, 568 U.S. 23, 31 (2012).  Yet, the Supreme Court has repeatedly held that "the 'classic taking [is one] in which the government directly appropriates private property for its own use.'" *Horne*, 576 U.S. at 357 (quoting *Tahoe–Sierra Pres. Council, Inc.*, 535 U.S. at 324). Governmental appropriations of personal property for public use constitute *per se* takings.  *Id.* at 360; *see also Cedar Point Nursery*, 141 S. Ct. at 2074 ("[t]he government commits a physical taking" when it "takes possession of property *without acquiring title to it*") (emphasis added).  This includes both money and the interest earned, or that could be earned, on that money. *Webb's*, 449 U.S. at 164. Even temporary possession and use of property by the government can trigger *per se* physical takings liability. *Cedar Point Nursery*, 141 S. Ct. at 2074.

As these authorities make clear, the taking here occurred when the CFO, pursuant to the Act, both took custody of the property *and used it for public purposes*. *Knick*, 139 S. Ct. at 2170; Apx. 27:7. Had the CFO simply held the unclaimed property in cash and preserved, without public use, any earnings on that property for pro-rata payment to the property owners, the Marons would have no

25

Takings Clause case for such faithful safekeeping. However, when the State provided in the Act that it would use private property for public purposes, the Takings Clause became applicable, and it requires paying the Marons just compensation for that public use of their property.

The Supreme Court's decision in the analogous *Webb's* case compels this conclusion. In *Webb's*, the Supreme Court declared unconstitutional under the Fifth Amendment a state statute which allowed a county to retain the interest earned by funds interpleaded into a court registry. 449 U.S. at 450-53. The analogy to this case is clear: a disinterested third party (the interpleading party there, the holders of presumed unclaimed property under the Act here), turned over property to the government (the county there, the State here) for distribution to its rightful owners, and the government used the property for public purposes (investing it and retaining the income) while it had custody of the property.

The Supreme Court held "[t]he county's appropriation of the beneficial use of the fund is analogous to the appropriation of the use of private property" and constitutes "a forced contribution to general governmental revenues" in violation of the Fifth Amendment. *Id.* at 452. So too here the State's public use of unclaimed property in its temporary custody constitutes an "appropriation of the use of private property" that violates the Fifth Amendment.

The district court (Apx.9:12-13) and, indeed, every court which has ever upheld an unclaimed property act which does not allow payment of just compensation for the public use of private property, distinguished or ignored the dispositive holding of *Webb's* based on the concept of "abandonment." Specifically, when a statute *properly* declares private property abandoned and transfers title to it to a state or a third person, no taking under the Taking Clause occurs because "the former owner retains no interest in the property for which he may claim compensation." *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982).

However, as explained in the next section, the district court erred in finding the Marons abandoned their property. And if they did not abandon their property, *Webb's* dictates that the State violated the Takings Clause.

### B.    The District Court Erred by Applying *Texaco* and Holding the Marons Abandoned Their Property

By mistakenly relying on *Texaco*, the district court erroneously held the Marons had abandoned their property such that they no longer had an interest in it subject to a taking. Apx.27:9-11.  In *Texaco*, the Supreme Court held an Indiana mineral rights statute that declared "abandoned" and terminated leasehold interests that had been unused and unclaimed for more than 20 years did not violate the Takings Clause. 454 U.S. at 529-30. Here, the Act does not purport to declare

27

unclaimed property "abandoned" and transfer its title to the State.[11] To the contrary, it preserves title for the rightful owner in perpetuity. This distinction is critical.

And even if the Act declared property "abandoned" and transferred its title to the State, it would still violate the Takings Clause. Under *Tyler* and *Cerajeski*, three years of mere failure to claim or communicate about property does not, as a matter of law, constitute "abandonment" sufficient to terminate private property rights otherwise subject to Takings Clause liability. And escheat of property to a state requires provision of due process via notice and a judicial or administrative hearing.

**1.    The critical distinction between a constitutional escheat statute and an unconstitutional unclaimed property statute, like the Act, is the former transfers title of the property to a state, while the latter does not.**

The district court principally relied on, and clearly misapplied, *Texaco*. Properly read, as numerous courts including the Supreme Court have recognized, *Texaco*'s no-taking holding applies only where, unlike here, a statute terminates property rights as a consequence of "abandonment" as measured by the absence of specific acts for a "lengthy period of time" (20 years in the case of the statute in *Texaco*). Defendant cannot dispute that the Act does not terminate private rights to "presumed unclaimed" property; rather, the Act provides that ownership to the

---

[11] Indeed, the Act does not even use the misleading term "presumed abandoned" like the unclaimed property acts in the cases discussed by the parties. Rather, it only refers to property as "presumed unclaimed." Fla. Stat. §§ 717.102-107, 707.108-116.

lost property fully remains with the owner, and the government merely holds that property in custody for the owner until claimed. The owner of "presumed unclaimed" property loses no property rights under the Act.

Simply put, the district court failed to consider the critical distinction between (a) unclaimed "presumed abandoned" property held in custody by the government for safekeeping under the Act for its rightful owners and (b) property for which property rights have been fully terminated. In *Cerajeski*, Judge Posner and the Seventh Circuit considered this distinction and found it dispositive. 735 F.3d at 579.[12]

Escheat statutes declare private property abandoned and pass title to it to the state. 735 F.3d at 580-81. Unclaimed property acts, like the Act, are not escheat statutes because they do not pass title to private property to the state; rather they require the states to hold the property in custody for the benefit of their rightful owners. *Id.* Here, the CFO admits that the Act never actually declares property abandoned or transfers title to it to the State. Apx.9:4, 6-7. Instead, the State holds

---

[12] The Seventh Circuit has twice reaffirmed its holdings in *Cerajeski* in connection with the Illinois Disposition of Unclaimed Property Act. First, in *Kolton*, it held that a plaintiff need not make a claim to the state for the unclaimed property or bring suit in state court before filing suit in federal court. 869 F.3d at 535. Second, in *Goldberg v. Frerichs*, it held that the property owner's right to just compensation does not depend upon whether the money was held in an interest-bearing account at the time it was transferred to the State if it could earn net interest. 912 F.3d. 1009, 1011 (7th Cir. 2019).

the unclaimed property in custody indefinitely for its rightful owners, who may claim it at any time. *Id.*

The Supreme Court in *Texaco* considered an Indiana statute that declared "abandoned" mineral leasehold interests that sat unused for 20 years and caused such leases to self-terminate such that the lessee's interest wholly reverted to the lessor. 454 U.S. at 518. Specifically, the mineral rights lessee abandoned its property rights under the statute by failing to pursue any of the three prescribed means available to establish a continuing leasehold interest: (1) engaging in actual production or collecting rents or royalties from another person doing so or proposing to do so, (2) paying taxes on the property, no matter how small, or (3) making the minimal effort of filing a written statement of claim with the county. *Id.* at 529. The Supreme Court held that because the owners, knowing their obligations, had abandoned their mineral leases *and the statute consequently terminated their leasehold property interests*, the owners no longer owned any cognizable property interest subject to a taking and the payment of just compensation. *Id.* at 530.

The statute was thus consistent with "state law … 'traditional property law principles,' plus historical practices and this Court's precedents" regarding "abandonment"; it only occurs when the property owner by express statement or conduct has voluntarily relinquished all rights in the property. *Tyler*, 598 U.S. 631, 638 (2023) (citations omitted); *see id.* at 646-47 (examining *Texaco*).  There must

be "a surrender or relinquishment or disclaimer" of all rights in the property, "and for a lengthy period of time." *Id*. at 647 (suggesting three years' neglect is an insufficient time to constitute "abandonment" sufficient to divest private property rights under the Takings Clause); see also *Cerajeski*, 735 F.3d at 582 (stating escheat after only three years would raise serious Fourteenth Amendment due process issues),

So, in *Texaco*, the Supreme Court upheld the Indiana statute only after making two determinations. First, it determined the statute did expressly declare property "abandoned" and terminate the owners' interest in it. Second, it determined that the statute doing so was consistent with "state law … 'traditional property law principles,' plus historical practices and this Court's precedents" regarding "abandonment."   The district court ignored both steps of the Supreme Court's analysis, finding "abandonment" without reference to the Act, any other Florida law, historical practices, or Supreme Court precedent (i.e., as a matter of pure *ipse dixit*).

Judge Posner analyzed the meaning of "abandoned" as the Supreme Court used it *Texaco* and examined why abandoned property can be subject to a "taking" under laws that terminate property rights:

> "Abandonment" in property law means voluntary relinquishment or renunciation of a property right[.] It means that the owner gives up all rights to the property, thus pitching it back into the public domain, where it is available for reappropriation. *Of course*, the state can take

31

> abandoned property without compensation—there is no owner to
> compensate. That is a clear example of escheat.

735 F.3d at 581 (emphasis in original, citations omitted). *See Texaco*, 454 U.S. at

530 ('[A]fter abandonment, the former owner retains no interest for which he may

claim compensation. It is the owner's failure to make any use of the property [for 20

years] … that causes the lapse of the property right").

Thus, consistent with the Seventh Circuit's analysis, anything short of

"abandonment" that terminates or cancels property rights under state law, consistent

with "'traditional property law principles,' plus historical practices and [Supreme

Court] precedents," *Tyler*, 598 U.S. at 638, cannot justify the government's refusal

to pay just compensation for the public use of private property. Statutes like the Act

that never purport to divest a citizen of their ownership rights do not render

unclaimed property subject to escheatment. The Act affects a "taking" by mandating

the public use of private property over which the government has mere custody and

not ownership.

The Seventh Circuit surmised what led the State of Indiana into error, which

is the same thing that led the district court (and the post-*Texaco* authorities on which

it relies) into error: a misunderstanding of the concept of "abandonment" fostered

by the misleading term "presumed abandoned" in other states' unclaimed property

acts. *Cerajeski*, 735 F.3d at 580-81.    Regardless of those acts' use of the term

"presumed abandoned," they, like the Act, do not purport to declare that the owners of unclaimed property have relinquished ownership of it. *Id.* To the contrary, those acts, like the Act, expressly recognize that the owners of unclaimed property fully retain their ownership while the property is in the government's custody. *Id.* Because Florida citizens retain full ownership rights to their unclaimed property under the Act, if the State makes public use of that unclaimed property or its fruits, the Fifth Amendment requires the government to pay just compensation.

In *Sogg v. Zurz*, the Ohio Supreme Court likewise held *Texaco* inapplicable to an unclaimed property act that does not declare unclaimed property abandoned and its title forfeited, leaving it the property of the private owners and, thus, subject to a taking:

> [*Texaco*] … is irrelevant …because … nothing in the [Ohio statute] indicates an intent to change the ownership of the unclaimed funds …. 'Unclaimed funds' are not abandoned; they are the property of their owner. Accordingly, the state may not appropriate for its own use, against the owner of the underlying property, interest earned on that property.

905 N.E.2d 187, 191, 192-93 (Ohio 2009).  The Ohio Supreme Court was correct, like the Seventh Circuit.

Four of the cases the district court cites misapply *Texaco* in the manner explained by *Cerajeski* and *Zogg*.  Misled by their states' unclaimed property acts' use of the "presumed abandoned" term, those cases inappropriately relied on *Texaco*

33

by considering unclaimed property "abandoned" and subject to termination of property rights when the unclaimed property acts did not purport to take such action. *See Dani v. Miller*, 374 P.3d 779, 793-94 (Okla. 2016); *Hooks v. Kennedy*, 961 So.2d 425, 431-32 (La. Ct. App. 2007); *Clark v. Strayhorn*, 184 S.W.3d 906, 911-15 (Tex. App.—Austin 2006, pet. denied), *cert. denied*, 127 S. Ct. 508 (2006); *McKenzie v. Florida Dept. of Financial Services*, Case No. 04 CA 755 (2d Jud. Cir., Leon County Apr. 27, 2005) (ROA.9-1:1-10).[13]

To make matters worse, the district court here and the state trial court in *McKenzie* relied on *Texaco* and the other cases without considering that the Act does not even use the misleading term "presumed abandoned." It uses the term "presumed unclaimed." Fla. Stat. §§ 717.102-107, 707.108-116.[14] On what basis then did the district court treat the Marons' property as "abandoned"? Apx.27:13. The Act certainly did not declare it to be such. Dispositively, in attempting to distinguish the

---

[13] This 2005 unpublished Florida trial court decision also cited a Seventh Circuit ERISA preemption decision authored by Judge Posner, *Commonwealth Edison Co. v. Vega*, 174 F.3d 870 (7th Cir. 1999), describing the effect of the Illinois unclaimed property act as "an interest-free loan to the state." Of course, relying on Judge Posner's decision in *Cerajeski*, the Seventh Circuit, in an opinion by Judge Easterbrook, held the Illinois act produced unconstitutional takings under the Fifth Amendment. *Kolton*, 869 F.3d at 533.

[14] The only exception is Fla. Stat. § 717.1071 which declares "abandoned" property distributable as part of a demutualization of an insurance company after two years of noncommunication."

Supreme Court's decisions in *Phillips* and *Webb's*, the district court effectively acknowledged that if the Marons had not abandoned their property the State must pay them compensation for its public use of their property. Apx.27:12.

Simply put, unless and until a state escheats property, title to the unclaimed property remains with the private owner who can obtain its return. *Cerajeski*, 735 F. 3d at 582-83. *"And so before [escheat], if the state takes either principal or interest, it must render just compensation to the owner …." Id.* at 583. Because the Act did not transfer title to the Marons' property to the State, the State must pay just compensation to them for its public use of that property.

**2.    That a different version of the Act supposedly could have passed constitutional muster does not make the enacted Act constitutional**

In addition to misapplying *Texaco*, the district court also relied upon the unpublished, non-precedential Third Circuit opinion in *Simon v. Weissmann*, 301 Fed. App'x. 107, 114 (3d Cir. 2008), in holding that Count I should be dismissed. The Third Circuit erroneously found insignificant the distinction between (a) unclaimed property only "presumed abandoned," the title to which remained with its owners, and (b) property that escheated to the state because a statute declared it abandoned and then terminated the former owners' property rights. *See id.* at 114. It reasoned that because the state could have escheated the property, in which case

no taking would have occurred, it should not matter that the state chose only to take custody of the property without escheating it. *Id.* This reasoning has three fatal flaws.

*First*, besides the compelling explanation from the Seventh Circuit as to why this distinction is dipositive, the Supreme Court has stated that: "[t]he government commits a physical taking" when it "takes possession of property *without acquiring title to it.*" *Cedar Point Nursery*, 141 S. Ct. at 2074 (emphasis added).

*Second*, while a state can under proper circumstances and following due process declare property truly abandoned and take title to it as a result, the Third Circuit did not consider whether the Pennsylvania statute could constitutionally have been made into an escheat statute. Rather, it just assumed that to be the case. Here, as shown below, the Act could not be constitutionally converted into an escheat statute.

*Third*, even if the State could have taken title to the Marons' property after only three years of being "presumed unclaimed," and with no due process, and thereby avoid the obligation to pay just compensation for its use of the property, it does not follow that having failed to take that step it need not pay just compensation for using private property. To condone that reasoning would allow a state to accomplish by illegal means any outcome which it could have achieved by lawful means. The trial court's discussion of possible alternative versions of the Act condones exactly that perverse result.

Yet, for this precise reason, the Supreme Court rejected the Third Circuit's and the district court's incorrect rationale in a case where the government physically took raisins from their owners and then argued that no taking occurred because it could have accomplished the same objective by a hypothetical regulation limiting production which would have imposed the same economic effect on the owners. *Horne*, 576 U.S. at 362. The Court reasoned:

> A physical taking of raisins and a regulatory limit on production may have the same economic impact on a grower. The Constitution, however, is concerned with means as well as ends. The Government has broad powers, but the means it uses to achieve its ends must be "consist[ent] with the letter and spirit of the constitution." As Justice Holmes noted, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way."

*Id.* (internal citations omitted).

*Horne* and *Cerejeski* demonstrate that *Simon* was wrongly decided. The district court reversibly erred by adopting *Simon*'s reasoning.

### 3. Amending the Act to declare property abandoned and escheat it after only three or even five years would not make the Act constitutional

The district court just assumed that if the Act declared property abandoned and escheated it the Act would be constitutional because in *Texaco* the Supreme Court upheld the Indiana statute that declared property abandoned after 20 years of failures to take steps that amounted to a voluntary relinquishment of property rights. Apx.27:10-11. The court did not consider whether the Act could constitutionally

37

declare abandoned *and escheat* property after just three or even five years based on nothing more than failure to claim it or communicate about it and without the provision of due process via notice and an administrative or judicial hearing. It could not, as shown.

"[A] State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998); *see Cerajeski*, 735 F.3d at 582 (quoting *Phillips*). In particular, "[a] state may not 'transform private property into public property without compensation' merely 'because it is held temporarily by the [state].'" *Id.* (quoting *Webb's*, 449 U.S. at 164).

> As the Supreme Court explained in *Webb's*:
>
> Neither the [state] Legislature by statute, nor the [state] courts by judicial decree, may accomplish the result the county seeks simply by recharacterizing the principal as "public money" because it is held temporarily by the court. The earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property. The state statute has the practical effect of appropriating for the county the value of the use of the fund for the period in which it is held in the registry.
>
> To put it another way: a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Takings Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.

*Webb's*, 449 U.S. at 164.

"And a state may not escheat property without a judicial or administrative determination that the property has been abandoned or is otherwise subject to escheat." *Cerajeski*, 735 F.3d at 582 (citations omitted). As the Supreme Court explained, "a state, *by a procedure satisfying constitutional requirements*, may compel surrender to it of deposit balances, when there is substantial ground for belief that they have been abandoned or forgotten …." *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 240 (1944) (emphasis added). Such procedure can be either a judicial or administrative proceeding. *Connecticut Mut. Ins. Co. v. Moore*, 333 U.S. 541, 547 (1948). [15]

Further, just six months ago, the Supreme Court emphatically reaffirmed that a state cannot by statute declare "abandoned" private property that it wishes to take without paying just compensation, and avoid a Takings Clause violation, where the state statute departs substantially from the historic common law concept of "abandonment." *Tyler*, 598 U.S. at 638, 646-47. Specifically, the Supreme Court held that Minnesota could not sidestep the Takings Clause by declaring a home

---

[15] *Texaco*, which did not invalidate an Indiana mineral rights statute which provided no judicial or administrative proceeding, is not inconsistent with this principle. That statute did not escheat property to the state; rather, it merely terminated property rights, causing them to revert to their prior owners. 454 U.S. at 518. Per *Luckett* and *Moore*, escheat to the state of property requires provision of due process through a proceeding.

"abandoned" based merely on three years of nonpayment of property taxes. *Id.* In so holding, the Supreme Court drew upon other Minnesota law and "traditional property law principles, plus historical practice and this Court's precedent," which all confirmed that the owners of property foreclosed for nonpayment of taxes retained ownership of excess proceeds from the foreclosure sale. *Id.*

The Supreme Court in *Tyler* contrasted the Minnesota real property proceeds forfeiture statute with the Indiana mineral-lease statute in *Texaco*, which terminated mineral interests after the owners had made no use of them for 20 years and failed to file paperwork claiming ownership of the interest. *Id.* at 646-47. For there to be "abandonment" that divests a person of ownership, there must be "a surrender or relinquishment or disclaimer" of all rights in the property, "and for a lengthy period of time," which was true under the Indiana lease statute, but not under the Minnesota foreclosure statute. *Id*. at 647.  A statute inconsistent with that rule, like the Minnesota statute and the Act, cannot extinguish a property interest otherwise subject to the Takings Clause. *Id.*

As explained, the Act does not terminate private property rights, but rather transfers custody of private property to the State for safekeeping, making *Texaco* inapplicable. But even if the Act did purport to terminate property rights, it would still not be constitutional.  The Act "presumed unclaimed" the Marons' property and transferred custody of it to the State after only three years of failing to claim it or

communicate about it and without any administrative or judicial determination of abandonment. Fla. Stat. § 717.1035, 717.119.

Significantly, the Seventh Circuit held that "3 years [is] … a period so short as to present a serious question whether it is consistent with the requirement in the Fourteenth Amendment that property not be taken without due process of law, implying adequate notice and opportunity to contest." *Cerajeski*, 755 F.3d at 582; *see also Tyler*, 598 U.S. at 637 (holding abandonment requires no use of property by the owner "for a lengthy period of time," thereby suggesting three years' of nonuse cannot constitute "abandonment" that terminates constitutionally protected private property rights).[16]

Further, the Act does require conduct or lack thereof regarding the property before the CFO takes custody of it that demonstrates a voluntary relinquishment of all rights in the property. Perhaps most importantly, the Act does not provide for the provision of due process through notice and a court or administrative proceeding.

*Turnacliff v. Westly,* 546 F.3d 1113 (9th Cir. 2008), cited by the district court, does not change the conclusion that a hypothetical version of the Act that escheated the property would still result in a taking. Pursuant to Cal. Civ. Proc. Code § 1300,

---

[16] That the Act generally presumes property unclaimed and subject to transfer after five years, *see* Fla. Stat. § 717.102(1), makes no difference. Five years equally is such a short time as to be inconsistent with the historic, common-law definition of "abandonment," especially when the transfer takes place with no pretense of due process of law.

*et seq.*, California escheated stock (declared it abandoned and took title to it), subject to the right of the stockholder's estate to reclaim it. *Id.* at 1116-17. The statute allowed this to occur after only three years and with no due process proceeding. *See* Cal. Civ. Proc. Code § 1516(b) (providing for escheat of stock after only three years of not claiming dividends, if any, and not communicating with the corporation and without any proceeding). Critically, the plaintiffs did not challenge that the stock was properly escheated to the state, so the Ninth Circuit did not consider whether the statute could constitutionally escheat the property after only three years of noncommunication and without a due process proceeding. *Id.* at 1119. For the reasons just explained, it could not.

So, simply re-writing the Act to vest temporary title with the government would ameliorate nothing. Regardless, even if a different version of the Act might pass constitutional muster, that does not justify upholding the enacted version of the Act which clearly does not. An unconstitutional taking cannot stand merely because the same result might have been achieved by constitutional means. *See Horne*, 576 U.S. at 362.

### C. The Marons' Right to Just Compensation Does Not Depend on Whether Their Property Earned Interest Before the CFO Took Custody of It

The district court stated at one point that because the Marons' premium refund was not earning interest when the CFO took it into custody, they would receive an

"unwarranted windfall" if the State had to pay them interest. Apx.27:13. Similarly, the CFO argued that no taking of interest could have occurred given that the premium refund had not been previously earned interest. ROA.9:11, 12-13. These arguments simply misunderstand the nature of a takings claim and the measure of just compensation.

The State committed a taking by assuming custody of the $25.24 premium refund and making public use of it. Whether it earned interest prior to the taking has no relevance. As Judge Easterbrook and the Seventh Circuit held in *Goldberg*, a property owner's right to just compensation "does not depend on what it had been earning in the owner's hands." 912 F. 3d at 1011. The Seventh Circuit gave an example very close to the situation here, where an insured company owed a premium refund to the Marons. It noted that a check, which represents cash, cannot appreciate or earn interest. *Id.* But, "cash has time value even if not invested." *Id.* And "[t]he Supreme Court has held that the Takings Clause protects the time value of money just as much as it does the money itself." *Id.* as 1010 (citing *Brown,* 538 U.S. at 235).

Likewise, what if anything the property earns in the State's hands has no relevance even though most of the unclaimed property cases discuss the issue as being whether the property owner has the right to recover the interest their property earned in a state's hands. If a state had lost money on its investment of the unclaimed

property or if it had simply spent the money without ever investing it, the owner would still have the right to recover just compensation.

What the State must pay the Marons when they claim their property must wait for a later day. Suffice it to say, the fact that the Marons' property did not bear interest at the time the holder turned it over to the CFO has no relevance to whether the State's use of that property for public purposes affected a taking. Likewise, it has no relevance to what the State must pay to justly compensate the Marons.

## CONCLUSION

The district court's dismissal of Count I should be reversed, and the case should be remanded to the district court for further proceedings consistent with this Court's ruling.

Respectfully submitted,

*/s/Roger L. Mandel*
Roger L. Mandel
**JEEVES MANDEL LAW GROUP, P.C.**
2833 Crockett St
Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

*Attorney for Plaintiffs-Appellants*

44

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Eleventh Circuit Rule 32-4 because, as calculated by Microsoft Word, it contains 10,644 words excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

2.    This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Roger L. Mandel*
Roger L. Mandel
Attorney for Plaintiffs-Appellants

Dated: December 7, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2023, the foregoing brief was electronically filed with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. Lead counsel for all the parties are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Roger L. Mandel*
Roger L. Mandel

45

# <u>ADDENDUM OF STATUTES</u>

Florida Disposition of Unclaimed Property Act, Fla. Stat., Title XL, Chapter 717

Select Year:  2023 ▾  Go

# The 2023 Florida Statutes (including Special Session C)

Title XL                          Chapter 717                          View Entire Chapter
REAL AND PERSONAL PROPERTY      DISPOSITION OF UNCLAIMED PROPERTY

**CHAPTER 717**
**DISPOSITION OF UNCLAIMED PROPERTY**

717.001   Short title.

717.101   Definitions.

717.102   Property presumed unclaimed; general rule.

717.103   General rules for taking custody of intangible unclaimed property.

717.1035   Property originated or issued by this state, any political subdivision of this state, or any entity incorporated, organized, created, or otherwise located in the state.

717.104   Traveler's checks and money orders.

717.1045   Gift certificates and similar credit items.

717.105   Checks, drafts, and similar instruments issued or certified by banking and financial organizations.

717.106   Bank deposits and funds in financial organizations.

717.107   Funds owing under life insurance policies, annuity contracts, and retained asset accounts; fines, penalties, and interest; United States Social Security Administration Death Master File.

717.1071   Lost owners of unclaimed demutualization, rehabilitation, or related reorganization proceeds.

717.108   Deposits held by utilities.

717.109   Refunds held by business associations.

717.1101   Unclaimed equity and debt of business associations.

717.111   Property of business associations held in course of dissolution.

717.112   Property held by agents and fiduciaries.

717.1125   Property held by fiduciaries under trust instruments.

717.113   Property held by courts and public agencies.

717.115   Wages.

717.116   Contents of safe-deposit box or other safekeeping repository.

717.117   Report of unclaimed property.

717.118   Notification of apparent owners of unclaimed property.

717.119   Payment or delivery of unclaimed property.

717.1201   Custody by state; holder relieved from liability; reimbursement of holder paying claim; reclaiming for owner; defense of holder; payment of safe-deposit box or repository charges.

717.121   Crediting of dividends, interest, or increments to owner's account.

717.122   Public sale of unclaimed property.

717.123   Deposit of funds.

717.1235   Dormant campaign accounts; report of unclaimed property.

717.124   Unclaimed property claims.

717.12403   Unclaimed demand, savings, or checking account in a financial institution held in the name of more than one person.

717.12404   Claims on behalf of a business entity or trust.

717.12405   Claims by estates.

717.1240   Joint ownership of unclaimed securities or dividends.

717.1241   Conflicting claims.

717.1242   Restatement of jurisdiction of the circuit court sitting in probate and the department.

717.1243   Small estate accounts.

717.1244   Determinations of unclaimed property claims.

717.1245   Garnishment of unclaimed property.

717.125    Claim of another state to recover property; procedure.

717.126    Administrative hearing; burden of proof; proof of entitlement; venue.

717.1261   Death certificates.

717.1262   Court documents.

717.127    Election to take payment or delivery.

717.128    Destruction or disposition of property having insubstantial commercial value; immunity from liability.

717.129    Periods of limitation.

717.1301   Investigations; examinations; subpoenas.

717.1311   Retention of records.

717.1315   Retention of records by claimant's representatives and buyers of unclaimed property.

717.132    Enforcement; cease and desist orders; fines.

717.1322   Administrative and civil enforcement.

717.1323   Prohibited practice.

717.133    Interstate agreements and cooperation; joint and reciprocal actions with other states.

717.1331   Actions against holders.

717.1333   Evidence; estimations; audit reports, examiner's worksheets, investigative reports, other related documents.

717.134    Penalties and interest.

717.1341   Invalid claims, recovery of property, interest and penalties.

717.135    Recovery agreements and purchase agreements for claims filed by a claimant's representative; fees and costs.

717.1355   Theme park and entertainment complex tickets.

717.136    Foreign transactions.

717.138    Rulemaking authority.

717.1382   United States savings bond; unclaimed property; escheatment; procedure.

717.1383   United States savings bond; claim for bond.

717.139    Uniformity of application and construction.

717.1400   Registration.

717.1401   Repeal.

**717.001    Short title.**—This chapter may be cited as the "Florida Disposition of Unclaimed Property Act."
History.—s. 1, ch. 87-105.

**717.101    Definitions.**—As used in this chapter, unless the context otherwise requires:

(1)    "Aggregate" means the amounts reported for owners of unclaimed property of less than $50 or where there is no name for the individual or entity listed on the holder's records, regardless of the amount to be reported.

(2)    "Apparent owner" means the person whose name appears on the records of the holder as the person entitled to property held, issued, or owing by the holder.

(3)    "Banking organization" means any state or national bank, international banking entity or similar entity, trust company, savings bank, industrial savings bank, land bank, safe-deposit company, private bank, or any organization otherwise defined by law as a bank or banking organization.

(4)    "Business association" means any corporation (other than a public corporation), joint stock company, investment company, business trust, partnership, limited liability company, or association of two or more

individuals for business purposes, whether for profit or not for profit.

(5)  "Claimant" means the person on whose behalf a claim is filed.

(6)  "Credit balance" means an account balance in the customer's favor.

(7)  "Department" means the Department of Financial Services.

(8)  "Domicile" means the state of incorporation for a corporation incorporated under the laws of a state, or, for an unincorporated business association, the state where the business association is organized.

(9)  "Due diligence" means the use of reasonable and prudent methods under particular circumstances to locate apparent owners of inactive accounts using the taxpayer identification number or social security number, if known, which may include, but are not limited to, using a nationwide database, cross-indexing with other records of the holder, mailing to the last known address unless the last known address is known to be inaccurate, or engaging a licensed agency or company capable of conducting such search and providing updated addresses.

(10)  "Financial organization" means a state or federal savings association, savings and loan association, bank, trust company, international bank agency, cooperative bank, building and loan association, or credit union.

(11)  "Health care provider" means any state-licensed entity that provides and receives payment for health care services. These entities include, but are not limited to, hospitals, outpatient centers, physician practices, and skilled nursing facilities.

(12)  "Holder" means a person, wherever organized or domiciled, who is:

(a)  In possession of property belonging to another;

(b)  A trustee in case of a trust; or

(c)  Indebted to another on an obligation.

(13)  "Insurance company" means an association, corporation, or fraternal or mutual benefit organization, whether for profit or not for profit, which is engaged in providing insurance coverage.

(14)  "Intangible property" includes, by way of illustration and not limitation:

(a)  Moneys, checks, drafts, deposits, interest, dividends, and income.

(b)  Credit balances, customer overpayments, security deposits and other instruments as defined by chapter 679, refunds, unpaid wages, unused airline tickets, and unidentified remittances.

(c)  Stocks, and other intangible ownership interests in business associations.

(d)  Moneys deposited to redeem stocks, bonds, bearer bonds, original issue discount bonds, coupons, and other securities, or to make distributions.

(e)  Amounts due and payable under the terms of insurance policies.

(f)  Amounts distributable from a trust or custodial fund established under a plan to provide any health, welfare, pension, vacation, severance, retirement, death, stock purchase, profit sharing, employee savings, supplemental unemployment insurance, or similar benefit.

(15)  "Last known address" means a description of the location of the apparent owner sufficient for the purpose of the delivery of mail. For the purposes of identifying, reporting, and remitting property to the department which is presumed to be unclaimed, "last known address" includes any partial description of the location of the apparent owner sufficient to establish the apparent owner was a resident of this state at the time of last contact with the apparent owner or at the time the property became due and payable.

(16)  "Lawful charges" means charges against dormant accounts that are authorized by statute for the purpose of offsetting the costs of maintaining the dormant account.

(17)  "Managed care payor" means a health care plan that has a defined system of selecting and limiting health care providers as evidenced by a managed care contract with the health care providers. These plans include, but are not limited to, managed care health insurance companies and health maintenance organizations.

(18)  "Owner" means a depositor in the case of a deposit, a beneficiary in the case of a trust or a deposit in trust, or a payee in the case of other intangible property, or a person having a legal or equitable interest in property subject to this chapter or his or her legal representative.

(19)  "Public corporation" means a corporation created by the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their power from the state.

(20)  "Reportable period" means the calendar year ending December 31 of each year.

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 63 of 92

(21)   State, when applied to a part of the United States, includes any state, district, commonwealth, territory, insular possession, and any other area subject to the legislative authority of the United States.

(22)   "Trust instrument" means a trust instrument as defined in s. 736.0103.

(23)   "Ultimate equitable owner" means a natural person who, directly or indirectly, owns or controls an ownership interest in a corporation, a foreign corporation, an alien business organization, or any other form of business organization, regardless of whether such natural person owns or controls such ownership interest through one or more natural persons or one or more proxies, powers of attorney, nominees, corporations, associations, partnerships, trusts, joint stock companies, or other entities or devices, or any combination thereof.

(24)   "United States" means any state, district, commonwealth, territory, insular possession, and any other area subject to the legislative authority of the United States of America.

(25)   "Utility" means a person who owns or operates, for public use, any plant, equipment, property, franchise, or license for the transmission of communications or the production, storage, transmission, sale, delivery, or furnishing of electricity, water, steam, or gas.

History.—s. 2, ch. 87-105; s. 23, ch. 91-110; s. 1, ch. 96-301; s. 1770, ch. 97-102; s. 1, ch. 2001-36; s. 1, ch. 2003-21; s. 1887, ch. 2003-261; s. 110, ch. 2004-390; s. 1, ch. 2005-163; s. 2, ch. 2013-172; s. 1, ch. 2016-90.

**717.102    Property presumed unclaimed; general rule.**—

(1)   All intangible property, including any income or increment thereon less any lawful charges, that is held, issued, or owing in the ordinary course of the holder's business and the owner fails to claim such property for more than 5 years after the property becomes payable or distributable is presumed unclaimed, except as otherwise provided by this chapter.

(2)   Property is payable or distributable for the purpose of this chapter notwithstanding the owner's failure to make demand or to present any instrument or document required to receive payment.

History.—s. 3, ch. 87-105; s. 2, ch. 2001-36.

**717.103    General rules for taking custody of intangible unclaimed property.**—Unless otherwise provided in this chapter or by other statute of this state, intangible property is subject to the custody of the department as unclaimed property if the conditions leading to a presumption that the property is unclaimed as described in ss. 717.102 and 717.105-717.116 are satisfied and:

(1)   The last known address, as shown on the records of the holder, of the apparent owner is in this state;

(2)   The records of the holder do not reflect the identity of the person entitled to the property, and it is established that the last known address of the person entitled to the property is in this state;

(3)   The records of the holder do not reflect the last known address of the apparent owner, and it is established that:

(a)   The last known address of the person entitled to the property is in this state; or

(b)   The holder is a domiciliary or a government or governmental subdivision or agency of this state and has not previously paid the property to the state of the last known address of the apparent owner or other person entitled to the property;

(4)   The last known address, as shown on the records of the holder, of the apparent owner or other person entitled to the property is in a state that does not provide by law for the escheat or custodial taking of the property, or its escheat or unclaimed property law is not applicable to the property, and the holder is a domiciliary or a government or governmental subdivision or agency of this state;

(5)   The last known address, as shown on the records of the holder, of the apparent owner is in a foreign nation and the holder is a domiciliary or a government or governmental subdivision or agency of this state; or

(6)   The transaction out of which the property arose occurred in this state, and,

(a)1.   The last known address of the apparent owner or other person entitled to the property is unknown; or

2.   The last known address of the apparent owner or other person entitled to the property is in a state that does not provide by law for the escheat or custodial taking of the property, or its escheat or unclaimed property law is not applicable to the property; and

(b)    The holder is a domiciliary of a state that does not provide by law for the escheat or custodial taking of the property, or its escheat or unclaimed property law is not applicable to the property.

History.—s. 4, ch. 87-105; s. 3, ch. 2001-36.

### 717.1035     Property originated or issued by this state, any political subdivision of this state, or any entity incorporated, organized, created, or otherwise located in the state.—

(1)    All intangible property, including, but not limited to, any interest, dividend, or other earnings thereon, less any lawful charges, held by a business association, federal, state, or local government or governmental subdivision, agency, or entity, or any other person or entity, regardless of where the holder may be found, if the owner has not claimed or corresponded in writing concerning the property within 3 years after the date prescribed for payment or delivery, is presumed to be unclaimed property and subject to the custody of this state as such if:

(a)    The last known address of the owner is unknown; and

(b)    The person or entity originating or issuing the intangible property is this state or any political subdivision of this state, or the person or entity is incorporated, organized, created, or otherwise located in this state.

(2)    The provisions of subsection (1) shall not apply to property which is or may be presumed unclaimed and subject to the custody of this state pursuant to any other provision of law containing a dormancy period different than that prescribed in subsection (1).

(3)    The provisions of subsection (1) shall apply to all property held at the time of enactment, or at any time thereafter, regardless of when such property became or becomes presumptively unclaimed.

History.—s. 1, ch. 90-113; s. 2, ch. 92-169; s. 4, ch. 2001-36.

### 717.104     Traveler's checks and money orders.—

(1)    Subject to subsection (4), any sum payable on a traveler's check that has been outstanding for more than 15 years after its issuance is presumed unclaimed unless the owner, within 15 years, has communicated in writing with the issuer concerning it or otherwise indicated an interest as evidenced by a memorandum or other record on file with the issuer.

(2)    Subject to subsection (4), any sum payable on a money order or similar written instrument, other than a third party bank check, that has been outstanding for more than 7 years after its issuance is presumed unclaimed unless the owner, within 7 years, has communicated in writing with the issuer concerning it or otherwise indicated an interest as evidenced by a memorandum or other record on file with the issuer.

(3)    No holder may deduct from the amount of any traveler's check or money order any charges imposed by reason of the failure to present those instruments for payment unless there is a valid and enforceable written contract between the issuer and the owner of the property pursuant to which the issuer may impose those charges and the issuer regularly imposes those charges and does not regularly reverse or otherwise cancel those charges with respect to the property.

(4)    No sum payable on a traveler's check, money order, or similar written instrument, other than a third party bank check, described in subsections (1) and (2) may be subjected to the custody of this state as unclaimed property unless:

(a)    The records of the issuer show that the traveler's check, money order, or similar written instrument was purchased in this state;

(b)    The issuer has its principal place of business in this state and the records of the issuer do not show the state in which the traveler's check, money order, or similar written instrument was purchased; or

(c)    The issuer has its principal place of business in this state; the records of the issuer show the state in which the traveler's check, money order, or similar written instrument was purchased; and the laws of the state of purchase do not provide for the escheat or custodial taking of the property, or its escheat or unclaimed property law is not applicable to the property.

(5)    Notwithstanding any other provision of this chapter, subsection (4) applies to sums payable on traveler's checks, money orders, and similar written instruments presumed unclaimed on or after February 1, 1965, except to the extent that those sums have been paid over to a state prior to January 1, 1974.

History.—s. 5, ch. 87-105; s. 5, ch. 2001-36.

717.1045   Gift certificates and similar credit items.—Notwithstanding s. 717.147, an unredeemed gift certificate or credit memo as defined in s. 501.95 is not required to be reported as unclaimed property.

(1)   The consideration paid for an unredeemed gift certificate or credit memo is the property of the issuer of the unredeemed gift certificate or credit memo.

(2)   An unredeemed gift certificate or credit memo is subject only to any rights of a purchaser or owner thereof and is not subject to a claim made by any state acting on behalf of a purchaser or owner.

(3)   It is the intent of the Legislature that this section apply to the custodial holding of unredeemed gift certificates and credit memos.

(4)   However, a gift certificate or credit memo described in s. 501.95(2)(b) shall be reported as unclaimed property. The consideration paid for such a gift certificate or credit memo is the property of the owner of the gift certificate or credit memo.

History.—s. 2, ch. 2007-256.

717.105   Checks, drafts, and similar instruments issued or certified by banking and financial organizations.—

(1)   Any sum payable on a check, draft, or similar instrument, except those subject to ss. 717.104 and 717.115, on which a banking or financial organization is directly liable, including, but not limited to, a cashier's check or a certified check, which has been outstanding for more than 5 years after it was payable or after its issuance if payable on demand, is presumed unclaimed unless the owner, within 5 years, has communicated in writing with the banking or financial organization concerning it or otherwise indicated an interest as evidenced by a memorandum or other record on file with the banking or financial organization.

(2)   No holder may deduct from the amount of any instrument subject to this section any charges imposed by reason of the failure to present the instrument for encashment unless there is a valid and enforceable written contract between the holder and the owner of the instrument pursuant to which the holder may impose those charges and does not regularly reverse or otherwise cancel those charges with respect to the instrument.

History.—s. 6, ch. 87-105; s. 2, ch. 96-301; s. 6, ch. 2001-36.

717.106   Bank deposits and funds in financial organizations.—

(1)   Any demand, savings, or matured time deposit with a banking or financial organization, including deposits that are automatically renewable, and any funds paid toward the purchase of shares, a mutual investment certificate, or any other interest in a banking or financial organization is presumed unclaimed unless the owner has, within 5 years:

(a)   Increased or decreased the amount of the deposit or presented the passbook or other similar evidence of the deposit for the crediting of interest;

(b)   Communicated in writing or by documented telephone contact with the banking or financial organization concerning the property;

(c)   Otherwise indicated an interest in the property as evidenced by a memorandum or other record on file with the banking or financial organization;

(d)   Owned other property to which paragraph (a), paragraph (b), or paragraph (c) is applicable and if the banking or financial organization communicates in writing with the owner with regard to the property that would otherwise be presumed unclaimed under this subsection at the address to which communications regarding the other property regularly are sent; or

(e)   Had another relationship with the banking or financial organization concerning which the owner has:

1.   Communicated in writing with the banking or financial organization; or

2.   Otherwise indicated an interest as evidenced by a memorandum or other record on file with the banking or financial organization and if the banking or financial organization communicates in writing with the owner with regard to the property that would otherwise be unclaimed under this subsection at the address to which communications regarding the other relationship regularly are sent.

(2)   For purpose of paragraph (1)(a), property includes any interest or dividends thereon.

(3)   No holder may impose with respect to property described in subsection (1) any charges due to dormancy or inactivity or cease payment of interest unless:

(a)   There is an enforceable written contract between the holder and the owner of the property pursuant to which the holder may impose those charges or cease payment of interest.

(b)   For property in excess of $2, the holder, no more than 3 months prior to the initial imposition of those charges or cessation of interest, has given written notice to the owner of the amount of those charges at the last known address of the owner stating that those charges shall be imposed or that interest shall cease, but the notice provided in this section need not be given with respect to charges imposed or interest ceased before July 1, 1987.

(c)   The holder regularly imposes those charges or ceases payment of interest and does not regularly reverse or otherwise cancel those charges or retroactively credit interest with respect to such property.

(4)   Any property described in subsection (1) that is automatically renewable is matured for purposes of subsection (1) upon the expiration of its initial time period except that, in the case of any renewal to which the owner consents at or about the time of renewal by communicating in writing with the banking or financial organization or otherwise indicating consent as evidenced by a memorandum or other record on file prepared by an employee of the organization, the property is matured upon the expiration of the last time period for which consent was given. If, at the time provided for delivery in s. 717.119, a penalty or forfeiture in the payment of interest would result from the delivery of the property, the time for delivery is extended until the time when no penalty or forfeiture would result.

(5)   If the documents establishing a deposit described in subsection (1) state the address of a beneficiary of the deposit, and the account has a value of at least $50, notice shall be given to the beneficiary as provided for notice to the apparent owner under s. 717.117(4). This subsection shall apply to accounts opened on or after October 1, 1990.

History.—s. 7, ch. 87-105; s. 2, ch. 90-113; s. 63, ch. 91-110; s. 3, ch. 96-301; s. 7, ch. 2001-36; s. 111, ch. 2004-390; s. 2, ch. 2005-163.

**717.107   Funds owing under life insurance policies, annuity contracts, and retained asset accounts; fines, penalties, and interest; United States Social Security Administration Death Master File.**—

(1)   Funds held or owing under any life or endowment insurance policy or annuity contract which has matured or terminated are presumed unclaimed if unclaimed for more than 5 years after the date of death of the insured, the annuitant, or the retained asset account holder, but property described in paragraph (3)(d) is presumed unclaimed if such property is not claimed for more than 2 years. The amount presumed unclaimed shall include any amount due and payable under s. 627.4615.

(2)   If a person other than the insured, the annuitant, or the retained asset account holder is entitled to the funds and no address of the person is known to the company or it is not definite and certain from the records of the company who is entitled to the funds, it is presumed that the last known address of the person entitled to the funds is the same as the last known address of the insured, the annuitant, or the retained asset account holder according to the records of the company.

(3)   For purposes of this chapter, a life or endowment insurance policy or annuity contract not matured by actual proof of the death of the insured, the annuitant, or the retained asset account holder according to the records of the company is deemed matured and the proceeds due and payable if any of the following applies:

(a)   The company knows that the insured, the annuitant, or the retained asset account holder has died.

(b)   A presumption of death made in accordance with paragraph (8)(c) has not been rebutted.

(c)   The policy or contract has reached its maturity date.

(d)1.   The insured has attained, or would have attained if he or she were living, the limiting age under the mortality table on which the reserve is based;

2.   The policy was in force at the time the insured attained, or would have attained, the limiting age specified in subparagraph 1.; and

3.   Neither the insured nor any other person appearing to have an interest in the policy within the preceding 2 years, according to the records of the company, has assigned, readjusted, or paid premiums on the policy; subjected the policy to a loan; corresponded in writing with the company concerning the policy; or otherwise

USGA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 67 of 92

indicated an interest as evidenced by a memorandum or other record on file prepared by an employee of the company.

(4)    For purposes of this chapter, the application of an automatic premium loan provision or other nonforfeiture provision contained in an insurance policy does not prevent the policy from being matured or terminated under subsection (1) if the insured has died or the insured or the beneficiaries of the policy otherwise have become entitled to the proceeds thereof before the depletion of the cash surrender value of a policy by the application of those provisions.

(5)    If the laws of this state or the terms of the life insurance policy require the company to give notice to the insured or owner that an automatic premium loan provision or other nonforfeiture provision has been exercised and the notice, given to an insured or owner whose last known address according to the records of the company is in this state, is undeliverable, the company shall make a reasonable search to ascertain the policyholder's correct address to which the notice must be mailed.

(6)    Notwithstanding any other provision of law, if the company learns of the death of the insured, the annuitant, or the retained asset account holder and the beneficiary has not communicated with the insurer within 4 months after the death, the company shall take reasonable steps to pay the proceeds to the beneficiary.

(7)    Commencing 2 years after July 1, 1987, every change of beneficiary form issued by an insurance company under any life or endowment insurance policy or annuity contract to an insured or owner who is a resident of this state must request the following information:

(a)    The name of each beneficiary, or if a class of beneficiaries is named, the name of each current beneficiary in the class.

(b)    The address of each beneficiary.

(c)    The relationship of each beneficiary to the insured.

(8)(a)    Notwithstanding any other provision of law, an insurer shall compare the records of its insureds' life or endowment insurance policies, annuity contracts that provide a death benefit, and retained asset accounts that were in force at any time on or after January 1, 1992, against the United States Social Security Administration Death Master File once to determine whether the death of an insured, an annuitant, or a retained asset account holder is indicated and shall thereafter use the Death Master File update files for future comparisons. The comparisons must use the name and social security number or date of birth of the insured, the annuitant, or the retained asset account holder. The comparisons must be made on at least an annual basis before August 31 of each year. If an insurer performs such comparisons regarding its annuities or other books of business more frequently than once a year, the insurer must also make comparisons regarding its life insurance policies, annuity contracts that provide a death benefit, and retained asset accounts at the same frequency as is made regarding its annuities or other books or lines of business. An insurer may perform the comparisons required by this paragraph using any database or service that the department determines is at least as comprehensive as the United States Social Security Administration Death Master File for the purpose of indicating that a person has died.

(b)    However, an insurer that meets one of the following criteria as of June 30, 2016, shall conduct the comparison in paragraph (a) to all in-force policies:

1.    The insurer has entered into a regulatory settlement agreement with the Office of Insurance Regulation; or

2.    The insurer has received a targeted market conduct examination report issued by the Office of Insurance Regulation regarding claims-handling practices and the use of the Death Master File with no findings of violations of law.

(c)    An insured, an annuitant, or a retained asset account holder is presumed deceased if the date of his or her death is indicated by the comparison required under paragraph (a) unless the insurer has in its records competent and substantial evidence that the person is living, including, but not limited to, a contact made by the insurer with such person or his or her legal representative. The insurer shall account for common variations in data and for any partial names, social security numbers, dates of birth, and addresses of the insured, the annuitant, or the retained asset account holder which would otherwise preclude an exact match.

(d)    For purposes of this section, a policy, an annuity contract, or a retained asset account is deemed to be in force if it has not lapsed, has not been canceled, or has not been terminated at the time of death of the insured,

the annuitant, or the retained asset account holder.

USCA11 Case: 23-13178      Document: 18      Date Filed: 12/07/2023      Page: 68 of 92

(e)   This subsection does not apply to an insurer with respect to benefits payable under:

1.   An annuity that is issued in connection with an employment-based plan subject to the Employee Retirement Income Security Act of 1974 or that is issued to fund an employment-based retirement plan, including any deferred compensation plan.

2.   A policy of credit life or accidental death insurance.

3.   A joint and survivor annuity contract if an annuitant is still living.

4.   A policy issued to a group master policy owner for which the insurer does not perform recordkeeping functions. For purposes of this subparagraph, the term "recordkeeping" means those circumstances under which the insurer has agreed through a group policyholder to be responsible for obtaining, maintaining, and administering, in its own or its agents' systems, information about each individual insured under a group insurance policy or a line of coverage thereunder, including at least the following:

a.   The social security number, or name and date of birth;

b.   Beneficiary designation information;

c.   Coverage eligibility;

d.   The benefit amount; and

e.   Premium payment status.

5.   Any policy or certificate of life insurance that is assigned to a person licensed under s. 497.452 to fund a preneed funeral merchandise or service contract.

(9)   No later than 120 days after learning of the death of an insured, an annuitant, or a retained asset account holder through a comparison under subsection (8), an insurer shall:

(a)   Complete and document an effort to confirm the death of the insured, the annuitant, or the retained asset account holder against other available records and information.

(b)   Review its records to determine whether the insured, the annuitant, or the retained asset account holder purchased other products from the insurer.

(c)   Determine whether benefits may be due under a policy, an annuity, or a retained asset account.

(d)   Complete and document an effort to locate and contact the beneficiary or authorized representative under a policy, an annuity, or a retained asset account if such person has not communicated with the insurer before the expiration of the 120-day period. The effort must include:

1.   Sending to the beneficiary or authorized representative information concerning the claim process of the insurer.

2.   Notice of any requirement to provide a certified original or copy of the death certificate if applicable under the policy, annuity, or retained asset account.

(10)   An insurer may, to the extent permitted by law, disclose the minimum necessary personal information about an insured, an annuitant, a retained asset account owner, or a beneficiary to an individual or entity reasonably believed by the insurer to possess the ability to assist the insurer in locating the beneficiary or any other individual or entity that is entitled to payment of the claim proceeds.

(11)   An insurer, or any agent or third party that it engages or that works on its behalf, may not charge insureds, annuitants, retained asset account holders, beneficiaries, or the estates of insureds, annuitants, retained asset account holders, or the beneficiaries of an estate any fees or costs associated with any search, verification, claim, or delivery of funds conducted pursuant to this section.

History.—s. 8, ch. 87-105; s. 849, ch. 97-102; s. 8, ch. 2001-36; s. 112, ch. 2004-390; s. 1, ch. 2016-219.

### [1]717.1071   Lost owners of unclaimed demutualization, rehabilitation, or related reorganization proceeds.—

(1)   Property distributable in the course of a demutualization, rehabilitation, or related reorganization of an insurance company is deemed abandoned 2 years after the date the property is first distributable if, at the time of the first distribution, the last known address of the owner on the books and records of the holder is known to be incorrect or the distribution or statements are returned by the post office as undeliverable; and the owner has not

communicated in writing with the holder or its agent regarding the interest or otherwise communicated with the holder regarding the interest as evidenced by a memorandum or other record on file with the holder or its agent.

(2)    Property distributable in the course of demutualization, rehabilitation, or related reorganization of a mutual insurance company that is not subject to subsection (1) shall be reportable as otherwise provided by this chapter.

(3)    Property subject to this section shall be reported and delivered no later than May 1 as of the preceding December 31; however, the initial report under this section shall be filed no later than November 1, 2003, as of December 31, 2002.

History.—s. 2, ch. 2003-21; s. 75, ch. 2003-281.

[1]Note.—As enacted by s. 75, ch. 2003-281. For a description of multiple acts in the same session affecting a statutory provision, *see* preface to the *Florida Statutes*, "Statutory Construction." Section 717.1071 was also enacted by s. 2, ch. 2003-21, and that version reads:

717.1071    Unclaimed demutualization proceeds.—Unclaimed property payable or distributable in the course of a demutualization of an insurance company is presumed unclaimed 5 years after the earlier of the date of last contact with the policyholder or the date the property became payable or distributable.

### 717.108    Deposits held by utilities.

—Any deposit, including any interest thereon, made by a subscriber with a utility to secure payment or any sum paid in advance for utility services to be furnished, less any lawful charges, that remains unclaimed by the owner for more than 1 year after termination of the services for which the deposit or advance payment was made is presumed unclaimed.

History.—s. 9, ch. 87-105; s. 4, ch. 96-301; s. 9, ch. 2001-36.

### 717.109    Refunds held by business associations.

—Except as otherwise provided by law, any sum that a business association has been ordered to refund by a court or administrative agency which has been unclaimed by the owner for more than 1 year after it became payable in accordance with the final determination or order providing for the refund, regardless of whether the final determination or order requires any person entitled to a refund to make a claim for it, is presumed unclaimed.

History.—s. 10, ch. 87-105; s. 10, ch. 2001-36; s. 113, ch. 2004-390.

### 717.1101    Unclaimed equity and debt of business associations.—

(1)(a)    Stock or other equity interest in a business association is presumed unclaimed 3 years after the earliest of:

1.    The date of the most recent dividend, stock split, or other distribution unclaimed by the apparent owner;

2.    The date of a statement of account or other notification or communication that was returned as undeliverable; or

3.    The date the holder discontinued mailings, notifications, or communications to the apparent owner.

(b)    Unmatured or unredeemed debt, other than a bearer bond or an original issue discount bond, is presumed unclaimed 3 years after the date of the most recent interest payment unclaimed by the owner.

(c)    Matured or redeemed debt is presumed unclaimed 3 years after the date of maturity or redemption.

(d)    At the time property is presumed unclaimed under paragraph (a) or paragraph (b), any other property right accrued or accruing to the owner as a result of the property interest and not previously presumed unclaimed is also presumed unclaimed.

(2)    The running of such 3-year period ceases if the person:

(a)1.    Communicates in writing with the association or its agent regarding the interest or a dividend, distribution, or other sum payable as a result of the interest; or

2.    Otherwise communicates with the association regarding the interest or a dividend, distribution, or other sum payable as a result of the interest, as evidenced by a memorandum or other record on file with the association or its agent.

(b)    Presents an instrument issued to pay interest or a dividend or other cash distribution. If any future dividend, distribution, or other sum payable to the owner as a result of the interest is subsequently not claimed by the owner, a new period in which the property is presumed unclaimed commences and relates back only to the time a subsequent dividend, distribution, or other sum became due and payable.

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 70 of 92

(3)   At the same time any interest is presumed unclaimed under this section, any dividend, distribution, or other sum then held for or owing to the owner as a result of the interest, is presumed unclaimed.

(4)   Any dividend, profit, distribution, interest redemption, payment on principal, or other sum held or owing by a business association for or to a shareholder, certificateholder, member, bondholder, or other security holder, who has not claimed such amount or corresponded in writing with the business association concerning such amount, within 3 years after the date prescribed for payment or delivery, is presumed unclaimed.

History.—s. 11, ch. 87-105; s. 5, ch. 96-301; s. 11, ch. 2001-36; s. 3, ch. 2003-21; s. 3, ch. 2005-163.

**717.111    Property of business associations held in course of dissolution.**—All intangible property distributable in the course of a voluntary or involuntary dissolution of a business association which is not claimed by the owner for more than 6 months after the date specified for final distribution is presumed unclaimed.

History.—s. 12, ch. 87-105; s. 12, ch. 2001-36.

**717.112    Property held by agents and fiduciaries.**—

(1)   Except as provided in ss. 717.1125 and 733.816, all intangible property and any income or increment thereon held in a fiduciary capacity for the benefit of another person is presumed unclaimed unless the owner has within 5 years after it has become payable or distributable increased or decreased the principal, accepted payment of principal or income, communicated concerning the property, or otherwise indicated an interest as evidenced by a memorandum or other record on file with the fiduciary.

(2)   Funds in an individual retirement account or a retirement plan for self-employed individuals or similar account or plan established pursuant to the Internal Revenue laws of the United States are not payable or distributable within the meaning of subsection (1) unless, under the terms of the account or plan, distribution of all or part of the funds would then be mandatory.

(3)   For the purpose of this section, a person who holds property as an agent for a business association is deemed to hold the property in a fiduciary capacity for that business association alone, unless the agreement between said person and the business association provides otherwise.

(4)   For the purposes of this chapter, a person who is deemed to hold property in a fiduciary capacity for a business association alone is the holder of the property only insofar as the interest of the business association in the property is concerned, and the business association is the holder of the property insofar as the interest of any other person in the property is concerned.

(5)   All intangible property, and any income or increment thereon, issued by a government or governmental subdivision or agency, public corporation, or public authority and held in an agency capacity for the governmental subdivision, agency, public corporation, or public authority for the benefit of the owner of record, is presumed unclaimed unless the owner has, within 1 year after such property has become payable or distributable, increased or decreased the principal, accepted payment of the principal or income, communicated concerning the property, or otherwise indicated an interest in the property as evidenced by a memorandum or other record on file with the fiduciary.

History.—s. 13, ch. 87-105; s. 6, ch. 96-301; s. 13, ch. 2001-36; s. 3, ch. 2013-172.

**717.1125    Property held by fiduciaries under trust instruments.**—All intangible property and any income or increment thereon held in a fiduciary capacity for the benefit of another person under a trust instrument is presumed unclaimed unless the owner has, within 2 years after it has become payable or distributable, increased or decreased the principal, accepted payment of principal or income, communicated concerning the property, or otherwise indicated an interest as evidenced by a memorandum or other record on file with the fiduciary.

History.—s. 4, ch. 2013-172.

**717.113    Property held by courts and public agencies.**—All intangible property held for the owner by any court, government or governmental subdivision or agency, public corporation, or public authority that has not been claimed by the owner for more than 1 year after it became payable or distributable is presumed unclaimed. Except as provided in s. 45.032(3)(c), money held in the court registry and for which no court order has been issued to determine an owner does not become payable or distributable and is not subject to reporting under this chapter.

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 71 of 92

Notwithstanding the provisions of this section, funds deposited in the Minerals Trust Fund pursuant to s. 377.247 are presumed unclaimed only if the funds have not been claimed by the owner for more than 5 years after the date of first production from the well.

History.—s. 14, ch. 87-105; s. 4, ch. 94-193; s. 71, ch. 96-321; s. 14, ch. 2001-36; s. 8, ch. 2018-71.

**717.115    Wages.**—Unpaid wages, including wages represented by unpresented payroll checks, owing in the ordinary course of the holder's business that have not been claimed by the owner for more than 1 year after becoming payable are presumed unclaimed.

History.—s. 16, ch. 87-105; s. 15, ch. 2001-36.

**717.116    Contents of safe-deposit box or other safekeeping repository.**—All tangible and intangible property held by a banking or financial organization in a safe-deposit box or any other safekeeping repository in this state in the ordinary course of the holder's business, and proceeds resulting from the sale of the property permitted by law, that has not been claimed by the owner for more than 3 years after the lease or rental period on the box or other repository has expired are presumed unclaimed.

History.—s. 17, ch. 87-105; s. 8, ch. 96-301; s. 16, ch. 2001-36; s. 114, ch. 2004-390.

**717.117    Report of unclaimed property.**—

(1)    Every person holding funds or other property, tangible or intangible, presumed unclaimed and subject to custody as unclaimed property under this chapter shall report to the department on such forms as the department may prescribe by rule. In lieu of forms, a report identifying 25 or more different apparent owners must be submitted by the holder via electronic medium as the department may prescribe by rule. The report must include:

(a)    Except for traveler's checks and money orders, the name, social security number or taxpayer identification number, and date of birth, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property which is presumed unclaimed and which has a value of $50 or more.

(b)    For unclaimed funds which have a value of $50 or more held or owing under any life or endowment insurance policy or annuity contract, the full name, taxpayer identification number or social security number, date of birth, if known, and last known address of the insured or annuitant and of the beneficiary according to records of the insurance company holding or owing the funds.

(c)    For all tangible property held in a safe-deposit box or other safekeeping repository, a description of the property and the place where the property is held and may be inspected by the department, and any amounts owing to the holder. Contents of a safe-deposit box or other safekeeping repository which consist of documents or writings of a private nature and which have little or no apparent value shall not be presumed unclaimed.

(d)    The nature and identifying number, if any, or description of the property and the amount appearing from the records to be due. Items of value under $50 each may be reported in the aggregate.

(e)    The date the property became payable, demandable, or returnable, and the date of the last transaction with the apparent owner with respect to the property.

(f)    Any person or business association or public corporation holding funds presumed unclaimed and having a total value of $10 or less may file a zero balance report for that reporting period. The balance brought forward to the new reporting period is zero.

(g)    Such other information as the department may prescribe by rule as necessary for the administration of this chapter.

(h)    Credit balances, customer overpayments, security deposits, and refunds having a value of less than $10 shall not be presumed unclaimed.

(2)    If the holder of property presumed unclaimed and subject to custody as unclaimed property is a successor holder or if the holder has changed the holder's name while in possession of the property, the holder shall file with the holder's report all known names and addresses of each prior holder of the property. Compliance with this subsection means the holder exercises reasonable and prudent efforts to determine the names of all prior holders.

(3)    The report must be filed before May 1 of each year. The report shall apply to the preceding calendar year. The department may impose and collect a penalty of $10 per day up to a maximum of $500 for the failure to timely

report or the failure to include in a report information required by this chapter. The penalty shall be remitted to the department within 30 days after the date of the notification to the holder that the penalty is due and owing. As necessary for proper administration of this chapter, the department may waive any penalty due with appropriate justification. On written request by any person required to file a report and upon a showing of good cause, the department may postpone the reporting date. The department must provide information contained in a report filed with the department to any person requesting a copy of the report or information contained in a report, to the extent the information requested is not confidential, within 45 days after the report has been processed and added to the unclaimed property database subsequent to a determination that the report is accurate and that the reported property is the same as the remitted property.

(4)   Holders of inactive accounts having a value of $50 or more shall use due diligence to locate apparent owners. Not more than 120 days and not less than 60 days prior to filing the report required by this section, the holder in possession of property presumed unclaimed and subject to custody as unclaimed property under this chapter shall send written notice to the apparent owner at the apparent owner's last known address informing the apparent owner that the holder is in possession of property subject to this chapter, if the holder has in its records an address for the apparent owner which the holder's records do not disclose to be inaccurate.

(5)   Any holder of intangible property may file with the department a petition for determination that the property is unclaimed requesting the department to accept custody of the property. The petition shall state any special circumstances that exist, contain the information required by subsection (2), and show that a diligent search has been made to locate the owner. If the department finds that the proof of diligent search is satisfactory, it shall give notice as provided in s. 717.118 and accept custody of the property.

(6)   Upon written request by any entity or person required to file a report, stating such entity's or person's justification for such action, the department may place that entity or person in an inactive status as an unclaimed property "holder."

(7)(a)   This section does not apply to the unclaimed patronage refunds as provided for by contract or through bylaw provisions of entities organized under chapter 425 or that are exempt from ad valorem taxation pursuant to s. 196.2002.

(b)   This section does not apply to intangible property held, issued, or owing by a business association subject to the jurisdiction of the United States Surface Transportation Board or its successor federal agency if the apparent owner of such intangible property is a business association. The holder of such property does not have any obligation to report, to pay, or to deliver such property to the department.

(c)   This section does not apply to credit balances, overpayments, refunds, or outstanding checks owed by a health care provider to a managed care payor with whom the health care provider has a managed care contract, provided that the credit balances, overpayments, refunds, or outstanding checks become due and owing pursuant to the managed care contract.

(8)(a)   As used in this subsection, the term "property identifier" means the descriptor used by the holder to identify the unclaimed property.

(b)   Social security numbers and property identifiers contained in reports required under this section, held by the department, are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution.

(c)   This exemption applies to social security numbers and property identifiers held by the department before, on, or after the effective date of this exemption.

History.—s. 18, ch. 87-105; s. 1, ch. 92-169; s. 30, ch. 92-319; s. 1, ch. 93-280; s. 9, ch. 96-301; s. 1771, ch. 97-102; s. 17, ch. 2001-36; s. 1, ch. 2002-64; s. 1888, ch. 2003-261; s. 115, ch. 2004-390; s. 4, ch. 2005-163; s. 1, ch. 2007-69; s. 1, ch. 2012-227; s. 2, ch. 2016-90; s. 1, ch. 2017-33.

### 717.118   Notification of apparent owners of unclaimed property.—

(1)   It is specifically recognized that the state has an obligation to make an effort to notify owners of unclaimed property in a cost-effective manner. In order to provide all the citizens of this state an effective and efficient program for the recovery of unclaimed property, the department shall use cost-effective means to make at least one active attempt to notify owners of unclaimed property accounts valued at more than $250 with a reported

USCA11 Case: 23-13178　　Document: 18　　Date Filed: 12/07/2023　　Page: 73 of 92

address of taxpayer identification number. Such active attempt to notify apparent owners shall include any attempt by the department to directly contact the owner. Other means of notification, such as publication of the names of owners in the newspaper, on television, on the Internet, or through other promotional efforts and items in which the department does not directly attempt to contact the owner are expressly declared to be passive attempts. Nothing in this subsection precludes other agencies or entities of state government from notifying owners of the existence of unclaimed property or attempting to notify apparent owners of unclaimed property.

(2)　Notification provided directly to individual apparent owners shall consist of a description of the property and information regarding recovery of unclaimed property from the department.

(3)　This section is not applicable to sums payable on traveler's checks, money orders, and other written instruments presumed unclaimed under s. 717.104.

History.—s. 19, ch. 87-105; s. 2, ch. 88-256; s. 31, ch. 92-319; s. 2, ch. 93-280; s. 10, ch. 96-301; s. 18, ch. 2001-36; s. 116, ch. 2004-390; s. 5, ch. 2005-163.

**717.119　Payment or delivery of unclaimed property.—**

(1)　Every person who is required to file a report under s. 717.117 shall simultaneously pay or deliver to the department all unclaimed property required to be reported. Such payment or delivery shall accompany the report as required in this chapter for the preceding calendar year.

(2)　Payment of unclaimed funds may be made to the department by electronic funds transfer.

(3)　If the owner establishes the right to receive the unclaimed property to the satisfaction of the holder before the property has been delivered to the department or it appears that for some other reason the presumption that the property is unclaimed is erroneous, the holder need not pay or deliver the property to the department. In lieu of delivery, the holder shall file a verified written explanation of the proof of claim or of the error in the presumption that the property was unclaimed.

(4)　All stock or other intangible ownership interest reported under this chapter on the annual report filing required in s. 717.117 shall be remitted to the department with the report. Upon delivery of the stock or other intangible ownership interest to the department, the holder and any transfer agent, registrar, or other person acting for or on behalf of a holder is relieved of all liability of every kind in accordance with the provisions of s. 717.1201 to every person for any losses or damages resulting to the person by the delivery to the department of the stock or other intangible ownership interest.

(5)　All intangible and tangible property held in a safe-deposit box or any other safekeeping repository reported under s. 717.117 shall not be delivered to the department until 120 days after the report due date. The delivery of the property, through the United States mail or any other carrier, shall be insured by the holder at an amount equal to the estimated value of the property. Each package shall be clearly marked on the outside "Deliver Unopened." A holder's safe-deposit box contents shall be delivered to the department in a single shipment. In lieu of a single shipment, holders may provide the department with a single detailed shipping schedule that includes package tracking information for all packages being sent pursuant to this section.

(a)　Holders may remit the value of cash and coins found in unclaimed safe-deposit boxes to the department by cashier's check or by electronic funds transfer, unless the cash or coins have a value above face value. The department shall identify by rule those cash and coin items having a numismatic value. Cash and coin items identified as having a numismatic value shall be remitted to the department in their original form.

(b)　Any firearm or ammunition found in an unclaimed safe-deposit box or any other safekeeping repository shall be delivered by the holder to a law enforcement agency for disposal pursuant to s. 705.103(2)(b) with the balance of the proceeds deposited into the State School Fund if the firearm is sold. However, the department is authorized to make a reasonable attempt to ascertain the historical value to collectors of any firearm that has been delivered to the department. Any firearm appearing to have historical value to collectors may be sold by the department pursuant to s. 717.122 to a person having a federal firearms license. Any firearm which is not sold pursuant to s. 717.122 shall be delivered by the department to a law enforcement agency in this state for disposal pursuant to s. 705.103(2)(b) with the balance of the proceeds deposited into the State School Fund if the firearm is sold. The

USCA11 Case: 23-13178     Document: 18     Date Filed: 12/07/2023     Page: 74 of 92

department shall not be administratively, civilly, or criminally liable for any firearm delivered by the department to a law enforcement agency in this state for disposal.

(c) If such property is not paid or delivered to the department on or before the applicable payment or delivery date, the holder shall pay to the department a penalty for each safe-deposit box shipment received late. The penalty shall be $100 for a safe-deposit box shipment container that is late 30 days or less. Thereafter, the penalty shall be $500 for a safe-deposit box shipment container that is late for each additional successive 30-day period. The penalty assessed against a holder for a late safe-deposit box shipment container shall not exceed $4,000 annually. The penalty shall be remitted to the department within 30 days after the date of the notification to the holder that the penalty is due and owing.

(d) The department may waive any penalty due with appropriate justification, as provided by rule.

(e) If a will or trust instrument is included among the contents of a safe-deposit box or other safekeeping repository delivered to the department, the department must provide a copy of the will, trust, and any codicils or amendments to such will or trust instrument, upon request, to anyone who provides the department with evidence of the death of the testator or settlor.

(6) Any holder may request an extension in writing of up to 60 days for the delivery of property if extenuating circumstances exist for the late delivery of the property. Any such extension the department may grant shall be in writing.

History.—s. 20, ch. 87-105; s. 11, ch. 96-301; s. 19, ch. 2001-36; s. 4, ch. 2003-21; s. 117, ch. 2004-390; s. 6, ch. 2005-163; s. 1, ch. 2021-144.

### 717.1201   Custody by state; holder relieved from liability; reimbursement of holder paying claim; reclaiming for owner; defense of holder; payment of safe-deposit box or repository charges.—

(1) Upon the payment or delivery of property to the department, the state assumes custody and responsibility for the safekeeping of property. Any person who pays or delivers property to the department in good faith is relieved of all liability to the extent of the value of the property paid or delivered for any claim then existing or which thereafter may arise or be made in respect to the property.

(2) Any holder who has paid money to the department pursuant to this chapter may make payment to any person appearing to be entitled to payment and, upon filing proof that the payee is entitled thereto, the department shall forthwith repay the holder without deduction of any fee or other charges. If repayment is sought for a payment made on a negotiable instrument, including a traveler's check or money order, the holder must be repaid under this subsection upon filing proof that the instrument was duly presented and that the payee is entitled to payment. The holder shall be repaid for payment made under this subsection even if the payment was made to a person whose claim was barred under s. 717.129(1).

(3) Any holder who has delivered property, including a certificate of any interest in a business association, other than money to the department pursuant to this chapter may reclaim the property if still in the possession of the department, without payment of any fee or other charges, upon filing proof that the owner has claimed the property from the holder.

(4) The department may accept an affidavit of the holder stating the facts that entitle the holder to recover money and property under this section as sufficient proof.

(5) If the holder pays or delivers property to the department in good faith and thereafter any other person claims the property from the holder paying or delivering, or another state claims the money or property under that state's laws relating to escheat or abandoned or unclaimed property, the department, upon written notice of the claim, shall defend the holder against the claim and indemnify the holder against any liability on the claim.

(6) For the purposes of this section, "good faith" means that:

(a) Payment or delivery was made in a reasonable attempt to comply with this chapter.

(b) The person delivering the property was not a fiduciary then in breach of trust in respect to the property and had a reasonable basis for believing, based on the facts then known to that person, that the property was unclaimed for the purposes of this chapter.

USCA11 Case: 23-11078    Document: 18    Date Filed: 12/07/2023    Page: 75 of 92

(c)   There is no showing that the records pursuant to which the delivery was made did not meet reasonable commercial standards of practice in the industry.

(7)   Property removed from a safe-deposit box or other safekeeping repository is received by the department subject to the holder's right under this subsection to be reimbursed for the actual cost of the opening and to any valid lien or contract providing for the holder to be reimbursed for unpaid rent or storage charges. The department shall make the reimbursement to the holder out of the proceeds remaining after the deduction of the department's selling cost.

History.—s. 21, ch. 87-105; s. 20, ch. 2001-36; s. 118, ch. 2004-390.

**717.121    Crediting of dividends, interest, or increments to owner's account.**—Whenever property other than money is paid or delivered to the department under this chapter, the owner is entitled to receive from the department any dividends, interest, or other increments realized or accruing on the property at or before liquidation or conversion thereof into money.

History.—s. 22, ch. 87-105.

**717.122    Public sale of unclaimed property.**—

(1)   Except as provided in paragraph (2)(a), the department after the receipt of unclaimed property shall sell it to the highest bidder at public sale on the Internet or at a specified physical location wherever in the judgment of the department the most favorable market for the property involved exists. The department may decline the highest bid and reoffer the property for sale if in the judgment of the department the bid is insufficient. The department shall have the discretion to withhold from sale any unclaimed property that the department deems to be of benefit to the people of the state. If in the judgment of the department the probable cost of sale exceeds the value of the property, it need not be offered for sale and may be disposed of as the department determines appropriate. Any sale at a specified physical location held under this section must be preceded by a single publication of notice, at least 3 weeks in advance of sale, in a newspaper of general circulation in the county in which the property is to be sold. The department shall proportionately deduct auction fees, preparation costs, and expenses from the amount posted to the owner's account when safe-deposit box contents are sold. No action or proceeding may be maintained against the department for or on account of any decision to decline the highest bid or withhold any unclaimed property from sale.

(2)(a)   Securities listed on an established stock exchange must be sold at prices prevailing at the time of sale on the exchange. Other securities may be sold over the counter at prices prevailing at the time of sale or by any other method the department deems advisable. The department may authorize the agent or broker acting on behalf of the department to deduct fees from the proceeds of these sales at a rate agreed upon in advance by the agent or broker and the department. The department shall reimburse owners' accounts for these brokerage fees from the State School Fund unless the securities are sold at the owner's request.

(b)   Unless the department deems it to be in the public interest to do otherwise, all securities presumed unclaimed and delivered to the department may be sold upon receipt. Any person making a claim pursuant to this chapter is entitled to receive either the securities delivered to the department by the holder, if they still remain in the hands of the department, or the proceeds received from sale, but no person has any claim under this chapter against the state, the holder, any transfer agent, any registrar, or any other person acting for or on behalf of a holder for any appreciation in the value of the property occurring after delivery by the holder to the state.

(c)   Certificates for unclaimed stock or other equity interest of business associations that cannot be canceled and registered in the department's name or that cannot be readily liquidated and converted into the currency of the United States may be sold for the value of the certificate, if any, in accordance with subsection (1) or may be destroyed in accordance with s. 717.128.

(3)   The purchaser of property at any sale conducted by the department pursuant to this chapter is entitled to ownership of the property purchased free from all claims of the owner or previous holder thereof and of all persons claiming through or under them. The department shall execute all documents necessary to complete the transfer of ownership.

USGA 11 Case 23-13178 Document 18 Date Filed 12/07/2023 Page 76 of 92

(4)    The sale of unclaimed tangible personal property is not subject to tax under chapter 212 when such property is sold by or on behalf of the department pursuant to this section.

History.—s. 23, ch. 87-105; s. 3, ch. 90-113; s. 12, ch. 96-301; s. 21, ch. 2001-36; s. 119, ch. 2004-390; s. 7, ch. 2005-163.

### 717.123    Deposit of funds.—

(1)    All funds received under this chapter, including the proceeds from the sale of unclaimed property under s. 717.122, shall forthwith be deposited by the department in the Unclaimed Property Trust Fund. The department shall retain, from funds received under this chapter, an amount not exceeding $15 million from which the department shall make prompt payment of claims allowed by the department and shall pay the costs incurred by the department in administering and enforcing this chapter. All remaining funds received by the department under this chapter shall be deposited by the department into the State School Fund.

(2)    The department shall record the name and last known address of each person appearing from the holder's reports to be entitled to the unclaimed property in the total amounts of $5 or greater; the name and the last known address of each insured person or annuitant; and with respect to each policy or contract listed in the report of an insurance corporation, its number, the name of the corporation, and the amount due.

[1](3)    Notwithstanding subsection (1), and for the 2022-2023 fiscal year, the department shall retain, from funds received under this chapter, an amount not exceeding $65 million from which the department shall make prompt payment of claims allowed by the department and shall pay the costs incurred by the department in administering and enforcing this chapter. This subsection expires July 1, 2024.

History.—s. 24, ch. 87-105; s. 13, ch. 96-301; s. 22, ch. 2001-36; s. 120, ch. 2004-390; s. 48, ch. 2023-240.

[1]Note.—Section 48, ch. 2023-240, added subsection (3) "[i]n order to implement Specific Appropriations 2441 through 2448 of the 2023-2024 General Appropriations Act."

### 717.1235    Dormant campaign accounts; report of unclaimed property.—Unclaimed funds reported in the name of a campaign for public office, for any campaign that must dispose of surplus funds in its campaign account pursuant to s. 106.141, after being reported to the department, shall be deposited with the Chief Financial Officer to the credit of the State School Fund.

History.—s. 3, ch. 2016-90.

### 717.124    Unclaimed property claims.—

(1)    Any person, excluding another state, claiming an interest in any property paid or delivered to the department under this chapter may file with the department a claim on a form prescribed by the department and verified by the claimant or the claimant's representative. The claimant's representative must be an attorney licensed to practice law in this state, a licensed Florida-certified public accountant, or a private investigator licensed under chapter 493. The claimant's representative must be registered with the department under this chapter. The claimant, or the claimant's representative, shall provide the department with a legible copy of a valid driver license of the claimant at the time the original claim form is filed. If the claimant has not been issued a valid driver license at the time the original claim form is filed, the department shall be provided with a legible copy of a photographic identification of the claimant issued by the United States, a state or territory of the United States, a foreign nation, or a political subdivision or agency thereof or other evidence deemed acceptable by the department by rule. In lieu of photographic identification, a notarized sworn statement by the claimant may be provided which affirms the claimant's identity and states the claimant's full name and address. The claimant must produce to the notary photographic identification of the claimant issued by the United States, a state or territory of the United States, a foreign nation, or a political subdivision or agency thereof or other evidence deemed acceptable by the department by rule. The notary shall indicate the notary's full address on the notarized sworn statement. Any claim filed without the required identification or the sworn statement with the original claim form and the original Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement, if applicable, is void.

(a)    Within 90 days after receipt of a claim, the department may return any claim that provides for the receipt of fees and costs greater than that permitted under this chapter or that contains any apparent errors or omissions.

The department may also request that the claimant or the claimant's representative provide additional information. The department shall retain a copy or electronic image of the claim.

(b)　A claim is considered to have been withdrawn by a claimant or the claimant's representative if the department does not receive a response to its request for additional information within 60 days after the notification of any apparent errors or omissions.

(c)　Within 90 days after receipt of the claim, or the response of the claimant or the claimant's representative to the department's request for additional information, whichever is later, the department shall determine each claim. Such determination shall contain a notice of rights provided by ss. 120.569 and 120.57. The 90-day period shall be extended by 60 days if the department has good cause to need additional time or if the unclaimed property:

1.　Is owned by a person who has been a debtor in bankruptcy;

2.　Was reported with an address outside of the United States;

3.　Is being claimed by a person outside of the United States; or

4.　Contains documents filed in support of the claim that are not in the English language and have not been accompanied by an English language translation.

(2)　A claim for a cashier's check or a stock certificate without the original instrument may require an indemnity bond equal to the value of the claim to be provided prior to issue of the stock or payment of the claim by the department.

(3)　The department may require an affidavit swearing to the authenticity of the claim, lack of documentation, and an agreement to allow the department to provide the name and address of the claimant to subsequent claimants coming forward with substantiated proof to claim the account. This shall apply to claims equal to or less than $250. The exclusive remedy of a subsequent claimant to the property shall be against the person who received the property from the department.

(4)(a)　Except as otherwise provided in this chapter, if a claim is determined in favor of the claimant, the department shall deliver or pay over to the claimant the property or the amount the department actually received or the proceeds if it has been sold by the department, together with any additional amount required by s. 717.121.

(b)　If an owner authorizes an attorney licensed to practice law in this state, a Florida-certified public accountant, or a private investigator licensed under chapter 493, and registered with the department under this chapter, to claim the unclaimed property on the owner's behalf, the department is authorized to make distribution of the property or money in accordance with the Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement under s. 717.135. The original Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement must be executed by the claimant or seller and must be filed with the department.

(c)1.　Payments of approved claims for unclaimed cash accounts must be made to the owner after deducting any fees and costs authorized by the claimant under an Unclaimed Property Recovery Agreement. The contents of a safe-deposit box must be delivered directly to the claimant.

2.　Payments of fees and costs authorized under an Unclaimed Property Recovery Agreement for approved claims must be made or issued to the law firm of the designated attorney licensed to practice law in this state, the public accountancy firm of the licensed Florida-certified public accountant, or the designated employing private investigative agency licensed by this state. Such payments shall be made by electronic funds transfer and may be made on such periodic schedule as the department may define by rule, provided the payment intervals do not exceed 31 days. Payment made to an attorney licensed in this state, a Florida-certified public accountant, or a private investigator licensed under chapter 493, operating individually or as a sole practitioner, must be to the attorney, certified public accountant, or private investigator.

(5)　The department shall not be administratively, civilly, or criminally liable for any property or funds distributed pursuant to this section, provided such distribution is made in good faith.

(6)　This section does not supersede the licensing requirements of chapter 493.

(7)　The department may allow an apparent owner to electronically submit a claim for unclaimed property to the department. If a claim is submitted electronically for $2,000 or less, the department may use a method of

USCA11 Case: 23-13178　　Document: 18　　Date Filed: 12/07/2023　　Page: 78 of 92

identity verification other than a copy of a valid driver license, other government-issued photographic identification, or a sworn notarized statement. The department may adopt rules to implement this subsection.

(8)　Notwithstanding any other provision of this chapter, the department may develop and implement an identification verification and disbursement process by which an account valued at $2,000 or less, after being received by the department and added to the unclaimed property database, may be disbursed to an apparent owner after the department has verified that the apparent owner is living and that the apparent owner's current address is correct. The department shall include with the payment a notification and explanation of the dollar amount, the source, and the property type of each account included in the disbursement. The department shall adopt rules to implement this subsection.

(9)(a)　Notwithstanding any other provision of this chapter, the department may develop and implement a verification and disbursement process by which an account, after being received by the department and added to the unclaimed property database, for which the apparent owner entity is:

1.　A state agency in this state or a subdivision or successor agency thereof;

2.　A county government in this state or a subdivision thereof;

3.　A public school district in this state or a subdivision thereof;

4.　A municipality in this state or a subdivision thereof; or

5.　A special taxing district or authority in this state,

may be disbursed to the apparent owner entity or successor entity. The department shall include with the payment a notification and explanation of the dollar amount, the source, and the property type of each account included in the disbursement.

(b)　The department may adopt rules to implement this subsection.

(10)　Notwithstanding any other provision of this chapter, the department may develop a process by which a claimant's representative or a buyer of unclaimed property may electronically submit to the department an electronic image of a completed claim and claims-related documents under this chapter, including an Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement that has been signed and dated by a claimant or seller under s. 717.135, after the claimant's representative or the buyer of unclaimed property receives the original documents provided by the claimant or the seller for any claim. Each claim filed by a claimant's representative or a buyer of unclaimed property must include a statement by the claimant's representative or the buyer of unclaimed property attesting that all documents are true copies of the original documents and that all original documents are physically in the possession of the claimant's representative or the buyer of unclaimed property. All original documents must be kept in the original form, by claim number, under the secure control of the claimant's representative or the buyer of unclaimed property and must be available for inspection by the department in accordance with s. 717.1315. The department may adopt rules to implement this subsection.

(11)　This section applies to all unclaimed property reported and remitted to the Chief Financial Officer, including, but not limited to, property reported pursuant to ss. 45.032, 732.107, 733.816, and 744.534.

History.—s. 25, ch. 87-105; s. 3, ch. 89-291; s. 8, ch. 89-299; s. 4, ch. 90-113; s. 14, ch. 96-301; s. 295, ch. 96-410; s. 31, ch. 97-93; s. 1772, ch. 97-102; s. 23, ch. 2001-36; s. 121, ch. 2004-390; s. 8, ch. 2005-163; s. 1, ch. 2013-34; s. 9, ch. 2018-71; s. 34, ch. 2019-140; s. 2, ch. 2021-144.

**717.12403　Unclaimed demand, savings, or checking account in a financial institution held in the name of more than one person.**—

(1)(a)　If an unclaimed demand, savings, or checking account in a financial institution is reported as an "and" account in the name of two or more persons who are not beneficiaries, it is presumed that each person must claim the account in order for the claim to be approved by the department. This presumption may be rebutted by showing that entitlement to the account has been transferred to another person or by clear and convincing evidence demonstrating that the account should have been reported by the financial institution as an "or" account.

(b)　If an unclaimed demand, savings, or checking account in a financial institution is reported as an "and" account and one of the persons on the account is deceased, it is presumed that the account is a survivorship

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 79 of 92

account. This presumption may be rebutted by showing that entitlement to the account has been transferred to another person or by clear and convincing evidence demonstrating that the account is not a survivorship account.

(2)   If an unclaimed demand, savings, or checking account in a financial institution is reported as an "or" account in the name of two or more persons who are not beneficiaries, it is presumed that either person listed on the account may claim the entire amount held in the account. This presumption may be rebutted by showing that entitlement to the account has been transferred to another person or by clear and convincing evidence demonstrating that the account should have been reported by the financial institution as an "and" account.

(3)   If an unclaimed demand, savings, or checking account in a financial institution is reported in the name of two or more persons who are not beneficiaries without identifying whether the account is an "and" account or an "or" account, it is presumed that the account is an "or" account. This presumption may be rebutted by showing that entitlement to the account has been transferred to another person or by clear and convincing evidence demonstrating that the account should have been reported by the financial institution as an "and" account.

(4)   The department shall be deemed to have made a distribution in good faith if the department remits funds consistent with this section.

History.—s. 122, ch. 2004-390.

**717.12404    Claims on behalf of a business entity or trust.—**

(1)(a)   Claims on behalf of an active or dissolved corporation, for which the last annual report is not available from the Department of State through the Internet, must be accompanied by a microfiche copy of the records on file with the Department of State or, if the corporation has not made a corporate filing with the Department of State, the claim must be accompanied by a uniform resource locator for the address of a free Internet site operated by the state of incorporation of the corporation that provides access to the last corporate filing identifying the officers and directors of the corporation. If available, the claim must be accompanied by a printout of the officers and directors from the Department of State Internet site or the free Internet site operated by the state of incorporation of the corporation. If the free Internet site is not available, the claim must be accompanied by an authenticated copy of the last corporate filing identifying the officers and directors from the appropriate authorized official of the state of incorporation.

(b)   A claim on behalf of a corporation must be made by an officer or director identified on the last corporate filing.

(2)   Claims on behalf of a dissolved corporation, a business entity other than an active corporation, or a trust must include a legible copy of a valid driver license of the person acting on behalf of the dissolved corporation, business entity other than an active corporation, or trust. If the person has not been issued a valid driver license, the department shall be provided with a legible copy of a photographic identification of the person issued by the United States, a foreign nation, or a political subdivision or agency thereof. In lieu of photographic identification, a notarized sworn statement by the person may be provided which affirms the person's identity and states the person's full name and address. The person must produce his or her photographic identification issued by the United States, a state or territory of the United States, a foreign nation, or a political subdivision or agency thereof or other evidence deemed acceptable by the department by rule. The notary shall indicate the notary's full address on the notarized sworn statement. Any claim filed without the required identification or the sworn statement with the original claim form and the original Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement, if applicable, is void.

History.—s. 123, ch. 2004-390; s. 9, ch. 2005-163; s. 3, ch. 2021-144.

**717.12405    Claims by estates.—**An estate or any person representing an estate or acting on behalf of an estate may claim unclaimed property only after the heir or legatee of the decedent entitled to the property has been located. Any estate, or any person representing an estate or acting on behalf of an estate, that receives unclaimed property before the heir or legatee of the decedent entitled to the property has been located, is personally liable for the unclaimed property and must immediately return the full amount of the unclaimed property or the value thereof to the department in accordance with s. 717.1341.

History.—s. 124, ch. 2004-390.

USCA11 Case: 23-13178    Document: 48    Date Filed: 12/07/2023    Page: 80 of 92

**717.1240**    Joint ownership of unclaimed securities or dividends.—For the purpose of determining joint ownership of unclaimed securities or dividends, the term:

(1)    "TEN COM" means tenants in common.

(2)    "TEN ENT" means tenants by the entireties.

(3)    "JT TEN" or "JT" means joint tenants with the right of survivorship and not as tenants in common.

(4)    "And" means tenants in common with each person entitled to an equal pro rata share.

(5)    "Or" means that each person listed on the account is entitled to all of the funds.

History.—s. 10, ch. 2005-163.

**717.1241    Conflicting claims.—**

(1)    When conflicting claims have been received by the department for the same unclaimed property account or accounts, the property shall be remitted in accordance with the claim filed by the person as follows, notwithstanding the withdrawal of a claim:

(a)    To the person submitting the first claim received by the Division of Unclaimed Property of the department that is complete or made complete.

(b)    If a claimant's claim and a claimant's representative's claim are received by the Division of Unclaimed Property of the department on the same day and both claims are complete, to the claimant.

(c)    If a buyer's claim and a claimant's claim or a claimant's representative's claim are received by the Division of Unclaimed Property of the department on the same day and the claims are complete, to the buyer.

(d)    As between two or more claimant's representative's claims received by the Division of Unclaimed Property of the department that are complete or made complete on the same day, to the claimant's representative who has agreed to receive the lowest fee. If the two or more claimant's representatives whose claims received by the Division of Unclaimed Property of the department were complete or made complete on the same day are charging the same lowest fee, the fee shall be divided equally between the claimant's representatives.

(e)    If more than one buyer's claim received by the Division of Unclaimed Property of the department is complete or made complete on the same day, the department shall remit the unclaimed property to the buyer who paid the highest amount to the seller. If the buyers paid the same amount to the seller, the department shall remit the unclaimed property to the buyers divided in equal amounts.

(2)    The purpose of this section is solely to provide guidance to the department regarding to whom it should remit the unclaimed property and is not intended to extinguish or affect any private cause of action that any person may have against another person for breach of contract or other statutory or common-law remedy. A buyer's sole remedy, if any, shall be against the claimant's representative or the seller, or both. A claimant's representative's sole remedy, if any, shall be against the buyer or the seller, or both. A claimant's or seller's sole remedy, if any, shall be against the buyer or the claimant's representative, or both. Nothing in this section forecloses the right of a person to challenge the department's determination of completeness in a proceeding under ss. 120.569 and 120.57.

(3)    A claim is complete when entitlement to the unclaimed property has been established.

History.—s. 15, ch. 96-301; s. 24, ch. 2001-36; s. 125, ch. 2004-390; s. 11, ch. 2005-163; s. 40, ch. 2016-165.

**717.1242    Restatement of jurisdiction of the circuit court sitting in probate and the department.—**

(1)    It is and has been the intent of the Legislature that, pursuant to s. 26.012(2)(b), circuit courts have jurisdiction of proceedings relating to the settlement of the estates of decedents and other jurisdiction usually pertaining to courts of probate. It is and has been the intent of the Legislature that, pursuant to s. 717.124, the department determines the merits of claims for property paid or delivered to the department under this chapter. Consistent with this legislative intent, any estate or beneficiary, as defined in s. 731.201, of an estate seeking to obtain property paid or delivered to the department under this chapter must file a claim with the department as provided in s. 717.124.

(2)    If any estate or heir of an estate seeks or obtains an order from a circuit court sitting in probate directing the department to pay or deliver to any person property paid or delivered to the department under this chapter, the estate or heir shall be ordered to pay the department reasonable costs and attorney's fees in any proceeding

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 81 of 92

brought by the department to oppose, appeal, or collaterally attack the order if the department is the prevailing party in any such proceeding.

History.—s. 16, ch. 96-301; s. 126, ch. 2004-390; s. 12, ch. 2005-163.

### 717.1243    Small estate accounts.—

(1)    A claim for unclaimed property made by a beneficiary, as defined in s. 731.201, of a deceased owner need not be accompanied by an order of a probate court if the claimant files with the department an affidavit, signed by all beneficiaries, stating that all the beneficiaries have amicably agreed among themselves upon a division of the estate and that all funeral expenses, expenses of the last illness, and any other lawful claims have been paid, and any additional information reasonably necessary to make a determination of entitlement. If the owner died testate, the claim shall be accompanied by a copy of the will.

(2)    Each person receiving property under this section shall be personally liable for all lawful claims against the estate of the owner, but only to the extent of the value of the property received by such person under this section, exclusive of the property exempt from claims of creditors under the constitution and laws of this state.

(3)    Any heir or devisee of the owner, who was lawfully entitled to share in the property but did not receive his or her share of the property, may enforce his or her rights in appropriate proceedings against those who received the property and shall be awarded taxable costs as in chancery actions, including attorney's fees.

(4)    This section only applies if all of the unclaimed property held by the department on behalf of the owner has an aggregate value of $10,000 or less and no probate proceeding is pending.

(5)    Nothing in this section shall be interpreted as precluding the use of live testimony in order to establish entitlement.

History.—s. 17, ch. 96-301; s. 25, ch. 2001-36; s. 23, ch. 2003-154; s. 13, ch. 2005-163; s. 4, ch. 2016-90.

### 717.1244    Determinations of unclaimed property claims.—In rendering a determination regarding the merits of an unclaimed property claim, the department shall rely on the applicable statutory, regulatory, common, and case law. Agency statements applying the statutory, regulatory, common, and case law to unclaimed property claims are not agency statements subject to s. 120.56(4).

History.—s. 127, ch. 2004-390.

### 717.1245    Garnishment of unclaimed property.—If any person files a petition for writ of garnishment seeking to obtain property paid or delivered to the department under this chapter, the petitioner shall be ordered to pay the department reasonable costs and attorney's fees in any proceeding brought by the department to oppose, appeal, or collaterally attack the petition or writ if the department is the prevailing party in any such proceeding.

History.—s. 14, ch. 2005-163.

### 717.125    Claim of another state to recover property; procedure.—

(1)    At any time after property has been paid or delivered to the department under this chapter, another state may recover the property if:

(a)    The property was subjected to custody by this state because the records of the holder did not reflect the last known address of the apparent owner when the property was presumed unclaimed under this chapter, and the other state establishes that the last known address of the apparent owner or other person entitled to the property was in that state and under the laws of that state the property escheated to or was subject to a claim of abandonment or being unclaimed by that state;

(b)    The last known address of the apparent owner or other person entitled to the property, as reflected by the records of the holder, is in the other state and under the laws of that state the property has escheated to or become subject to a claim of abandonment by that state;

(c)    The records of the holder were erroneous in that they did not accurately reflect the actual owner of the property and the last known address of the actual owner is in the other state and under laws of that state the property escheated to or was subject to a claim of abandonment by that state;

USCA11 Case: 23-13178    Document 18    Date Filed: 12/07/2023    Page: 82 of 92

(d)   The property was subject to custody by this state under s. 717.105(6) and under the laws of the state of domicile of the holder the property has escheated to or become subject to a claim of abandonment by that state; or

(e)   The property is the sum payable on a traveler's check, money order, or other similar instrument that was subjected to custody by this state under s. 717.104, and the instrument was purchased in the other state, and under the laws of that state the property escheated to or became subject to a claim of abandonment by that state.

(2)   The claim of another state to recover escheated or unclaimed property under this section must be presented in a form prescribed by the department, and the department shall determine the claim within 90 days after it is presented. Such determination shall contain a notice of rights provided by ss. 120.569 and 120.57.

(3)   The department shall require a state, prior to recovery of property under this section, to indemnify this state and its officers and employees against any liability on a claim for the property.

History.—s. 26, ch. 87-105; s. 296, ch. 96-410; s. 26, ch. 2001-36.

**717.126    Administrative hearing; burden of proof; proof of entitlement; venue.—**

(1)   Any person aggrieved by a decision of the department may petition for a hearing as provided in ss. 120.569 and 120.57. In any proceeding for determination of a claim to property paid or delivered to the department under this chapter, the burden shall be upon the claimant to establish entitlement to the property by a preponderance of evidence. Having the same name as that reported to the department is not sufficient, in the absence of other evidence, to prove entitlement to unclaimed property.

(2)   Unless otherwise agreed by the parties, venue shall be in Tallahassee, Leon County, Florida. However, upon the request of a party, the presiding officer may, in the presiding officer's discretion, conduct the hearing at an alternative remote video location.

History.—s. 27, ch. 87-105; s. 297, ch. 96-410; s. 128, ch. 2004-390.

**717.1261    Death certificates.—**Any person who claims entitlement to unclaimed property by means of the death of one or more persons shall file a copy of the death certificate of the decedent or decedents that has been certified as being authentic by the issuing governmental agency.

History.—s. 129, ch. 2004-390.

**717.1262    Court documents.—**Any person who claims entitlement to unclaimed property by reason of a court document shall file a certified copy of the court document with the department. A certified copy of each pleading filed with the court to obtain a court document establishing entitlement, filed within 180 days before the date the claim form was signed by the claimant or claimant's representative, must also be filed with the department.

History.—s. 130, ch. 2004-390; s. 5, ch. 2016-90.

**717.127    Election to take payment or delivery.—**The department may decline to receive any property reported under this chapter that the department considers to have a value less than the expense of giving notice and of sale. If the department elects not to receive custody of the property, the holder shall be notified within 120 days after filing the report required under s. 717.117 or remitting the property required under s. 717.119.

History.—s. 28, ch. 87-105; s. 18, ch. 96-301.

**717.128    Destruction or disposition of property having insubstantial commercial value; immunity from liability.—**If the department after investigation finds that any property delivered under this chapter has insubstantial commercial value, the department may destroy or otherwise dispose of the property. No action or proceeding may be maintained against the state or any officer or against the holder for or on account of any action taken by the department pursuant to this section with respect to the property.

History.—s. 29, ch. 87-105.

**717.129    Periods of limitation.—**

(1)   The expiration before or after July 1, 1987, of any period of time specified by contract, statute, or court order, during which a claim for money or property may be made or during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or to recover property, does not prevent the

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 83 of 92

money or property from being presumed unclaimed or affect any duty to file a report or to pay or deliver unclaimed property to the department as required by this chapter.

(2)  No action or proceeding may be commenced by the department with respect to any duty of a holder under this chapter more than 10 years after the duty arose.

History.—s. 30, ch. 87-105; s. 27, ch. 2001-36.

### 717.1301    Investigations; examinations; subpoenas.—

(1)  The department may make investigations and examinations within or outside this state of claims, reports, and other records as it deems necessary to administer and enforce the provisions of this chapter. In such investigations and examinations the department may administer oaths, examine witnesses, issue subpoenas, and otherwise gather evidence. The department may request any person who has not filed a report under s. 717.117 to file a verified report stating whether or not the person is holding any unclaimed property reportable or deliverable under this chapter.

(2)  Subpoenas for witnesses whose evidence is deemed material to any investigation or examination under this section may be issued by the department under seal of the department, or by any court of competent jurisdiction, commanding such witnesses to appear before the department at a time and place named and to bring such books, records, and documents as may be specified or to submit such books, records, and documents to inspection. Such subpoenas may be served by an authorized representative of the department.

(3)  If any person shall refuse to testify, produce books, records, and documents, or otherwise refuse to obey a subpoena issued under this section, the department may present its petition to a court of competent jurisdiction in or for the county in which such person resides or has its principal place of business, whereupon the court shall issue its rule nisi requiring such person to obey forthwith the subpoena issued by the department or show cause for failing to obey said subpoena. Unless said person shows sufficient cause for failing to obey the subpoena, the court shall forthwith direct such person to obey the same subject to such punishment as the court may direct including, but not limited to, the restraint, by injunction or by appointment of a receiver, of any transfer, pledge, assignment, or other disposition of such person's assets or any concealment, alteration, destruction, or other disposition of subpoenaed books, records, or documents as the court deems appropriate, until such person has fully complied with such subpoena and the department has completed its investigation or examination. The department is entitled to the summary procedure provided in s. 51.011, and the court shall advance the cause on its calendar. Costs incurred by the department to obtain an order granting, in whole or in part, its petition shall be taxed against the subpoenaed person, and failure to comply with such order shall be a contempt of court.

(4)  Witnesses shall be entitled to the same fees and mileage as they may be entitled by law for attending as witnesses in the circuit court, except where such examination or investigation is held at the place of business or residence of the witness.

(5)  The material compiled by the department in an investigation or examination under this chapter is confidential until the investigation or examination is complete. The material compiled by the department in an investigation or examination under this chapter remains confidential after the department's investigation or examination is complete if the department has submitted the material or any part of it to any law enforcement agency or other administrative agency for further investigation or for the filing of a criminal or civil prosecution and such investigation has not been completed or become inactive.

(6)  If an investigation or an examination of the records of any person results in the disclosure of property reportable and deliverable under this chapter, the department may assess the cost of investigation or the examination against the holder at the rate of $100 per 8-hour day for each investigator or examiner. Such fee shall be calculated on an hourly basis and shall be rounded to the nearest hour. The person shall also pay the travel expense and per diem subsistence allowance provided for state employees in s. 112.061. The person shall not be required to pay a per diem fee and expenses of an examination or investigation which shall consume more than 30 worker-days in any one year unless such examination or investigation is due to fraudulent practices of the person, in which case such person shall be required to pay the entire cost regardless of time consumed. The fee shall be remitted to the department within 30 days after the date of the notification that the fee is due and owing. Any

person who fails to pay the fee within 30 days after the date of the notification that the fee is due and owing shall pay to the department interest at the rate of 12 percent per annum on such fee from the date of the notification.

History.—s. 31, ch. 87-105; s. 1, ch. 94-262; s. 131, ch. 2004-390.

### 717.1311    Retention of records.—

(1)   Every holder required to file a report under s. 717.117 shall maintain a record of the specific type of property, amount, name, and last known address of the owner for 5 years after the property becomes reportable, except to the extent that a shorter time is provided in subsection (2) or by rule of the department.

(2)   Any business association that sells in this state its traveler's checks, money orders, or other similar written instruments, other than third-party bank checks on which the business association is directly responsible, or that provides such instruments to others for sale in this state, shall maintain a record of those instruments while they remain outstanding, indicating the state and date of issue for 3 years after the date the property is reportable.

History.—s. 32, ch. 87-105; s. 24, ch. 91-110; s. 19, ch. 96-301; s. 15, ch. 2005-163.

### 717.1315    Retention of records by claimant's representatives and buyers of unclaimed property.—

(1)   Every claimant's representative and buyer of unclaimed property shall keep and use in his or her business such books, accounts, and records of the business conducted under this chapter to enable the department to determine whether such person is complying with this chapter and the rules adopted by the department under this chapter. Every claimant's representative and buyer of unclaimed property shall preserve such books, accounts, and records, including every Unclaimed Property Recovery Agreement or Unclaimed Property Purchase Agreement between the owner and such claimant's representative or buyer, for at least 3 years after the date of the initial agreement.

(2)   A claimant's representative or buyer of unclaimed property, operating at two or more places of business in this state, may maintain the books, accounts, and records of all such offices at any one of such offices, or at any other office maintained by such claimant's representative or buyer of unclaimed property, upon the filing of a written notice with the department designating in the written notice the office at which such records are maintained.

(3)   A claimant's representative or buyer of unclaimed property shall make all books, accounts, and records available at a convenient location in this state upon request of the department.

History.—s. 28, ch. 2001-36; s. 132, ch. 2004-390; s. 16, ch. 2005-163; s. 4, ch. 2021-144.

### 717.132    Enforcement; cease and desist orders; fines.—

(1)   The department may bring an action in any court of competent jurisdiction to enforce or administer any provision of this chapter, any rule or order promulgated under this chapter, or any written agreement entered into with the department.

(2)   In addition to any other powers conferred upon it to enforce and administer the provisions of this chapter, the department may issue and serve upon a person an order to cease and desist and to take corrective action whenever the department finds that such person is violating, has violated, or is about to violate any provision of this chapter, any rule or order promulgated under this chapter, or any written agreement entered into with the department. For purposes of this subsection, the term "corrective action" includes refunding excessive charges, requiring a person to return unclaimed property, requiring a holder to remit unclaimed property, and requiring a holder to correct a report that contains errors or omissions. Any such order shall contain a notice of rights provided by ss. 120.569 and 120.57.

(3)   In addition to any other powers conferred upon it to enforce and administer the provisions of this chapter, the department or a court of competent jurisdiction may impose fines against any person found to have violated any provision of this chapter, any rule or order promulgated under this chapter, or any written agreement entered into with the department in an amount not to exceed $2,000 for each violation. All fines collected under this subsection shall be deposited as received in the Unclaimed Property Trust Fund.

History.—s. 33, ch. 87-105; s. 4, ch. 93-280; s. 20, ch. 96-301; s. 298, ch. 96-410; s. 29, ch. 2001-36; s. 133, ch. 2004-390; s. 17, ch. 2005-163.

(1)   The following acts are violations of this chapter and constitute grounds for an administrative enforcement action by the department in accordance with the requirements of chapter 120 and for civil enforcement by the department in a court of competent jurisdiction:

(a)   Failure to comply with any provision of this chapter, any rule or order adopted under this chapter, or any written agreement entered into with the department.

(b)   Fraud, misrepresentation, deceit, or gross negligence in any matter within the scope of this chapter.

(c)   Fraudulent misrepresentation, circumvention, or concealment of any matter required to be stated or furnished to an owner or apparent owner under this chapter, regardless of reliance by or damage to the owner or apparent owner.

(d)   Willful imposition of illegal or excessive charges in any unclaimed property transaction.

(e)   False, deceptive, or misleading solicitation or advertising within the scope of this chapter.

(f)   Failure to maintain, preserve, and keep available for examination all books, accounts, or other documents required by this chapter, by any rule or order adopted under this chapter, or by any agreement entered into with the department under this chapter.

(g)   Refusal to permit inspection of books and records in an investigation or examination by the department or refusal to comply with a subpoena issued by the department under this chapter.

(h)   Criminal conduct in the course of a person's business.

(i)   Failure to timely pay any fine imposed or assessed under this chapter or any rule adopted under this chapter.

(j)   Requesting or receiving compensation for notifying a person of his or her unclaimed property or assisting another person in filing a claim for unclaimed property, unless the person is an attorney licensed to practice law in this state, a Florida-certified public accountant, or a private investigator licensed under chapter 493, or entering into, or making a solicitation to enter into, an agreement to file a claim for unclaimed property owned by another, or a contract or agreement to purchase unclaimed property, unless such person is registered with the department under this chapter and an attorney licensed to practice law in this state in the regular practice of her or his profession, a Florida-certified public accountant who is acting within the scope of the practice of public accounting as defined in chapter 473, or a private investigator licensed under chapter 493. This paragraph does not apply to a person who has been granted a durable power of attorney to convey and receive all of the real and personal property of the owner, is the court-appointed guardian of the owner, has been employed as an attorney or qualified representative to contest the department's denial of a claim, or has been employed as an attorney to probate the estate of the owner or an heir or legatee of the owner.

(k)   Failure to authorize the release of records in the possession of a third party after being requested to do so by the department regarding a pending examination or investigation.

(l)   Receipt or solicitation of consideration to be paid in advance of the approval of a claim under this chapter.

(2)   Upon a finding by the department that any person has committed any of the acts set forth in subsection (1), the department may enter an order:

(a)   Revoking for a minimum of 5 years or suspending for a maximum of 5 years a registration previously granted under this chapter during which time the registrant may not reapply for a registration under this chapter;

(b)   Placing a registrant or an applicant for a registration on probation for a period of time and subject to such conditions as the department may specify;

(c)   Placing permanent restrictions or conditions upon issuance or maintenance of a registration under this chapter;

(d)   Issuing a reprimand;

(e)   Imposing an administrative fine not to exceed $2,000 for each such act; or

(f)   Prohibiting any person from being a director, officer, employee, or ultimate equitable owner of a 10-percent or greater interest in a registrant of a registrant.

(3)   A registrant is subject to civil enforcement and the disciplinary actions specified in subsection (2) for violations of subsection (1) by an agent or employee of the registrant's employer if the registrant knew or should

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 86 of 92

have known that such agent or employee was violating any provision of this chapter.

(4)(a)    The department shall adopt, by rule, and periodically review the disciplinary guidelines applicable to each ground for disciplinary action which may be imposed by the department under this chapter.

(b)    The disciplinary guidelines shall specify a meaningful range of designated penalties based upon the severity or repetition of specific offenses, or both. It is the legislative intent that minor violations be distinguished from more serious violations; that such guidelines consider the amount of the claim involved, the complexity of locating the owner, the steps taken to ensure the accuracy of the claim by the person filing the claim, the acts of commission and omission of the ultimate owners in establishing themselves as rightful owners of the funds, the acts of commission or omission of the agent or employee of an employer in the filing of the claim, the actual knowledge of the agent, employee, employer, or owner in the filing of the claim, the departure, if any, by the agent or employee from the internal controls and procedures established by the employer with regard to the filing of a claim, the number of defective claims previously filed by the agent, employee, employer, or owner; that such guidelines provide reasonable and meaningful notice of likely penalties that may be imposed for proscribed conduct; and that such penalties be consistently applied by the department.

(c)    A specific finding of mitigating or aggravating circumstances shall allow the department to impose a penalty other than that provided for in such guidelines. The department shall adopt by rule disciplinary guidelines to designate possible mitigating and aggravating circumstances and the variation and range of penalties permitted for such circumstances. Such mitigating and aggravating circumstances shall also provide for consideration of, and be consistent with, the legislative intent expressed in paragraph (b).

(d)    In any proceeding brought under this chapter, the administrative law judge, in recommending penalties in any recommended order, shall follow the penalty guidelines established by the department and shall state in writing any mitigating or aggravating circumstances upon which the recommended penalty is based.

(5)    The department may seek any appropriate civil legal remedy available to it by filing a civil action in a court of competent jurisdiction against any person who has, directly or through a claimant's representative, wrongfully submitted a claim as the ultimate owner of property and improperly received funds from the department in violation of this chapter.

History.—s. 134, ch. 2004-390; s. 18, ch. 2005-163; s. 5, ch. 2021-144.

### 717.1323    Prohibited practice.—A person may not knowingly enter false information onto the Internet website of the Division of Unclaimed Property.

History.—s. 19, ch. 2005-163; s. 41, ch. 2016-165.

### 717.133    Interstate agreements and cooperation; joint and reciprocal actions with other states.—

(1)    The department may enter into agreements with other states to exchange information needed to enable this or another state to audit or otherwise determine unclaimed property that it or another state may be entitled to subject to a claim of custody. The department may require the reporting of information needed to enable compliance with agreements made pursuant to this section and prescribe the form.

(2)    The department may join with other states to seek enforcement of this chapter against any person.

(3)    At the request of another state, the department may bring an action in the name of the other state in any court of competent jurisdiction to enforce the unclaimed property laws of the other state against a holder in this state of property subject to escheat or a claim of abandonment by the other state, if the other state has agreed to pay expenses incurred in bringing the action.

(4)    The department may request that the attorney general of another state or any other person bring an action in the name of the department in the other state. The department may pay all expenses including attorneys' fees in any action under this subsection.

(5)    As necessary for proper administration of this chapter, the department may enter into contracts for the location or collection of property subject to payment or delivery to the department under this chapter.

History.—s. 34, ch. 87-105.

717.1331 **Actions against holders.**—The department may initiate, or cause to be initiated, an action against a holder to enforce a subpoena or recover unclaimed property. If the department prevails in a civil or administrative action to enforce a subpoena or recover unclaimed property initiated by or on behalf of the department, the holder shall be ordered to pay the department reasonable costs and attorney's fees.

History.—s. 135, ch. 2004-390; s. 20, ch. 2005-163.

717.1333 **Evidence; estimations; audit reports, examiner's worksheets, investigative reports, other related documents.**—

(1)   In any proceeding involving a holder under ss. 120.569 and 120.57 in which an auditor, examiner, or investigator acting under authority of this chapter is available for cross-examination, any official written report, worksheet, or other related paper, or copy thereof, compiled, prepared, drafted, or otherwise made or received by the auditor, examiner, or investigator, after being duly authenticated by the auditor, examiner, or investigator, may be admitted as competent evidence upon the oath of the auditor, examiner, or investigator that the report, worksheet, or related paper was prepared or received as a result of an audit, examination, or investigation of the books and records of the person audited, examined, or investigated, or the agent thereof.

(2)   If the records of the holder that are available for the periods subject to this chapter are insufficient to permit the preparation of a report of the unclaimed property due and owing by a holder, or if the holder fails to provide records after being requested to do so, the amount due to the department may be reasonably estimated.

History.—s. 136, ch. 2004-390; s. 21, ch. 2005-163; s. 6, ch. 2016-90.

717.134 **Penalties and interest.**—

(1)   The department may impose and collect a penalty of $500 per day up to a maximum of $5,000 and 25 percent of the value of property not reported until a report is rendered for any person who willfully fails to render any report required under this chapter. Upon a holder's showing of good cause, the department may waive said penalty or any portion thereof. If the holder acted in good faith and without negligence, the department shall waive the penalty provided herein.

(2)   The department may impose and collect a penalty of $500 per day up to a maximum of $5,000 and 25 percent of the value of property not paid or delivered until the property is paid or delivered for any person who willfully refuses to pay or deliver abandoned property to the department as required under this chapter.

(3)   Any person who willfully or fraudulently conceals, destroys, damages, or makes unlawful disposition of any property or of the books, records, or accounts pertaining to property which is subject to the provisions of this chapter is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(4)   In addition to any damages, penalties, or fines for which a person may be liable under any other provision of law, any person who fails to report or pay or deliver unclaimed property within the time prescribed by this chapter shall pay to the department interest at the rate of 12 percent per annum on such property, or value thereof, from the date such property shall have been paid or delivered. The department may waive any penalty due under this subsection with appropriate justification.

(5)   The department may impose and collect a penalty of $500 per day up to a maximum of $5,000 and 25 percent of the value of property willfully not reported with all of the information required by this chapter. Upon a holder's showing of good cause, the department may waive the penalty or any portion thereof. If the holder acted in good faith and without negligence, the department shall waive the penalty provided herein.

History.—s. 35, ch. 87-105; s. 21, ch. 96-301; s. 137, ch. 2004-390.

717.1341 **Invalid claims, recovery of property, interest and penalties.**—

(1)(a)   No person shall receive unclaimed property that the person is not entitled to receive. Any person who receives, or assists another person to receive, unclaimed property that the person is not entitled to receive is strictly, jointly, personally, and severally liable for the unclaimed property and shall immediately return the property, or the reasonable value of the property if the property has been damaged or disposed of, to the department plus interest at the rate set in accordance with s. 55.03(1). Assisting another person to receive unclaimed property includes executing a claim form on the person's behalf.

USCA11 Case: 23-13178    Document: 8    Date Filed: 12/07/2023    Page: 88 of 92

(b)1.  In the case of stocks or bonds which have been sold, the proceeds from the sale shall be returned to the department plus any dividends or interest received thereon plus an amount equal to the brokerage fee plus interest at a rate set in accordance with s. 55.03(1) on the proceeds from the sale of the stocks or bonds, the dividends or interest received, and the brokerage fee.

2.  In the case of stocks or bonds which have not been sold, the stocks or bonds and any dividends or interest received thereon shall be returned to the department, together with interest on the dividends or interest received, at a rate set in accordance with s. 55.03(1) of the value of the property.

(2)  The department may maintain a civil or administrative action:

(a)  To recover unclaimed property that was paid or remitted to a person who was not entitled to the unclaimed property or to offset amounts owed to the department against amounts owed to an owner representative;

(b)  Against a person who assists another person in receiving, or attempting to receive, unclaimed property that the person is not entitled to receive; or

(c)  Against a person who attempts to receive unclaimed property that the person is not entitled to receive.

(3)  If the department prevails in any proceeding under subsection (2), a fine not to exceed three times the value of the property received or sought to be received may be imposed on any person who knowingly, or with reckless disregard or deliberate ignorance of the truth, violated this section. If the department prevails in a civil or administrative proceeding under subsection (2), the person who violated subsection (1) shall be ordered to pay the department reasonable costs and attorney's fees.

(4)  No person shall knowingly file, knowingly conspire to file, or knowingly assist in filing, a claim for unclaimed property the person is not entitled to receive. Any person who violates this subsection regarding unclaimed property of an aggregate value:

(a)  Greater than $50,000, is guilty of a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084;

(b)  Greater than $10,000 up to $50,000, is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084;

(c)  Greater than $250 up to $10,000, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084;

(d)  Greater than $50 up to $250, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083; or

(e)  Up to $50, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

History.—s. 138, ch. 2004-390; s. 2, ch. 2011-169.

**717.135    Recovery agreements and purchase agreements for claims filed by a claimant's representative; fees and costs.—**

(1)  In order to protect the interests of owners of unclaimed property, the department shall adopt by rule a form entitled "Unclaimed Property Recovery Agreement" and a form entitled "Unclaimed Property Purchase Agreement."

(2)  The Unclaimed Property Recovery Agreement and the Unclaimed Property Purchase Agreement must include and disclose all of the following:

(a)  The total dollar amount of unclaimed property accounts claimed or sold.

(b)  The total percentage of all authorized fees and costs to be paid to the claimant's representative or the percentage of the value of the property to be paid as net gain to the purchasing claimant's representative.

(c)  The total dollar amount to be deducted and received from the claimant as fees and costs by the claimant's representative or the total net dollar amount to be received by the purchasing claimant's representative.

(d)  The net dollar amount to be received by the claimant or the seller.

(e)  For each account claimed, the unclaimed property account number.

(f)  For the Unclaimed Property Purchase Agreement, a statement that the amount of the purchase price will be remitted to the seller by the purchaser within 30 days after the execution of the agreement by the seller.

(g)   The name, address, e-mail address, phone number, and license number of the claimant's representative.

(h)1.   The manual signature of the claimant or seller and the date signed, affixed on the agreement by the claimant or seller.

2.   Notwithstanding any other provision of this chapter to the contrary, the department may allow an apparent owner, who is also the claimant, to sign the agreement electronically for claims of $2,000 or less. All electronic signatures on the Unclaimed Property Recovery Agreement and the Unclaimed Property Purchase Agreement must be affixed on the agreement by the claimant or seller using the specific, exclusive eSignature product and protocol authorized by the department.

(i)   The social security number or taxpayer identification number of the claimant or seller, if a number has been issued to the claimant or seller.

(j)   The total fees and costs, or the total discount in the case of a purchase agreement, which may not exceed 30 percent of the claimed amount. If the total fees and costs exceed 30 percent, the fees and costs shall be reduced to 30 percent and the net balance shall be remitted directly by the department to the claimant.

(3)   For an Unclaimed Property Purchase Agreement form, proof that the purchaser has made payment must be filed with the department along with the claim. If proof of payment is not provided, the claim is void.

(4)   A claimant's representative must use the Unclaimed Property Recovery Agreement or the Unclaimed Property Purchase Agreement as the exclusive means of entering into an agreement or a contract with a claimant or seller to file a claim with the department.

(5)   Fees and costs may be owed or paid to, or received by, a claimant's representative only after a filed claim has been approved and if the claimant's representative used an agreement authorized by this section.

(6)   A claimant's representative may not use or distribute any other agreement of any type, conveyed by any method, with respect to the claimant or seller which relates, directly or indirectly, to unclaimed property accounts held by the department or the Chief Financial Officer other than the agreements authorized by this section. Any engagement, authorization, recovery, or fee agreement that is not authorized by this section is void. A claimant's representative is subject to administrative and civil enforcement under s. 717.1322 if he or she uses an agreement that is not authorized by this section. This subsection does not prohibit lawful nonagreement, noncontractual, or advertising communications between or among the parties.

(7)   The Unclaimed Property Recovery Agreement and the Unclaimed Property Purchase Agreement may not contain language that makes the agreement irrevocable or that creates an assignment of any portion of unclaimed property held by the department.

(8)   When a claim is approved, the department may pay any additional account that is owned by the claimant but has not been claimed at the time of approval, provided that a subsequent claim has not been filed or is not pending for the claimant at the time of approval.

(9)   This section does not supersede s. 717.1241.

**History.**—s. 36, ch. 87-105; s. 1, ch. 91-261; s. 2, ch. 94-191; s. 22, ch. 96-301; s. 30, ch. 2001-36; s. 1889, ch. 2003-261; s. 139, ch. 2004-390; s. 22, ch. 2005-163; s. 7, ch. 2016-90; s. 42, ch. 2016-165; s. 6, ch. 2021-144; s. 71, ch. 2023-144.

**717.1355    Theme park and entertainment complex tickets.**—This chapter does not apply to any tickets for admission to a theme park or entertainment complex as defined in s. 509.013(9), or to any tickets to a permanent exhibition or recreational activity within such theme park or entertainment complex.

**History.**—s. 23, ch. 96-301.

**717.136    Foreign transactions.**—This chapter does not apply to any property held, due, and owing in a foreign country and arising out of foreign transaction.

**History.**—s. 37, ch. 87-105.

**717.138    Rulemaking authority.**—The department shall administer and provide for the enforcement of this chapter. The department has authority to adopt rules pursuant to ss. 120.536(1) and 120.54 to implement the provisions of this chapter. The department may adopt rules to allow for electronic filing of fees, forms, and reports required by this chapter. The authority to adopt rules pursuant to this chapter applies to all unclaimed property

USCA11 Case: 23-13178    Document: 18    Date Filed: 12/07/2023    Page: 90 of 92

reported and remitted to the Chief Financial Officer, including, but not limited to, property reported and remitted pursuant to ss. 45.032, 732.107, 733.816, and 744.534.

History.—s. 39, ch. 87-105; s. 220, ch. 98-200; s. 31, ch. 2001-36; s. 1890, ch. 2003-261; s. 27, ch. 2016-132; s. 10, ch. 2018-71.

### 717.1382    United States savings bond; unclaimed property; escheatment; procedure.—

(1)    Notwithstanding any other provision of law, a United States savings bond in possession of the department or registered to a person with a last known address in the state, including a bond that is lost, stolen, or destroyed, is presumed abandoned and unclaimed 5 years after the bond reaches maturity and no longer earns interest and shall be reported and remitted to the department by the financial institution or other holder in accordance with ss. 717.117(1) and (3) and 717.119, if the department is not in possession of the bond.

(2)(a)    After a United States savings bond is abandoned and unclaimed in accordance with subsection (1), the department may commence a civil action in a court of competent jurisdiction in Leon County for a determination that the bond shall escheat to the state. Upon determination of escheatment, all property rights to the bond or proceeds from the bond, including all rights, powers, and privileges of survivorship of an owner, co-owner, or beneficiary, shall vest solely in the state.

(b)    Service of process by publication may be made on a party in a civil action pursuant to this section. A notice of action shall state the name of any known owner of the bond, the nature of the action or proceeding in short and simple terms, the name of the court in which the action or proceeding is instituted, and an abbreviated title of the case.

(c)    The notice of action shall require a person claiming an interest in the bond to file a written defense with the clerk of the court and serve a copy of the defense by the date fixed in the notice. The date must not be less than 28 or more than 60 days after the first publication of the notice.

(d)    The notice of action shall be published once a week for 4 consecutive weeks in a newspaper of general circulation published in Leon County. Proof of publication shall be placed in the court file.

(e)1.    If no person files a claim with the court for the bond and if the department has substantially complied with the provisions of this section, the court shall enter a default judgment that the bond, or proceeds from such bond, has escheated to the state.

2.    If a person files a claim for one or more bonds and, after notice and hearing, the court determines that the claimant is not entitled to the bonds claimed by such claimant, the court shall enter a judgment that such bonds, or proceeds from such bonds, have escheated to the state.

3.    If a person files a claim for one or more bonds and, after notice and hearing, the court determines that the claimant is entitled to the bonds claimed by such claimant, the court shall enter a judgment in favor of the claimant.

(3)    The department may redeem a United States savings bond escheated to the state pursuant to this section or, in the event that the department is not in possession of the bond, seek to obtain the proceeds from such bond. Proceeds received by the department shall be deposited in accordance with s. 717.123.

History.—s. 1, ch. 2015-152.

### 717.1383    United States savings bond; claim for bond.—A person claiming a United States savings bond escheated to the state under s. 717.1382, or for the proceeds from such bond, may file a claim with the department. The department may approve the claim if the person is able to provide sufficient proof of the validity of the person's claim. Once a bond, or the proceeds from such bond, are remitted to a claimant, no action thereafter may be maintained by any other person against the department, the state, or any officer thereof, for or on account of such funds. The person's sole remedy, if any, shall be against the claimant who received the bond or the proceeds from such bond.

History.—s. 2, ch. 2015-152.

### 717.139    Uniformity of application and construction.—

(1)    It is the public policy of the state to protect the interests of owners of unclaimed property. It is declared to be in the best interests of owners of unclaimed property that such owners receive the full amount of any unclaimed

property without any fee.

(2)  This chapter shall be applied and construed as to effectuate its general purpose of protecting the interest of missing owners of property, while providing that the benefit of all unclaimed and abandoned property shall go to all the people of the state, and to make uniform the law with respect to the subject of this chapter among states enacting it.

**History.**—s. 40, ch. 87-105; s. 10, ch. 2016-90.

**717.1400     Registration.**—

(1)  In order to file claims as a claimant's representative, acquire ownership of or entitlement to unclaimed property, receive a distribution of fees and costs from the department, and obtain unclaimed property dollar amounts and numbers of reported shares of stock held by the department, a private investigator holding a Class "C" individual license under chapter 493 must register with the department on such form as the department prescribes by rule and must be verified by the applicant. To register with the department, a private investigator must provide:

(a)  A legible copy of the applicant's Class "A" business license under chapter 493 or that of the applicant's firm or employer which holds a Class "A" business license under chapter 493.

(b)  A legible copy of the applicant's Class "C" individual license issued under chapter 493.

(c)  The business address and telephone number of the applicant's private investigative firm or employer.

(d)  The names of agents or employees, if any, who are designated to act on behalf of the private investigator, together with a legible copy of their photo identification issued by an agency of the United States, or a state, or a political subdivision thereof.

(e)  Sufficient information to enable the department to disburse funds by electronic funds transfer.

(f)  The tax identification number of the private investigator's firm or employer which holds a Class "A" business license under chapter 493.

(2)  In order to file claims as a claimant's representative, acquire ownership of or entitlement to unclaimed property, receive a distribution of fees and costs from the department, and obtain unclaimed property dollar amounts and numbers of reported shares of stock held by the department, a Florida-certified public accountant must register with the department on such form as the department prescribes by rule and must be verified by the applicant. To register with the department, a Florida-certified public accountant must provide:

(a)  The applicant's Florida Board of Accountancy number.

(b)  A legible copy of the applicant's current driver license showing the full name and current address of such person. If a current driver license is not available, another form of identification showing the full name and current address of such person or persons shall be filed with the department.

(c)  The business address and telephone number of the applicant's public accounting firm or employer.

(d)  The names of agents or employees, if any, who are designated to act on behalf of the Florida-certified public accountant, together with a legible copy of their photo identification issued by an agency of the United States, or a state, or a political subdivision thereof.

(e)  Sufficient information to enable the department to disburse funds by electronic funds transfer.

(f)  The tax identification number of the accountant's public accounting firm employer.

(3)  In order to file claims as a claimant's representative, acquire ownership of or entitlement to unclaimed property, receive a distribution of fees and costs from the department, and obtain unclaimed property dollar amounts and numbers of reported shares of stock held by the department, an attorney licensed to practice in this state must register with the department on such form as the department prescribes by rule and must be verified by the applicant. To register with the department, such attorney must provide:

(a)  The applicant's Florida Bar number.

(b)  A legible copy of the applicant's current driver license showing the full name and current address of such person. If a current driver license is not available, another form of identification showing the full name and current address of such person or persons shall be filed with the department.

(c)  The business address and telephone number of the applicant's firm or employer.

(d)    The names of agents or employees, if any, who are designated to act on behalf of the attorney, together with a legible copy of their photo identification issued by an agency of the United States, or a state, or a political subdivision thereof.

(e)    Sufficient information to enable the department to disburse funds by electronic funds transfer.

(f)    The tax identification number of the attorney's firm or employer.

(4)    Information and documents already on file with the department before the effective date of this provision need not be resubmitted in order to complete the registration.

(5)    If a material change in the status of a registration occurs, a registrant must, within 30 days, provide the department with the updated documentation and information in writing. Material changes include, but are not limited to: a designated agent or employee ceasing to act on behalf of the designating person, a surrender, suspension, or revocation of a license, or a license renewal.

(a)    If a designated agent or employee ceases to act on behalf of the person who has designated the agent or employee to act on such person's behalf, the designating person must, within 30 days, inform the Division of Unclaimed Property in writing of the termination of agency or employment.

(b)    If a registrant surrenders the registrant's license or the license is suspended or revoked, the registrant must, within 30 days, inform the division in writing of the surrender, suspension, or revocation.

(c)    If a private investigator's Class "C" individual license under chapter 493 or a private investigator's employer's Class "A" business license under chapter 493 is renewed, the private investigator must provide a copy of the renewed license to the department within 30 days after the receipt of the renewed license by the private investigator or the private investigator's employer.

(6)    A registrant's firm or employer may not have a name that might lead another person to conclude that the registrant's firm or employer is affiliated or associated with the United States, or an agency thereof, or a state or an agency or political subdivision of a state. The department shall deny an application for registration or revoke a registration if the applicant's or registrant's firm or employer has a name that might lead another person to conclude that the firm or employer is affiliated or associated with the United States, or an agency thereof, or a state or an agency or political subdivision of a state. Names that might lead another person to conclude that the firm or employer is affiliated or associated with the United States, or an agency thereof, or a state or an agency or political subdivision of a state, include, but are not limited to, the words United States, Florida, state, bureau, division, department, or government.

(7)    The licensing and other requirements of this section must be maintained as a condition of registration with the department.

History.—s. 141, ch. 2004-390; s. 133, ch. 2005-2; s. 25, ch. 2005-163; s. 11, ch. 2016-90; s. 44, ch. 2016-165.


**717.1401    Repeal.**—This chapter shall not repeal, but shall be additional and supplemental to the existing provisions of ss. 43.18 and 402.17 and chapter 716.

History.—s. 41, ch. 87-105; s. 62, ch. 92-348; s. 11, ch. 2018-71.

Copyright © 1995-2023 The Florida Legislature • Privacy Statement • Contact Us