# In the United States Court of Appeals for the Eleventh Circuit

_____

ALIEDA MARON, et al

*Plaintiffs – Appellants*,
v.

Chief Financial Officer of Florida,

*Defendant – Appellee.*

_____

**On Appeal from the
United States District Court for the Northern District of
Florida, Civil Action No. 4:22-cv-00255-RH-MAF**

_____

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

ROGER L. MANDEL
JEEVES MANDEL LAW GROUP, P.C.
Suite 135
2833 Crockett Street
Fort Worth, TX 76107
214-253-8300
rmandel@jeevesmandellawgroup.com
*Counsel for Plaintiffs-Appellants*

## Plaintiffs-Appellants' Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in Eleventh Circuit Rule 26.1-2(a) have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Arthur Susman, attorney representing Appellants.

2. Alieda Maron, Plaintiff/Appellant.

3. Craig E. Rothburd, attorney representing Appellants.

4. Craig E. Rothburd, P.A., law firm representing Appellants.

5. Daniel J. McGinn, attorney representing Appellee.

6. Daniel R. Russell, attorney representing Appellee.

7. Dean Mead & Dunbar, law firm representing Appellee.

8. Honorable Robert L. Hinkle, U.S.D.C. Judge.

9. Jeeves Law Group, P.A., law firm representing Appellants.

10. Jeeves Mandel Law Group, PC, law firm representing Appellants.

11. Jimmy T. Patronis, Jr., in his official capacity as the Chief Financial Officer of the State of Florida, Defendant/Appellee.

12. Jordane P. Wang, attorney representing Appellee.

13. Julie M. O'Dell, attorney representing Appellants.

14. Kelly A. Green, attorney representing Appellants.

15. Kimberly Masson, attorney representing Appellee.

16. Lawrence Maron, Plaintiff/Appellant.

17. Roger L. Mandel, attorney representing Appellants.

18. Russell Monilla, attorney representing Appellee.

19. Scott R. Jeeves, attorney representing Appellants.

20. Smith, Katzenstein & Jenkins, law firm representing Appellants.

21. The Law Office of Arthur Susman, law firm representing Appellants.

22. William D. Hall, III, attorney representing Appellee.

/s/Roger L. Mandel
Roger L. Mandel
JEEVES MANDEL LAW GROUP, P.C.
2833 Crockett St, Suite 135
Fort Worth, TX 76107
T.       214-253-8300
rmandel@jeevesmandellawgroup.com

*Counsel for Alieda Maron and Lawrence Maron, Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

**Pages**

PLAINTIFFS-APPELLANTS' CERTIFICATE OF INTERESTED PERSONS ......i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES .................................................................. v

ARGUMENT ........................................................................................ 1

I.    The Marons State a Takings Claim ................................................. 1

    A.    Under The General Rule, The State Violated the Takings Clause Because It Took the Marons' Private Property Without Payment of Just Compensation (Even if Temporarily) ............................................ 3

    B.    Because the Act Does Not Declare Presumed Unclaimed Property Abandoned and Transfer Ownership of It (Escheat It) to the State, It Does Not Fall Under the Texaco "Abandonment" Exception to the Rule ......................................................................... 7

    C.    The Circumstances Under the Act Pursuant to Which the CFO Takes Custody of "Presumed Unclaimed" Property Do Not Constitute Abandonment as a Matter of Law ...................................... 12

    D.    No Causation Requirement Exists in a Physical Takings Case .......... 16

II.   The Marons Have Article III Standing to Bring Their Takings Claim .......... 16

    A.    The Marons Have Suffered Injury in Fact .......................................... 17

    B.    The Marons' Injury Is Traceable to the CFO's Action ...................... 18

    C.    The Marons' Requested Relief Will Redress Their Injury ................. 19

    D.    The Marons' Claim Is Ripe ................................................................ 19

III.  The Eleventh Amendment Does Not Bar the Marons' Fifth Amendment Takings Clause Claim for Two Reasons ....................................... 21

    A.    Because the *Ex parte Young* Exception Applies to It ....................... 21

    B.     Because the CFO Would Not Pay the Just Compensation from "State Funds"........................................................................................23

CONCLUSION.................................................................................................26

CERTIFICATE OF COMPLIANCE ...................................................................27

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*31 Foster Children v. Bush,*
329 F.3d 1255 (11th Cir. 2003) ...............................................................17

*Albert v. Franchot,*
2023 WL 4058986 (D. Md. June 16, 2023) ...........................................16

*Albert v. Franchot,*
2024 WL 308937 (D. Md. January 26, 2024)...........................7, 8, 16, 20

*Ambriz v. Hegar,*
2023 WL 4850909 (W.D. Tex. June 20, 2023),
(Report & Recommendation), order adopting R&R, 2023 WL 4853403
 (W.D. Tex. July 28, 2023) (appeal pending)..........................................16

*Anderson Nat. Bank v. Luckett,*
321 U.S. 233 (1944).......................................................................7, 11

*Ark. Game & Fish Comm'n v. U.S.,*
568 U.S. 23 (2012)................................................................................4

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021)..........................................................11, 12, 16

*Cerajeski v. Zoeller,*
735 F.3d 577 (7th Cir. 2013) .........................................................7, 9, 20

*Connecticut Mut. Ins. Co. v. Moore,*
333 U.S. 541 (1948)......................................................................7, 11

*Delaware v. N.Y,*
507 U.S. 490 (1993).......................................................................11, 20

*Dep't of Prof'l Regulation v. Durrani,*
455 So. 2d 515 (Fla. 1st DCA 1984)......................................................10

*Edelman v. Jordan,*
415 U.S. 651 (1974).......................................................................... 21-23

**Cases**                                                                **Pages**

*Ex parte Young*,
209 U.S. 123 (1908)...................................................................... 21-23

*First English Evangelical Lutheran Church of Glendale v.*
*County of Los Angeles*,
482 U.S. 304 (1987)..............................................................................4

*Horne v. Dept. of Agric.*,
576 U.S. 350 (2015).........................................................................3, 8

*In re Folding Carton,*
744 F.2d 1252 (7th Cir. 1984)..............................................................6

*Jackson v. Georgia Dept. of Transp.*,
16 F.3d 1573 (11th Cir. 1994) ............................................................23

*Jali v. Workers' Compensation Bd. of State of N.Y.*,
1986 WL6291 (W.D.N.Y. June 3, 1986).............................................24

*Katsaris v. U.S.*,
684 F.2d 758 (11th Cir. 1982) ............................................................13

*Knick v. Township of Scott*,
139 S. Ct. 2162 (2019) ..................................................................17, 19

*Kolton v. Frerichs*,
869 F.3d 532 (7th Cir. 2017)................................................................7

*Kostelic v. Bernardi*,
538 F. Supp. 620 (N.D. Ill. 1982)......................................................24

*Light v. Davis*,
2023 WL 6295387 (D. Del. Sept. 27, 2023)........................................20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................17

**Cases**                                                                                      **Pages**

*Martin v. Choudhuri*,
563 F. Supp. 207 (W.D. Wis. 1983) .......................................................24

*McKenzie v. Florida Dept. of Financial Services*,
Case No. 04 CA 755 (2d Jud. Cir., Leon County Apr. 27, 2005) ............8

*Miller-Davis Co. v. Ill. State Toll Highway Auth.*,
567 F.2d 323 (7th Cir. 1977) .................................................................24

*Pakdel v. City & County of San Francisco, Ca.*,
141 S. Ct. 2226 (2021) .....................................................................19, 20

*Salvato v. Harris*,
2022 WL 1224962 (D.N.J. April 26, 2022) ......................................25, 26

*Simon v. Weissmann*,
301 Fed. App'x. 107 (3d Cir. 2008)..................................................3, 8, 15

*Sogg v. Zurz*,
905 N.E.2d 187 (Ohio 2009).....................................................................7

*State v. Mark Marks, P.A.*,
698 So. 2d 533 (Fla. 1997)......................................................................10

*State v. Schultz*,
388 So. 2d 1326 (Fla. 4th DCA 1980) ....................................................13

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1977)...................................................................................17

*Stringer v. Town of Jonesboro*,
986 F.3d 502 (5th Cir. 2021) ....................................................................4

*Suever v. Connell*,
579 F.3d 1047 (9th Cir. 2009) ............................................................6, 7, 9

**Cases**                                                                           **Pages**

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) .................................................................. 7, 10, 12-16

*Travelers Indem. Co. v. School Bd*,
666 F.2d 505 (11th Cir) ........................................................................23

*Turnacliff v. Westly*,
546 F.3d 1113 (9th Cir. 2008) .........................................................6, 7, 9

*Tyler v. Hennepin County, Minn*,
598 U.S. 631 (2023)................................................................. 7, 12-16

*Verizon Maryland, Inc. v. Public Service Com'n of Mayland*,
535 U.S. 635 (2002)...............................................................................21

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980)...........................................................................4, 5

**Constitution, Statutes and Rules**

28 U.S.C. § 2041 & 2042 .........................................................................6

28 U.S.C. § 2042 ......................................................................................6

Cal. Civ. Proc. Code § 1300, et seq ........................................................6

Fla. Stat. §§ 717.001-116 .........................................................................9

Fla. Stat. § 717.1035(1).........................................................................14

Fla. Stat. § 717.1071 ................................................................................9

Fla. Stat. § 717.122 ..................................................................................6

Fla. Stat. § 117.123 ..................................................................................6

Fla. Stat. § 117.123(1).............................................................................25

Fla. Stat. § 117.123(3)............................................................................25

72 P.S. § 1301.6(2)............................................................................15

# ARGUMENT

## I. The Marons State a Takings Claim

The Supreme Court has established the rule that the taking of private property for public use without either the payment of just compensation or a statutory declaration of abandonment and escheat violates the Taking Clause, even if the taking is temporary. To avoid this rule, the CFO argues, and the district court below agreed, that an exception for "abandoned" property applies to the Marons' premium refund. However, the Supreme Court has established strict criteria for when property can be deemed "abandoned" such that it can be taken for public use without payment of just compensation. The Florida Disposition of Unclaimed Property Act (the "Act") satisfies none of those criteria.

First, for property to be deemed abandoned, a statute must declare the property abandoned *and* transfer it (escheat it) to the government. If a statute does not do so, the government has committed a compensable taking. But even if a statute does so, that does not end the story. Otherwise, the government could by statute simply declare abandoned any property it wants and transfer the property's title to itself and avoid the obligation that would otherwise exist to pay just compensation to the property's owner. So, a statute's declaration of abandonment must comport with state common law, traditional property law principles, historical practices, and Supreme

Court precedent. If it does not, the statute violates the Taking Clause and affects a compensable taking.

Here, the Act does not declare unclaimed property abandoned or even "presumed abandoned," but rather "presumed unclaimed." The CFO tries to avoid this dispositive fact by claiming multiple times that the Act defines "presumed unclaimed" property as "property abandoned, lost or neglected." It does not. But even if it did, that would not render the Act constitutional for two reasons.

First, the Act undisputedly does not transfer ownership of the unclaimed property to the State. As the CFO concedes, the State only "assum[es] *custody* over [a] person's unclaimed property" and holds it "in perpetuity until such time as the property is located and claimed by its *rightful owner*." Appellee's Answer Brief ("AB") at 19 (emphasis added).[1]

Second, the circumstances under which the Act declares property "presumed unclaimed" do not, as a matter of law, constitute "abandonment," leaving the Act in violation of the Takings Clause. The requirements for abandonment--compatibility with Florida common law, traditional property law principles, historical practices, and Supreme Court precedent--simply do not support an argument that the Marons, or anyone else subject to the Act, "abandoned" their property.

---

[1] All page references are to the page numbers at the tops of the pages applied automatically by the ECF filing system.

Collectively, these criteria require a voluntary relinquishment of all property rights and an intent to abandon. The conditions under which the Act requires transfer of property to the CFO do not satisfy any of these requirements. Further, any such 'abandonment" must take place for a "lengthy time." Supreme Court precedent makes clear that three (or even five) years of non-use is not a sufficiently "lengthy time." Thus, even if the Act deemed unclaimed property abandoned and escheated it to the State, it would still violate the Takings Clause.

Despite this, the district court, relying on an unpublished, non-precedential Third Circuit opinion in *Simon v. Weissmann*, 301 Fed. App'x. 107, 114 (3d Cir. 2008), held the Act constitutional because the State supposedly could have constitutionally drafted it as an escheat statute, allegedly making it irrelevant that it did not do so and that the enacted version is unconstitutional. That holding is wrong for numerous reasons, as discussed in the Principal Brief of Plaintiffs-Appellants ("PB") and below. Regardless, it is telling that the CFO makes little effort to defend this holding and ignores *Horne v. Dept. of Agric.*, 576 U.S. 351, 362 (2015) in which the Supreme Court flatly rejected the Third Circuit's reasoning.

A.  **Under the General Rule, the State Violated the Takings Clause Because It Took the Marons' Private Property Without Payment of Just Compensation (Even if Temporarily)**

The CFO does not dispute that "[t]he Government has a categorical duty to pay just compensation [upon a taking]." *Horne*, 576 U.S at 358. Instead, he argues

the Marons will suffer no harm because they can ask for, and receive, their unclaimed property at any time. AB at 46. Yet, nothing justifies the government's temporary public use of private property without paying just compensation. Temporary takings are as protected by the Constitution as permanent ones. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 318 (1987); *see also Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012) (even temporary floods caused by the government can constitute compensable takings). "A deprivation need not be permanent to qualify as a taking." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 n.12 (5th Cir. 2021) (citing *First English* and *Ark. Game & Fish Comm'n*).

The Supreme Court in *Webb's Fabulous Pharmacies, Inc. v. Beckwith ("Webb's")*, 449 U.S. 155, 164-65 (1980) reiterated that the government may not temporarily put private property to public use without paying just compensation for that public use, like the Act mandates here. The Supreme Court declared unconstitutional a state statute which allowed a county to retain the interest earned by funds interpleaded into a court registry. *Id.* A disinterested third party (the interpleading party there, the holders of presumed unclaimed property under the Act here), turned over property to the government (the county there, the State here) for distribution to its rightful owners, and the government used the property for public

purposes (investing it and retaining the income) while it had custody of the property. *Id.* at 155-58.

The Supreme Court held "[t]he county's appropriation of the beneficial use of the fund is analogous to the appropriation of the use of private property" and constitutes "a forced contribution to general governmental revenues" in violation of the Fifth Amendment. *Id.* at 164. So too, here, the State's public use of unclaimed property in its temporary custody constitutes an "appropriation of the use of private property" requiring just compensation under the Takings Clause.

The CFO tries to minimize the significance of *Webb's* to no avail. He notes that the county deducted from the interpleaded funds a fee for its services in handling the funds *and* retained the interest the funds earned, and that the Supreme Court held it expressed "no view as to the constitutionality of a statue requiring retention of the interest where the interest would be the only compensation the county received for the services it rendered." AB at 33 (quoting *Webb's*, 449 U.S. at 163-5). That limitation on the holding in no way detracts from the principle that even a temporary use of private property for public purposes requires just compensation. It merely recognizes that in different circumstances the county's retention of the interest might not represent public use but rather compensation for services rendered.

Regardless, the facts in this case match those in *Webb's*. As the CFO concedes, he compensates himself for the administrative costs he incurs pursuant to the Act

from the $15 million fund maintained for that purpose and to pay claims. AB at 21 (citing § 717.123, Fla. Stat.). Thus, the State's investment of the remainder of the unclaimed property and payment from it of the State's obligations constitutes a public use, not compensation for services rendered.

Despite the Supreme Court's unequivocal pronouncements to the contrary, the CFO argues that the State's temporary use of *private property* does not constitute a taking, citing *In re Folding Carton*, 744 F.2d 1252, 1255 (7th Cir. 1984); *Turnacliff v. Westly*, 546 F.3d 1113 (9th Cir. 2008); and *Suever v. Connell*, 579 F.3d 1047 (9th Cir. 2009). AB at 41-42. These decisions do not contradict the above-cited Supreme Court precedent. All three cases involved statutes that declared the property at issue abandoned and transferred ownership of it (escheated it) to the U.S. or California subject to the former owner's right to reclaim *ownership* of it (not just custody). *In re Folding Carton*, 744 F.2d. at 1255 (addressing 28 U.S.C. §§ 2041 & 2042); *Turnacliff*, 546 F.3d at 1116-17 (addressing Cal. Civ. Proc. Code § 1300, *et seq*); *Suever*, 579 F.3d at 1050 (same). Thus, these cases did not address public use of *private property*, but rather use of property now owned by the government by virtue of the statutes at issue.[2] Of course, if they did contradict Supreme Court precedent, the Supreme Court precedent would control.

---

[2] The courts in these cases did not consider whether the statutes at issue could constitutionally declare abandoned and escheat the property at issue under the

**B. Because the Act Does Not Declare Presumed Unclaimed Property Abandoned and Transfer Ownership of It (Escheat It) to the State, It Does Not Fall Under the *Texaco* "Abandonment" Exception to the Rule**

In the PB at 40-48, the Marons explained why the "abandonment" exception relied upon in *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982) does not apply to the Act: it only applies where: (1) a statute declares property abandoned and extinguishes the owner's rights to it, as in *Texaco*, and (2) in the case of unclaimed property, transfers its title (escheats it) to the government. *See Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017) (holding *Texaco* did not apply to Illinois unclaimed property act on this basis); *Cerajeski v. Zoeller*, 735 F.3d 577, 579 (7th Cir. 2013) (same as to Indiana act); *Sogg v. Zurz*, 905 N.E.2d 187, 191, 192-93 (Ohio 2009) (same as to Ohio act). As the District Court of Maryland very recently explained regarding the Maryland act, "[h]ere, the plain language of the Act does not implicate the holding in *Texaco*. The Act, by its plain terms, does not extinguish the ownership interest in presumed abandoned or unclaimed property." *Albert v. Franchot*, 2024 WL 308937, at *4 (D. Md. Jan. 26, 2024).

---

criteria described in *Tyler v. Hennepin County, Minn.*, 598 U.S. 631 (2023), discussed below. They likely could not. Nor did the Ninth Circuit consider in *Turnacliff* and *Suever* whether unclaimed property could be escheated without due process in the form of notice and an administrative or judicial hearing. It certainly cannot. *See Anderson Nat. Bank v. Luckett,* 321 U.S. 233, 240 (1944); *Connecticut Mut. Ins. Co. v. Moore*, 333 U.S. 541, 547 (1948).

The cases cited by the CFO are not persuasive counter-authorities. AB at 35-39. The Third Circuit's unpublished, non-precedential decision in *Simon*, 301 Fed. App'x. at 114, gave an invalid reason for disregarding the fact that the Pennsylvania unclaimed property act only transferred custody of the unclaimed property rather than declaring it abandoned and escheating it. Specifically, *Simon* claimed it should not matter that the Pennsylvania act did not declare the property abandoned and escheat it because it could have been written that way, which allegedly would have made it constitutional. *Id.*

In the PB at 48-50, the Marons addressed *Simon* and gave three reasons why the Third Circuit got it wrong. The CFO failed to address any of these reasons in his brief. Most importantly, the Marons explained that the Supreme Court had, in a takings case, expressly rejected the argument that a facially unconstitutional statute can nevertheless pass constitutional muster because it *could have* been drafted in a constitutional manner. PB at 50 (citing *Horne v. Dept. of Agric.*, 576 U.S. 350, 362 (2015)). The CFO's silence in response is telling, especially given that the District Court of Maryland recently rejected the same argument based on *Horne*. *See Albert*, 2024 WL 308937, at *5.

The Florida district court decision in *McKenzie v. Fla. Dep't of Fin. Servs.*, No. 04 CA 755 (Fla. Cir. Ct. Apr. 27, 2005) and the other state cases cited by the CFO in footnote 13 (AB at 36) fare no better. Misled by their states' acts' use of the

misleading term "presumed abandoned," they simply ignored the critical difference between custodial and escheat statutes. *See Cerajeski*, 735 F.3d at 580-81.

The Ninth Circuit's decisions in *Turnacliff* and *Suever* do not constitute counter-authorities at all, much less persuasive ones. As explained above, the California statute at issue did declare unclaimed property abandoned and escheated it to the state. So, these decisions cannot support the constitutionality of statutes, like the Act, that do not deem property abandoned and transfer its ownership to the state.

Beyond citing unpersuasive cases, the CFO makes only two responsive arguments that directly attempt to rebut the position that an unclaimed property act which puts the property to public use but does not purport to declare the property abandoned and escheat it to the state violates the Takings Clause. Neither argument has any merit.

First, the CFO claims that the Act "define[s] unclaimed property as … property that has been abandoned, lost or neglected by its owner for an extended amount of time." AB at 20, 35 (citing §§ 717.001-717.116, Fla. Stat.). Not true. Except for section 717.1071, those sections of the Act describe why different types of property are "presumed unclaimed" without ever using the terms "abandoned, lost, or neglected."

And rather than declaring property distributable in an insurance company demutualization "presumed unclaimed," section 717.1071 deems it "abandoned."

That the Act "deems abandoned" this property but declares all other types of property "presumed unclaimed," demonstrates that "presumed unclaimed" property means something different and is not the equivalent of "abandoned" property under the Act. *State v. Mark Marks, P.A.,* 698 So. 2d 533, 541 (Fla. 1997) (quoting *Dep't of Prof'l Regulation v. Durrani,* 455 So. 2d 515, 518 (Fla. 1st DCA 1984)) ("The legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended."). Thus, treating "presumed unclaimed" property as "abandoned" under *Texaco* defies the plain language of the Act.

Second, the CFO, in convoluted fashion, argues that if a state can constitutionally declare property abandoned and take full ownership of it without payment of compensation, then the state should constitutionally be able to take only part of the ownership rights in the property—its use while in custody—without paying compensation. AB at 43-44. This argument fails for three reasons.

First, since the CFO physically takes possession of unclaimed property, this argument really amounts to nothing more than a repeat of the argument that a temporary physical taking does not require payment of just compensation. As previously explained, a temporary taking indeed requires payment of just compensation,

Second, at most, this argument for a state's right to make a partial taking without payment of just compensation could apply only to abandoned property, just like with a complete taking. As noted, the Act does not declare "presumed unclaimed" property abandoned. And, as explained below, even if it did, that declaration could not be honored under clear Supreme Court precedent.

Third, the Supreme Court has unequivocally declared "the Takings Clause imposes a clear and categorical obligation to provide the owners with just compensation" for a physical taking and "[t]he government commits a physical taking … when the government physically takes possession of property *without acquiring title to it*." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (emphasis added). To avoid committing a taking requiring payment of just compensation, the government must take full ownership of abandoned property (escheat it). Nothing short of that satisfies constitutional scrutiny. And, as noted above, that requires due process in the form of notice and a hearing. *Anderson Nat. Bank,* 321 U.S. at 240 (1944); *Connecticut Mut. Ins. Co.*, 333 U.S at 547.

No different conclusion should be drawn from the statement in *Delaware v. N.Y.* that, "[s]tates as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly (though somewhat erroneously) called escheat." 507 U.S. 490, 497 (1993). In this case addressing which states have the right to escheat unclaimed distributions made by securities

issuers, the Supreme Court merely recognized the unquestioned right of states to take custody of such property without addressing the circumstances under which they would have to pay just compensation if they made public use of it (as opposed to holding it in trust for the owners). *Id.* In contrast, in its later decision in *Cedar Point Nursery* the Supreme Court decisively stated that just compensation must be paid whenever the government takes physical custody of property without taking title to it. 141 S. Ct. at 2071.

For this reason, this Court should reverse the district court's dismissal of Count I for the alleged failure to state a Takings Claim.

## C. The Circumstances Under the Act Pursuant to Which the CFO Takes Custody of "Presumed Unclaimed" Property Do Not Constitute Abandonment as a Matter of Law

Even if the Act declared unclaimed property "abandoned' rather than "presumed unclaimed" and escheated it to the State, the Act would still violate the Takings Clause. Because governments do not have license to take private property whenever they deem it desirable, the Supreme Court in *Tyler v. Hennepin County, Minn.*, 598 U.S. 631 (2023) recently reiterated the strict criteria that a government must satisfy to establish abandonment. The Act does not satisfy those strict criteria.

"Abandonment" that allows termination and transfer of property rights must be consistent with "state law … traditional property law principles, plus historical practices and this Court's precedents regarding abandonment." *Id.* at 638 (internal

quotation marks and citations omitted). It only occurs when the property owner by *express statement or conduct* has voluntarily relinquished all rights in the property. *Id.* at 647 (also explaining why the statute in *Texaco* satisfied these criteria).

Indeed, under Florida common law, a person must have *the intent* to part with personal property forever and willingly abandon it to whoever wishes to possess it. *Katsaris v. U.S.*, 684 F.2d 758, 762 (11th Cir. 1982); *State v. Schultz*, 388 So. 2d 1326, 1329 (Fla. 4th DCA 1980).[3] The CFO's taking of the Marons' property pursuant to the terms of the Act satisfies none of these criteria, especially the intent requirement.

The CFO fails to rebut the Marons' detailed examination of *Texaco* and *Tyler* and the Supreme Court's respective conclusions in those decisions that: (a) 20 years' non-use and lack of action to protect a minerals lease resulted in the "abandonment" of that leasehold interest and no takings liability (*Texaco*), and (b) three years' non-payment of property taxes, even if negligent, could not result in the "abandonment" of property rights in privately-owned real estate (*Tyler*). PB at 52-54. As explained, *Texaco* rested not on "abandonment" as a nebulous, generally applicable concept federal courts can use to determine the extent of state-law based property rights, but,

---

[3] In *Katsaris*, this Court pithily warned that "the concept of abandonment is not to be employed with abandon." 684 F.2d at 762. Consistent with this warning, the only example the Marons could find where a Florida court found personal property abandoned is where the owner threw it in the trash. *See, e.g., State v. Schultz*, 388 So. 2d at 1329.

rather, on *the consequences of the lessee's non-use over 20 years of the leasehold interest.   Id.*

The *Texaco* Court emphasized this point:

> [T]he length of the period that is afforded to a mineral owner to use the interest, the variety and minimal extent of the actions that constitute a statutory use, and the length of the statutory grace period are sufficient to entitle the State to indulge in the assumption that – if no statutory use is made in a 20-year period and no statement of claim is filed in the 2-year grace period, if applicable – the mineral owner has abandoned the property. *We need not decide today whether the State may indulge in a similar assumption in cases in which the statutory period of nonuse is shorter than that involved here, or in which the interest affected is such that concepts of 'use' or 'nonuse' have little meaning.*

*Texaco*, 516 U.S. at 535-36 & n. 28 (emphasis added).

The Supreme Court re-emphasized this reasoning most recently in *Tyler*: for there to be "abandonment" that divests a person of ownership rights, there must be "a surrender or relinquishment or disclaimer" of all rights in the property, "and for a lengthy period of time."   598 U.S. at 647 (relying on *Texaco*).   Three years is an insufficient length of time to constitute "abandonment."   *See id*.  So, too, would be five years, as it too is not a "lengthy" time compared to the 20 years at issue in *Texaco*. Here, the Act fails both tests because: (1) the mere failure to claim or communicate in writing about money held by a business association does not amount to a voluntary surrender or relinquishment or disclaimer and shows no intent to abandon, and (2) it requires transfer of property to the CFO after only three years. *See* § 717.1035(1), Fla. Stat.

The CFO and district court ignore these steps in the Supreme Court's analysis, focusing solely on its application of a "abandonment" as a general concept. As the Supreme Court held in *Texaco* and *Tyler*, that concept has temporal and other boundaries which the district court overlooked.

This helps explain the further error of the Third Circuit in *Simon.* It cited *Texaco* without ever considering whether the unclaimed property transferred pursuant to the Pennsylvania unclaimed property act could, even if declared so by a rewritten version of the act, properly be deemed "abandoned" under the criteria established by *Texaco* and later reiterated and summarized in *Tyler.*

It could not, as the Pennsylvania act allows transfer of shares of stock only three years "after the holder has lost contact with the owner" (whatever that means in the context of long-term ownership of stock) unless the owner increased or decreased the principal, accepted payment of principal or income, or otherwise indicated interest in the stock. 72 P.S. § 1301.6(2). Three years is not a sufficient length of time, and the statute allows transfer without any evidence of the required intent to abandon the stock.

For this reason as well, this Court should reverse the district court's dismissal of Count I for its alleged failure to state a Takings Claim.

**D.     No Causation Requirement Exists in a Physical Takings Case**

Although the Marons manifestly plead a physical takings case, the CFO cites cases holding that in a regulatory case the plaintiff must show the government's action caused the plaintiff's harm and then argues the Marons' own neglect caused their harm. AB at 39-40. Because the Marons plead a physical taking, they need show nothing other than that the CFO took their property, made public use of it, and will refuse to pay them just compensation. *See Cedar Point Nursery*, 141 S. Ct. at 2071. Further, neglect alone does not constitute abandonment. Abandonment requires "a surrender or relinquishment or disclaimer" of all rights in the property, "and for a lengthy period of time." *Tyler*, 598 U.S. at 647 (relying on *Texaco*).

## II.     The Marons Have Article III Standing to Bring Their Takings Claim

Between them, the parties have cited no less than 15 unclaimed property takings cases (eight of them federal cases), including the district court decision below, and none of them held the plaintiffs lacked standing. In addition to the district court below, two other district courts have expressly held that the plaintiffs in these cases have Article III standing. *Ambriz v. Hegar*, 2023 WL 4850909, at * 3-4 (N.D. Tex. June 20, 2023) (Magistrate Judge Report and Recommendation) ("R&R"), objections to R&R overruled, 2023 WL 4853403, at *1 (N.D. Tex. July 28, 2023); *Albert v. Franchot*, 2023 WL 4058986, at *8 (D. Md. June 16, 2023); *Albert v. Franchot*, 2024 WL 308937, at *3-8.

### A. The Marons Have Suffered Injury in Fact

The CFO argues the Marons have not yet suffered injury in fact because they have not yet made their claim for return of their property. The CFO simply ignores the Supreme Court precedent cited by the Marons holding that they suffered injury in fact as soon as the CFP took their property and the State used it for public purposes. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019) ("[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it.").

The CFO likewise ignores the Supreme Court precedent holding the Marons have standing to pursue prospective declaratory relief because this past wrong is causing them continuing harm from the ongoing loss of the time value of their property. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1977) (holding that "continuing present adverse effects" in addition to "past exposure to illegal conduct" can establish standing). Further, the CFO ignores that the Marons face a real and immediate danger of future injury because, absent a favorable ruling by this Court, the CFO will refuse to pay them just compensation when they make their claim immediately following this action. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (holding a past wrong coupled with a "real and immediate threat" of future injury supports standing to seek declaratory relief).

Because the CFO failed to address these precedents, the Marons stand on their argument in the PB at 24-25. In the guise of injury in fact, the CFO really argues ripeness, which the Marons address below.

### B.     The Marons' Injury is Traceable to the CFO's Action

The CFO in one sentence argues that the Marons cannot demonstrate their injury is traceable to the Act "rather than their own neglect and abandonment." AB at 51. No evidence in the records exists, however, that the Marons acted negligently. Even if it did, no authority exists to support that mere negligence justifies stripping citizens of their property rights. Critically, under Florida law and the other applicable criteria, as explained, the Marons did not, as a matter of law, abandon their property because they took no action showing an intent to abandon it—to relinquish it and leave it free for the taking by anyone who wants it.

In a second sentence, the CFO argues that the Marons cannot show that they will be able to prove their entitlement to their property and if that happens, their injury will not have been caused by the taking. *Id.* This is nothing more than an argument that the Marons' claim will not be ripe until they have made a successful claim, and Supreme Court precedent rejects such an administrative exhaustion requirement, as set forth below.

**C.    The Marons' Requested Relief Will Redress Their Injury**

The CFO repeats again the administrative exhaustion argument, arguing that there is no way to know if the Marons' requested relief will redress their injury until it is known whether they will succeed on their claim to recover their property. *Id.* at 52. Again, the Supreme Court has rejected any administrative exhaustion requirement, as set forth below.

**D.    The Marons' Claim is Ripe**

The CFO argues that the Marons' claim cannot be ripe until after they make a claim and he returns their property without paying them just compensation. AB at 53-54. The Comptroller further maintains (*id.* at 54) that *Pakdel v. City & County of San Francisco, Ca*., 141 S. Ct. 2226, 2230-31 (2021), does not invalidate his argument when it clearly does.

*Pakdel* held "administrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position." *Id.* at 2231 (citing *Knick*, 139 S. Ct. at 2167). Instead, a plaintiff need only show finality to demonstrate ripeness. *Id.* Significantly, "[t]he finality requirement is relatively modest. All a plaintiff must show is that there is no question … about how the regulations at issue apply to the [property] in question." *Id.*

Here, as the CFO freely admits, he will not pay just compensation for the State's use of unclaimed property because § 717.124(4) prohibits him from doing

so. That statutory prohibition is a conclusive, final position by the government set forth in the Act, and under *Pakdel*, "[o]nce the government is committed to a position … the dispute is ripe for judicial resolution." 141 S. Ct. at 2230.

Tellingly, the CFO fails to acknowledge that three different courts in addition to the district court below have held ripe takings claims by plaintiffs who, like the Marons, had not yet attempted to claim their property: the two district courts cited above, plus the Seventh Circuit in *Cerajeski*, 735 F.3d at 583 (holding "[t]he plaintiff is entitled to just compensation from the state *when* she files her claim to Cerajeski's account ….") (emphasis added).

The one contrary decision failed to even consider *Pakdel*, and its recitation of the various reasons Delaware might not pay the plaintiff's claim amounts to the impermissible imposition of an administrative exhaustion requirement. *See Light v. Davis*, 2023 WL 6295387, at *5-10 (D. Del. Sept. 27, 2023) (appeal pending). For that reason, the Court should not find it persuasive, like the District Court of Maryland in its recent decision. *See Albert*, 2024 WL 308937, at *7 (holding "[t]he contingencies identified by Defendant and the *Light* court speak to a plaintiff's compliance with the administrative procedures set forth in the unclaimed property statutes at issue. …. According to *Pakdel*, such exhaustion requirement surpasses the modest finality threshold."). The Act's prohibition of the payment of just compensation satisfies the modest finality threshold. *Id.*, at *8.

For these reasons, the Court should affirm the district court's holding that the Marons have Article III standing.

## III. The Eleventh Amendment Does Not Bar the Marons' Fifth Amendment Takings Clause Claim for Two Reasons

### A. Because the *Ex parte Young* Exception Applies to It

The sole question this Court must answer to determine whether *Ex parte Young* applies to the Marons' claims is "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Mayland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted). As demonstrated in connection with Art. III standing above, the Marons are suffering an ongoing violation of the Takings Clause from the State's ongoing refusal to pay them the time value of their property and the ongoing use of their property for public purposes.

While the CFO acknowledge the primary relief sought by the Marons is a declaration of the unconstitutionality of the Act (AB at 60), he focuses solely on their request for an injunction requiring the State to pay just compensation on future claims as the basis for Eleventh Amendment dismissal. *Id.* at 61. But *Edelman v. Jordan*, 415 U.S. 651 (1974) counsels this Court to examine separately each component of the relief sought by the Marons. In that case, the Supreme Court agreed the declaration of the illegality under federal law of the state manual on provision of benefits fell within the *Ex parte Young* exception. *Id.* at 664. So too here

the Marons' request for a declaration of the unconstitutionality of the Act falls within the exception, a fact the CFO does not deny.

The Marons' request for a declaration and injunction requiring the CFO to pay just compensation on *future* claims also constitutes prospective relief. In *Edelman*, the Supreme Court upheld as prospective declaratory/injunctive relief a decree requiring defendants to pay *future* claims in accordance with federal law. *Id.* at 663-664. The Supreme Court did so even though the decree would have the ancillary effect of causing the state to pay more money on future benefit claims than it otherwise would have paid. *Id*. at 664, 667-68.

According to the Supreme Court, "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Id.* at 668. Here, the increased amount the CFO would have to pay on *future* claims constitutes an ancillary effect from requiring the Comptroller to comply with the Constitution *in the future*.

This contrasts with the "equitable restitution" the Supreme Court held ran afoul of the Eleventh Amendment in *Edelman*. In *Edelman*, the judgment required the state to pay money wrongfully withheld on *past* claims. *Id.* at 656. The Supreme Court held "that portion of the District Court's decree … requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those" whose *past*

applications had been improperly handled. *Id.* at 668. Here, the Marons do not seek to require the CFO to pay just compensation to those persons who in the past received back their property without such payment.

Finally, in the PB at 30-33, the Marons explained how four out of the five cases that addressed this issue in the context of *future* claims have held *Ex parte Young* applies. Tellingly, the CFO does not even attempt to explain why these courts did not properly apply *Edelman* to claims like the Marons'. The district court correctly held the *Ex parte Young* exception applied to the Marons' claims, which makes the Eleventh Amendment inapplicable here.

## B. Because the CFO Would Not Pay the Just Compensation from "State Funds"

Even if a declaration/injunction requiring the CFO to pay just compensation on future claims would amount to retroactive relief, the Eleventh Amendment does not apply because the CFO would not pay it from "state funds." *Edelman* disallowed the retroactive "equitable restitution" portion of the judgment because it "in practice resemble[d] a money judgment payable out of the state treasury …." 415 U.S. at 666. This Court has held that under *Edelman* "Eleventh Amendment immunity applies only if the judgment *must*, under all circumstances, be paid out of state funds." *Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) (emphasis in original) (citing *Travelers Indem. Co. v. School Bd.,* 666 F.2d 505, 509 (11th Cir.), *cert. denied,* 459 U.S. 834 (1982)).

Consistent with this Court's pronouncement, the courts have developed a rule that the Eleventh Amendment does not apply to suits against states where any judgment will be paid out of a special fund in the nature of a trust fund segregated from general public funds and comprised solely of money taken from private parties not as taxes (i.e., where the amounts in such funds do not constitute "state funds"). *See, e.g., Jali v. Workers' Compensation Bd. of State of N.Y.*, 1986 WL6291, at *2 (W.D.N.Y. June 3, 1986) (holding Eleventh Amendment did not apply where discrimination damages would be paid from a disability benefits fund separately held and comprised solely of money taken from private employers and their employees); *Martin v. Choudhuri*, 563 F. Supp. 207, 210 (W.D. Wis. 1983) (holding Eleventh Amendment did not apply where part of medical malpractice judgement would be paid from special segregated account used solely to pay medical malpractice claims and financed not from general tax revenue but rather solely from fees assessed upon health care providers); *Kostelic v. Bernardi*, 538 F. Supp. 620, 622 (N.D. Ill. 1982) (holding Eleventh Amendment did not apply where past unemployment benefits would be paid from a trust fund comprised solely of money paid by private employers). *See also Miller-Davis Co. v. Ill. State Toll Highway Auth.*, 567 F.2d 323, 327 (7th Cir. 1977) (holding Eleventh Amendment did not apply where contract damages would be paid from a special fund held by the state treasurer segregated from the general funds of the state treasury).

Here, the CFO will pay the just compensation not out of the Florida treasury or the State School Fund, but rather out of the $15 million Unclaimed Property *Trust Fund* maintained by the CFO specifically for the purpose of paying unclaimed property claims and related administrative costs. § 717.123(1), Fla. Stat. That fund consists solely of unclaimed property. *Id.* No taxes and no funds from the Florida treasury or the State School Fund are placed in it, not even if the $15 million is insufficient to pay all claims.[4] Indeed, the Legislature temporarily amended section 117.123 to require the CFO to retain an additional $65 million in unclaimed property in the Unclaimed Property *Trust Fund* in fiscal year 2022-2023. § 117.123(3), Fla. Stat. (expiring July 1, 2024).

So, the Unclaimed Property *Trust Fund* constitutes a trust fund segregated from the general funds of the state comprised solely of unclaimed property not taken as taxes. Payment from it of just compensation will not amount to money payable out of the state treasury as required for the Eleventh Amendment to apply.

Significantly, the District Court of New Jersey applied this principle to the New Jersey unclaimed property act, which uses a structure nearly identical to that used by the Act. *See Salvato v. Harris*, 2022 WL 1224962, at *4-6 (D.N.J. April 26,

---

[4] The statement in the Statement of Facts section of the PB at 20 that funds are transferred from the State School Trust Fund to the Unclaimed Property Trust Fund when there is insufficient money in the latter fund to pay claims and expenses was simply incorrect, as the face of the cited § 117.123(1) demonstrates.

2022). Under the New Jersey act, the unclaimed property is held in perpetuity for the rightful owner and placed in the "Unclaimed Personal Property *Trust Fund*," at least 25% of which is retained by the unclaimed property administrator to pay claims and expenses. *Id.*, at *6. The court held, "the Eleventh Amendment is no bar to the claims … as Plaintiff's claims only request return of her … <u>own property</u>." *Id.*, at *4 (emphasis in original).

Accordingly, the district court correctly refused to dismiss the Marons' claims based on the Eleventh Amendment.

## <u>CONCLUSION</u>

The district court's dismissal of Count I should be reversed, and the case should be remanded to the district court for further proceedings consistent with this Court's ruling.

Respectfully submitted,

<u>/s/Roger L. Mandel</u>
Roger L. Mandel
**JEEVES MANDEL LAW GROUP, P.C.**
2833 Crockett St
Suite 135
Fort Worth, TX 76107
Telephone: 214-253-8300
rmandel@jeevesmandellawgroup.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Eleventh Circuit Rule 32-4 because, as calculated by Microsoft Word, it contains 6325 words excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Roger L. Mandel*
Roger L. Mandel
Attorney for Plaintiffs-Appellants

Dated: April 1, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, the foregoing brief was electronically filed with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. Lead counsel for all the parties are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Roger L. Mandel*
Roger L. Mandel